**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF NEW JERSEY**

| | |
|---|---|
| ROOFER'S PENSION FUND, Individually and On Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>                v.<br><br>PERRIGO COMPANY PLC, *et al.*,<br><br>                                    Defendant. | Case No. 1:16-CV-02805 RMB LDW<br><br><br>Hon. Renée Marie Bumb<br>Hon. Leda Dunn Wettre<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF**
**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

Page

I.  PRELIMINARY STATEMENT ................................................................................1

II. BACKGROUND LEADING TO THE SETTLEMENT.......................................4

    A. Procedural History Of The Action..........................................................4

    B. Negotiations Leading To The Settlement ...............................................6

    C. Nature Of The Settlement .......................................................................7

III. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............9

    A. The Standards In This Circuit Favor Preliminary Approval...................9

    B. The Settlement Is Fair ...........................................................................10

    C. The Settlement Is Reasonable and More than Fair ...............................12

    D. The Remaining Rule 23(e) Factors Support Preliminary Approval .....16

        1. Rule 23(e)(2)(c)(ii): The Proposed Method for Processing Claims........16

        2. Rule 23(e)(2)(c)(iii): The Terms Of Any Proposed Fee Award Are Reasonable ...........................................................................16

        3. Rule 23(e)(2)(c)(iv): The Parties Have Identified All Agreements ........17

        4. Rule 23(e)(2)(D): The Plan Of Allocation Treats Class Members Equitably Relative To Each Other ...........................................................18

IV. THE PROPOSED PLAN OF NOTICE SHOULD BE APPROVED................19

V.  PROPOSED SCHEDULE OF EVENTS............................................................21

VI. CONCLUSION....................................................................................................23

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alves v. Main*,
  2012 WL 6043272 (D.N.J. Dec. 4, 2012) ...................................................................................14

*Alves v. Main*,
  559 F. App'x 151 (3d Cir. 2014) ...............................................................................................14

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)........................................................................................................17

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010)........................................................................................................9

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975)...............................................................................................10, 12

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ...........................................................................18

*Huffman v. Prudential Ins. Co. of Am.*,
  2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) .......................................................................14, 15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ..............................................................................................21

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litigation*,
  2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ...........................................................................15

*In re AT & T Corp.*,
  455 F.3d 160 (3d Cir. 2006)........................................................................................................16

*In re CIGNA Corp.*,
  2007 WL 2071898 (E.D. Pa. July 13, 2007).............................................................................13

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ..............................................................................................18

*In re Gen. Instrument Sec. Litig.*,
  209 F. Supp. 2d 423 (E.D. Pa. 2001) ........................................................................................16

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)..........................................................................................................9

*In re Hemispherx Biopharma, Inc., Sec. Litig.*,
  2011 WL 13380384 (E.D. Pa. Feb. 14, 2011) ...................................................................15, 19

*In re HIV Antitrust Litig.*,
2023 U.S. Dist. LEXIS 170754 (N.D. Cal. Sep. 25, 2023) ....................................17

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................................................................17

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012)..................................................................................11

*In re Lucent Techs., Inc., Sec. Litig.*,
307 F. Supp. 2d 633 (D.N.J. 2004) ........................................................................13

*In re Nat. Football League Players' Concussion Inj. Litig.*,
307 F.R.D. 351 (E.D. Pa. 2015).............................................................................17

*In re Nat'l Football League Players Concussion Inj. Litig.*,
821 F.3d 410 (3d Cir. 2016)....................................................................................21

*In re Ocean Power Techs., Inc., Sec. Litig.*,
2016 WL 7638464 (D.N.J. June 7, 2016) ..............................................................19

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013)..............................................................13

*In re: Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016) ...........................................................................11

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017)....................................................................................11

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
962 F. Supp. 450 (D.N.J. 1997) .............................................................................13

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
148 F.3d 283 (3d Cir. 1998)....................................................................................13

*In re Sch. Asbestos Litig.*,
921 F.2d 1330 (3d Cir. 1990)...................................................................................9

*In re Schering-Plough/Merck Merger Litig.*,
2010 WL 1257722 (D.N.J. Mar. 26, 2010).............................................................10

*In re Schering-Plough Corp. Sec. Litig.*,
2009 WL 5218066 (D.N.J. Dec. 31, 2009).............................................................14

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................................................18

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
  2021 WL 148752 (S.D.N.Y. Jan. 15, 2021) ...........................................................11

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
  2021 WL 358611 (D.N.J. Feb. 1, 2021) ...............................................................19

*In re Viropharma Inc. Sec. Litig.*,
  2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ..........................................................11

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ............................................................9, 10, 12, 16

*In re WorldCom, Inc. Sec. Litig.*,
  2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) .....................................................11

*Jones v. Com. Bancorp, Inc.*,
  2007 WL 2085357 (D.N.J. July 16, 2007) ............................................................9

*Kanefsky v. Honeywell Int'l Inc.*,
  2022 WL 1320827 (D.N.J. May 3, 2022) ............................................................11

*Kanefsky v. Honeywell Int'l Inc.*,
  No. 2:18-cv-15536, ECF No. 179 (D.N.J. Jan. 18, 2022) .....................................21

*Landmen Partners Inc. v. Blackstone Grp., L.P.*,
  2013 WL 11330936 (S.D.N.Y. Dec. 13, 2013) ....................................................17

*Low v. Trump Univ., LLC*,
  246 F. Supp. 3d 1295 (S.D. Cal. 2017) ..........................................................17, 20

*Low v. Trump Univ., LLC*,
  881 F.3d 1111 (9th Cir. 2018) ..........................................................................17

*McDermid v. Inovio Pharms., Inc.*,
  2023 WL 227355 (E.D. Pa. Jan. 18, 2023) ..........................................................12

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ........................................................................................21

*Schuler v. Medicines Co.*,
  2016 WL 3457218 (D.N.J. June 24, 2016) ..........................................................15

*Teh Shou Kao v. CardConnect Corp.*,
  2021 WL 698173 (E.D. Pa. Feb. 23, 2021) ..........................................................12

*TIAA v. Valeant Pharms. Int'l, Inc.*,
  2021 WL 6881210 (3d Cir. Dec. 20, 2021) ..........................................................19

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*,
  2020 WL 5211035 (E.D. Pa. Sept. 1, 2020) ........................................................17

*Yaeger v. Subaru of Am., Inc.*,
  2016 WL 4541861 (D.N.J. Aug. 31, 2016) ..........................................................12

**Rules & Regulations**

Fed. R. Civ. P. 23 ..........................................................................................17, 21

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................19

Fed. R. Civ. P. 23(e) .......................................................................3, 17, 19, 20

Fed. R. Civ. P. 23(e)(1) .........................................................................................19

Fed. R. Civ. P. 23(e)(1)(B) .......................................................................................9

Fed. R. Civ. P. 23(e)(2) .......................................................................................9, 10

Fed. R. Civ. P. 23(e)(2)(A)-(B) ..............................................................................10

Fed. R. Civ. P. 23(e)(2)(C)(i) ..................................................................................12

Fed. R. Civ. P. 23(e)(3) ...................................................................................10, 18

Treas. Reg. §1.468B-1 ...............................................................................................7

**Statutes**

Private Securities Litigation Act of 1995...............................................................21

Section 10(b) of the Securities Exchange Act of 1934 ......................................4, 15

Section 14(e) of the Securities Exchange Act of 1934 ...........................2, 4, 14, 15

Section 20(a) of the Securities Exchange Act of 1934 ...............................................4

Lead Plaintiff Perrigo Institutional Investor Group, on behalf of itself and the Class Members of the three certified Classes (collectively, "Plaintiffs"), submits this memorandum in support of its Unopposed Motion to Preliminarily Approve Class Action Settlement. Lead Plaintiff also requests that this Court approve the plan to notify Class Members about the proposed settlement, and schedule a hearing ("Settlement Hearing") to consider the fairness and adequacy of the Settlement, and any requests for attorneys' fees, reimbursement of litigation expenses, and compensatory awards to Lead Plaintiff.[1]

## I.   PRELIMINARY STATEMENT

After almost seven years of hard-fought litigation and four in-person mediation sessions (with many more remote sessions) with both the Magistrate Judge and a private mediator, the Parties have reached an agreement to settle this Action, in its entirety, for a cash payment of $97,000,000 (the "Settlement"). The Settlement provides a favorable result for Class Members because it allows an immediate recovery and removes the considerable possibility that Class Members could recover nothing, particularly in light of the risks and uncertainties of proving their remaining claims at trial and prevailing in inevitable post-trial appeals. The $97 million recovery is significant in absolute terms and constitutes an excellent recovery on the narrowed claims that would likely remain if this case proceeded to trial, which this Court has stated do not "seem to be that significant" and are "sort of … small." *See* ECF No. 420 at 53:7-9.

Lead Plaintiff now seeks preliminary approval of the Settlement. Preliminary approval does not require the Court to determine whether it should grant final approval of the Settlement at this point. Rather, the Court need only determine whether the Settlement falls within the range

---

[1] Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation of Settlement (the "Stipulation") filed herewith. All citations are omitted and emphasis is added, unless otherwise indicated.

that the Court reasonably could approve.  If the Court grants preliminary approval, Lead Plaintiff will provide notice to the Classes in both English and Hebrew, solicit claims from Class Members who wish to participate in the Settlement, and allow for Class Members to object to the Settlement, if they so choose.

The litigation is at an advanced stage.  Lead Counsel have reviewed over 519,000 documents consisting of nearly 3.5 million pages, taken 40 depositions, consulted with experts in the subjects of damages, loss causation, generic drugs, and investment banking, and thoroughly reviewed the applicable facts and law.  The Parties have extensively briefed motions to dismiss, for class certification and for summary judgment.  The legal and factual issues are fully developed and well known to Lead Plaintiff and Lead Counsel.  They are fully aware of the strengths and weaknesses of their claims and Defendants' defenses, and are well-positioned to evaluate the risks and advantages of the Settlement compared to continued litigation.

Absent the Settlement, the Parties would proceed towards trial on a much narrower set of claims than existed for most of this litigation.  Based on the Court's summary judgment opinion (ECF No. 400) and comments at oral argument on the application of corporate scienter (ECF No. 420), Lead Plaintiff understands that summary judgment would almost certainly be entered with respect to the sole generic drug-related claims that remain as to Perrigo Company plc ("Perrigo"). As the summary judgment opinion provides, after ruling on the generic drug-related claims against Perrigo, the Court would conduct a *Daubert* hearing, in which some or all of Lead Plaintiff's experts could be excluded from trial, and would allow Defendants' to renew their motion for summary judgment as to loss causation.  ECF No. 400.  If any claims survived, a trial would then be scheduled.

The Settlement resolves this uncertainty and provides a substantial, concrete recovery to the Classes. Under the Stipulation, Class Members who properly submit valid Proof of Claim forms will be treated equitably because each will receive a *pro rata* share of the monetary relief based on the terms of the Plan of Allocation.

Lead Plaintiff seeks preliminary approval so that notice of the Settlement may be disseminated to Class Members and a Settlement Hearing and other Settlement-related dates may be scheduled. At the preliminary approval stage, courts are to evaluate whether they are likely to be able to approve the terms of a settlement under Rule 23(e). As set forth below, the Settlement easily satisfies these standards because it is a fair, reasonable, and adequate resolution for the Classes. In particular, the Settlement balances the objective of securing the highest possible recovery with recognition of the substantial risks, costs and uncertainty of continued litigation, including the very real possibility that the Classes could receive nothing, or a sum far less than the Settlement Amount, after a trial and any appeals are completed. Accordingly, Lead Plaintiff and Lead Counsel believe that the Settlement is in the best interests of Class Members and represents a favorable result.

## II.    BACKGROUND LEADING TO THE SETTLEMENT

### A.    Procedural History Of The Action

This is a consolidated securities class action brought against Defendants (as well as now-dismissed Former Defendants) asserting violations of Sections 10(b), 14(e), and 20(a) of the Securities Exchange Act of 1934 as well as provisions parallel to Section 10(b) under Israeli securities laws, on behalf of three certified Classes:

> (1) all persons who purchased Perrigo's publicly traded common stock between April 21, 2015 and May 2, 2017, both dates inclusive, on the New York Stock Exchange or any other trading center within the United States and were damaged thereby;

(2) all persons who purchased Perrigo's publicly traded common stock between April 21, 2015 and May 2, 2017, both dates inclusive, on the Tel Aviv Stock Exchange and were damaged thereby; and

(3) all persons who owned Perrigo common stock as of November 12, 2015 and held such stock through at least 8:00 a.m. Eastern time on November 13, 2015 (whether or not a person tendered their shares in response to the tender offer of Mylan, N.V.).

Excluded from these Classes are the Defendants; Former Defendants; any current or former Officers or directors of Perrigo; the Immediate Family Members of any Defendant, Former Defendant, or any current or former Officer or director of Perrigo; any entity that any Defendant or Former Defendant owns or controls, or owned or controlled during the Class Period; and the legal representatives, heirs, agents, affiliates, successors, or assigns of any such excluded persons and entities.

The Amended Complaint (ECF No. 89) asserted misrepresentations about Perrigo's organic growth, the integration and the resulting performance of its Omega division, the concealment of anticompetitive practices in its generic drug unit, and misrepresentations about royalties related to a drug called Tysabri. *Id.* Defendants moved to dismiss all claims. ECF Nos. 114, 119. After full briefing, the Court sustained certain claims related to Omega and generic drugs, but granted dismissal of claims related to organic growth and Tysabri, as well as of certain Omega and generic-drug related statements it deemed forward-looking. ECF No. 137. The Court also dismissed all claims against Former Defendants who were non-executive directors of the Company and Marc Coucke, the founder of Omega. *Id.*

The three Classes were certified on November 14, 2019 (ECF Nos. 226-227). To Lead Plaintiff's knowledge, the certification of the TASE Purchaser class, protecting those investors who purchased Perrigo shares in Israel rather than in the United States, represented the first time

that a foreign investor class had been certified in the United States since the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010).

After a petition for interlocutory review was denied by the United States Court of Appeals for the Third Circuit, potential Class Members were notified by direct mail, publication, and website of the pendency of this Action and the Court's certification of the three Classes (ECF Nos. 292, 311) ("Class Notice").   Class Members were informed by the Class Notice that they had a right to exclude themselves, so long as they did so prior to December 3, 2020.  *Id.*  Approximately twenty individuals and entities, mostly litigants in direct action cases filed in this District, excluded themselves.  ECF No. 331-1.  Other direct action litigants moved in their respective cases for an order excluding them from the Classes, and were granted exclusion by this Court.  Accordingly, the Classes currently consist of members who were already provided a full and fair opportunity to exclude themselves from this Action, but chose not to do so.

After extensive written, deposition, and expert discovery closed, Defendants Perrigo and Joseph C. Papa, and Former Defendant Judy Brown each separately moved on April 9, 2021 for summary judgment dismissing all claims, and to exclude each of Plaintiffs' three experts on *Daubert* grounds.  ECF Nos. 342-353.  Plaintiffs opposed each of these motions.  The summary judgment record involved several hundred exhibits spanning many thousands of pages.  On April 7, 2022, the Court heard more than seven hours of oral argument on summary judgment.  ECF No. 385.

The Action was then reassigned to Chief Judge Renée Marie Bumb.  On August 17, 2023, the Court entered an Opinion and Order (ECF Nos. 400 and 401) granting in part and denying in part the summary judgment motions, the effect of which was to substantially narrow Plaintiffs' claims.  The Order: (i) granted summary judgment to all claims against Former Defendant Judy

Brown; (ii) granted summary judgment as to Defendant Papa on all generic drug-related claims; (iii) suggested that the Court would grant summary judgment as to remaining generic drug-related claims against Perrigo but reserved ruling until further briefing was received and oral argument held on the issue of corporate scienter; (iv) reserved ruling on Defendants' *Daubert* motions until after an evidentiary hearing was held; and (v) made clear that Defendants would be permitted to renew their motion for summary judgment on loss causation after that hearing. *Id.*

### B.      Negotiations Leading To The Settlement

The Settlement is the culmination of several years of hard-fought, arms-length negotiation. The Parties first attempted to mediate their dispute in an all-day, in-person session before experienced mediator Hon. Daniel Weinstein (Ret.), the founder of JAMS ADR, in March 2018. They did so again in December 2019.   Both attempts were unsuccessful.   After another unsuccessful remote mediation session in April 2021 before Judge Weinstein, Magistrate Judge Wettre offered to conduct a settlement conference, which both sides accepted.   With the assistance of Magistrate Judge Wettre, and to a lesser extent, Judge Weinstein and his team, the Parties negotiated on and off during the following year, all to no avail.   Negotiations resumed again after the summary judgment opinion was issued with an in-person mediation session before Magistrate Judge Wettre in September 2023, followed by several remote sessions.   Magistrate Judge Wettre held a final in-person mediation session at the end of February 2024, which resulted in a mediator's proposal that the Parties settle the Action for the Settlement Amount.   Both sides accepted the mediator's proposal, resulting in the Settlement.

### C.      Nature Of The Settlement

The Settlement requires $97,000,000 to be paid into an Escrow Account for the benefit of Class Members.   That amount, plus interest that accrues thereon, comprises the Settlement Fund. Notice to Class Members and the cost of settlement administration ("Notice and Administration

Expenses") will be funded by the Settlement Fund.   Stipulation, ¶12.   Once Notice and Administration Expenses, Taxes,[2] and Court-approved attorneys' fees and expenses, including interest thereon, any awards to Lead Plaintiff or its members, and any other Court-approved deductions have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00.

Within sixteen (16) days of Preliminary Approval, the Claims Administrator shall use the shareholder records gathered for Class Notice to send a link to the proposed Notice and Proof of Claim, substantially in the form set forth in Ex. A-1 and A-2 to the Stipulation, to those for whom an email address is available, and mail a proposed Postcard Notice substantially in the form set forth in Ex. A-4 to those for whom only a mailing address is available, and shall send sufficient Postcard Notices and Notice and Proof of Claim links to each nominee to forward to their beneficial holders in the same manner requested in connection with Class Notice.   The Claims Administrator will also seek to provide notice to any additional potential Class Members by sending the Notice to a broad list of nominees to identify any additional beneficial holders who were not on the notice list generated in connection with Class Notice, and will publish Summary Notice substantially in the form attached hereto as Ex. A-3 on national newswires in both the United States and Israel.   The notices sent and published in Israel will be translated into Hebrew.

The Postcard Notice and Summary Notice will direct Class Members to the website maintained by the Claims Administrator, www.PerrigoSecuritiesLitigation.com, where each Class Member can find the Stipulation and its exhibits, the Preliminary Approval Order, the

---

[2] Because the Settlement Fund is a "qualified settlement fund," under Treas. Reg. §1.468B-1, the income earned on the Settlement Fund is taxable. All Taxes and Tax Expenses shall be paid out of the Settlement Fund.

longer Notice and the Proof of Claim and Release Form, directions on how to complete and submit Proof of Claims forms electronically and how to request that a Proof of Claim form and related documents, including the Notice, are mailed to the Class Members.  The notices will also describe the terms of the Settlement and the attorneys' fees award and expense reimbursement and compensatory awards that may be sought, and will provide the date of the Settlement Hearing, as well as the procedures for objecting to the foregoing matters.

After a competitive bidding process, Lead Counsel selected JND Legal Administration (the "Claims Administrator" or "JND") to administer notice and process claims for the Settlement. The administrator is well known and experienced in the administration of securities fraud class action settlements.  Additionally, JND administered the Class Notice and therefore already has an established database of potential Class Members and an established website for this action.

No later than thirty-five (35) days before the Settlement Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorney fees, expenses, and awards to Lead Plaintiff.  Those papers will explain why the Settlement should be approved and will describe Lead Counsel's efforts on behalf of the Classes (including the time and rates of each employee of Plaintiffs' counsel who contributed to the outcome).  No fewer than seven (7) days before the Settlement Hearing, Lead Counsel will submit reply papers in further support of the motion for final approval of the Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses, and for awards to Lead Plaintiff and its members.

Any Class Member who objects to the Settlement or related matters must do so no later than twenty-one (21) days before the Settlement Hearing, and must send copies of such objections

to the Court as well as designated counsel for the Class and Defendants.  These provisions, and

timeline, are standard in securities class action settlements.

## III.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.   The Standards In This Circuit Favor Preliminary Approval

In the Third Circuit, there is a "strong presumption in favor of voluntary settlement

agreements," which is "especially strong in 'class actions and other complex cases where

substantial judicial resources can be conserved by avoiding formal litigation.'" *Ehrheart v. Verizon*

*Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (*quoting In re Gen. Motors Corp. Pick-Up Truck Fuel*

*Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)); *see also In re Warfarin Sodium Antitrust*

*Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class

action litigation, and it should therefore be encouraged."); *In re Sch. Asbestos Litig.*, 921 F.2d

1330, 1333 (3d Cir. 1990).

A class action settlement should be approved if the Court finds it "fair, reasonable, and

adequate."  Fed. R. Civ. P. 23(e)(2).  At this stage, only preliminary approval is sought.

"Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously

deficient."  *Jones v. Com. Bancorp, Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007).

Preliminary approval should be granted where "the parties show[] that the Court will likely be able

to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment

on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(2) considers:

(A)   have the class representatives and class counsel adequately represented the class;

(B)   was the proposal negotiated at arm's length;

(C)   is the relief provided for the class adequate, taking into account:

    i.   the costs, risks, and delay of trial and appeal;
    ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   iii. the terms of any proposed award of attorneys' fees, including timing of payment; and

   iv. any agreement required to be identified under Rule 23(e)(3); and

(D) does the proposal treat class members equitably relative to each other.

These factors overlap with those set forth by the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975):

> (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

The *Girsh* factors "are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010). The Third Circuit has explained that there is an initial "presumption of fairness" of the settlement if this Court finds that: "(1) the settlement negotiations [are conducted] at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *See Warfarin*, 391 F.3d at 535.

 Each of these factors favor preliminary approval.

**B. The Settlement Is Fair**

 The first two factors for the Court's consideration under Rule 23(e)(2) are the adequacy of representation for the class and the arm's-length nature of the settlement negotiations. *See* Fed. R. Civ. P. 23(e)(2)(A)-(B). These two factors overlap with the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed. *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) (Courts have held that "a presumption of fairness

exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors.").

First, Lead Plaintiff and Lead Counsel have zealously represented the Classes throughout this litigation. They thoroughly investigated claims, drafted a viable amended complaint, successfully opposed Defendants' motion to dismiss, conducted extensive fact and expert discovery, successfully obtained class certification, successfully opposed Defendants' petition for interlocutory appeal, successfully opposed Defendants' attempt to end this litigation entirely at summary judgment, prepared their case for trial, and successfully negotiated the Settlement. *See In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016).

Lead Counsel are highly competent lawyers who possess substantial litigation experience, including experience in prosecuting complex securities class actions. Pomerantz LLP ("Pomerantz") and Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") have each successfully prosecuted hundreds of securities class actions on behalf of damaged investors. *See, e.g.*, *In re: Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016), *aff'd in part, vacated in part sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) (finding Pomerantz is "qualified, experienced and able to conduct the litigation," in case achieving a $3 billion settlement); *Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *8 (D.N.J. May 3, 2022) (finding Pomerantz to be "highly experienced," to have "won substantial recoveries" in securities class actions and "qualified"); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2021 WL 148752, at *11 (S.D.N.Y. Jan. 15, 2021) (appointing BLB&G, "a firm highly experienced in securities class action litigation," as class counsel); *In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2591402, at *18 (S.D.N.Y. Nov. 12, 2004) (in case where over $6 billion was recovered, the Court noted that, "[t]he quality of the

representation given by Lead Counsel [which included BLB&G] is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation.").

Additionally, there can be no question that the Settlement was the result of arms'-length negotiation.  It represents the culmination of five years of negotiation, including several mediation sessions with both a highly experienced private mediator and Magistrate Judge Wettre.  The use of "an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties."  *Teh Shou Kao v. CardConnect Corp.*, 2021 WL 698173, at *7 (E.D. Pa. Feb. 23, 2021).  Because of the extensive litigation and discovery that had already taken place, "counsel had an adequate appreciation of the merits of the case before negotiating" the Settlement.  *Warfarin*, 391 F.3d at 537.  Thus, they "were sufficiently well prepared and informed enough to engage in robust settlement negotiations."  *Yaeger v. Subaru of Am., Inc.*, 2016 WL 4541861, at *10 (D.N.J. Aug. 31, 2016).  And, that "the settlement was the result of a mediator's proposal after [multiple] mediations gives it additional weight."  *McDermid v. Inovio Pharms., Inc.*, 2023 WL 227355, at *5 (E.D. Pa. Jan. 18, 2023).

### C.       The Settlement Is Reasonable and More than Fair

Rule 23(e)(2)(C)(i), which overlaps *Girsh* factors 1 and 4-9, instructs the Court to consider the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal could inevitably impose.[3]  *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i) *with Girsh*, 521 F.2d at 157 (factor one focuses on the complexity, expense, and likely duration of the litigation; factors four through nine focus on risks).  These factors weigh in favor of approval of the Settlement.

---

[3] The second *Girsh* factor, the reaction of the class to the settlement, does not yet apply, and will be addressed at the final approval stage after the Class Members have been given notice of the Settlement and have had an opportunity to be heard.

"Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013). This case, which was filed in 2016, and substantially narrowed at both the motion to dismiss and summary judgment stages, and faced more risks than usual. If litigation continued, summary judgment almost certainly would be entered against Plaintiffs on the sole remaining generic drug-related claim against Perrigo. After that, Plaintiffs would risk a *Daubert* hearing and ruling which could result in the exclusion of some or all experts, and a renewed motion for summary judgment on loss causation.

While Lead Plaintiff and Lead Counsel believe their case would ultimately survive to trial, there would be no assurance of any recovery. Lead Plaintiff's remaining claims were based on a narrow set of alleged misrepresentations, which could have been difficult to prove, principally through evidence to be presented through adverse witnesses. At trial, proving scienter "would have been very difficult." *In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 645 (D.N.J. 2004). Additionally, proving the materiality of Omega misrepresentations, loss causation, and damages would likely hinge on a battle of the experts. A "jury's acceptance of expert testimony is far from certain, regardless of the expert's credentials. And, divergent expert testimony leads inevitably to a battle of the experts." *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 962 F. Supp. 450, 539 (D.N.J. 1997), *aff'd,* 148 F.3d 283 (3d Cir. 1998); *see also Par Pharm.*, 2013 WL 3930091, at *6 (noting "the inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context"); *In re CIGNA Corp.*, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (approving settlement in similarly "complex" case in which, like here, there were "considerable risks in establishing damages, particularly in view of the determined and respectable loss causation arguments put forward by Defendants").

Obtaining an award of damages for Plaintiffs' §14(e) claim would be difficult at trial. Plaintiffs would have to prove that the Mylan tender offer would have likely succeeded but for Defendants' misrepresentations about Omega, which would require the jury to find: (a) that Mylan would have made the tender offer, and offered the same level of consideration, had the true state of Omega been known; (b) that investors, who only tendered ~40% of shares in the tender offer, would have tendered more than 50% if the truth was known (and more than 80% to cleanly show damages); (c) that a tender of more than 50% but less than 80%, which would have made Perrigo a subsidiary of Mylan but would not have forced the exchange of shares, would have resulted in damages to Perrigo shareholders; and (d) that if a merger was completed, the share portion of the merger consideration would not have declined so substantially that it would significantly reduce or eliminate damages.  Lead Plaintiff is not aware of any §14(e) case in which damages have been awarded under these circumstances.

And, even if Plaintiffs prevailed at trial, Defendants would likely appeal.  To the extent that any greater recovery was achieved, it would likely be delayed for at least an additional two years.  *See Alves v. Main*, 2012 WL 6043272, at *21 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014) (finding settlement approval was warranted as the recovery provides immediate benefits and "continued litigation involves considerable risk that the Plaintiffs would lose the merits of the case"); *In re Schering-Plough Corp. Sec. Litig.*, 2009 WL 5218066, at *5 (D.N.J. Dec. 31, 2009) ("pushing for more in the face of risks and delay would not be [in] the interests of the class").  In light of all of these risks, Lead Plaintiff and Lead Counsel believe that the immediate recovery provided by the Settlement is in the best interests of the Classes.  *See Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019) (courts should "give credence to the estimation of the probability of success proffered by class counsel, who are

experienced with the underlying case, and the possible defenses which may be raised to their cause of action.").

Here, the Settlement Amount falls squarely within the range of reasonableness in light of the attendant risks and best possible recovery. The damages here were complex and highly contested throughout the litigation and in the Parties' settlement discussions. After consulting with damages experts, Lead Counsel estimate that the Settlement represents a recovery of 5.59% to 7.98% of estimated *maximum* aggregate §10(b) damages available at trial, depending upon which disclosures survived.[4] Defendants argued that Plaintiffs' claims were subject to numerous risks and that the Classes' damages were substantially lower. By any calculation, the recovery here compares favorably with benchmark recoveries in this Circuit and elsewhere. *See, e.g., Schuler v. Medicines Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (approving settlement representing 4.0% of estimated recoverable damages and noting that the "percentage falls squarely within the range of previous settlement approvals"); *In re Hemispherx Biopharma, Inc., Sec. Litig.*, 2011 WL 13380384, at *6 (E.D. Pa. Feb. 14, 2011) (approving settlement representing 5.2% of the maximum damages and finding that it "falls squarely within the range of reasonableness approved in other securities class action settlements"); *In re Am. Bus. Fin. Servs. Inc. Noteholders Litigation*, 2008 WL 4974782, at *7 (E.D. Pa. Nov. 21, 2008) (approving settlement that provided 2.5% recovery of damages); *In re AT & T Corp.*, 455 F.3d 160, 169 (3d Cir. 2006) (affirming settlement for 4% of total damages).[5]

---

[4] In light of the lack of precedent in calculating §14(e) damages under the circumstances here, and the lack of jury awards of damages under those circumstances, Lead Plaintiff and Lead Counsel do not include §14(e) damages in their estimate. Nevertheless, the Plan of Allocation provides a recovery for such claims because they are part of the release.

[5] That Perrigo might be able to sustain a larger settlement shows no infirmity here. The "fact that [defendants] could afford to pay more does not mean that [they are] obligated to pay any more than what the [] class members are entitled to under the theories of liability that existed at the time

### D.      The Remaining Rule 23(e) Factors Support Preliminary Approval

#### 1.      Rule 23(e)(2)(c)(ii): The Proposed Method for Processing Claims

The method for processing Class Members' claims includes well-established and effective procedures that are used in virtually all securities class actions.  JND, the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  The claims processing method proposed here is standard in securities class action settlements.  It has been long found to be effective and reasonable.

#### 2.   Rule 23(e)(2)(c)(iii): The Terms Of Any Proposed Fee Award Are Reasonable

As disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 20% to compensate them for the services they have rendered on behalf of the Classes, and litigation expenses not to exceed $4.5 million, plus interest earned on these amounts at the same rate as earned by the Settlement Fund.  The proposed fee percentage is lower than usual for securities fraud class actions, which frequently involve fees of 30-33% or more.  *See, e.g., In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-34 (E.D. Pa. 2001) (approving attorneys' fee of 33% of $48 million settlement of securities class action); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515–16 (S.D.N.Y. 2009) (33.33% of $510 million); *Landmen Partners Inc. v. Blackstone Grp., L.P.*, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 13, 2013) (33.33% of $85 million).  Lead Counsel would seek that fee to be paid upon award, as occurs in virtually all securities fraud class actions in this District.

---

the settlement was reached."  *Warfarin*, 391 F.3d at 538.

### 3. Rule 23(e)(2)(c)(iv):    The Parties Have Identified All Agreements

Lead Plaintiff has identified all agreements made in connection with Settlement.   In addition to the Stipulation itself, Lead Plaintiff and Perrigo have entered into a confidential Supplemental Agreement regarding exclusion.  *See* Stipulation ¶ 41.  As this Court is aware, Class Notice was already provided to potential Class Members and all were given a full and fair opportunity to exclude themselves if they so wished.  Many did.  *See supra* at 5.  The Parties therefore agree that no second opportunity for exclusion should be provided.  *See* Stipulation, ¶ 1(f).

"Due process does not require a second opt-out period."  *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2020 WL 5211035, at *13 (E.D. Pa. Sept. 1, 2020) (*quoting In re Nat. Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 423 (E.D. Pa. 2015)).  To the contrary, as the Committee's Notes to the 2003 Amendments to Fed. R. Civ. P. 23 make clear, the "decision whether to approve a settlement that does not allow a new opportunity to elect exclusion is confided to the court's discretion."  Fed. R. Civ. P. 23 Cmte. Notes; *Winn-Dixie*, 2020 WL 5211035, at *13.  *See also Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1309 (S.D. Cal. 2017) (approving settlement without second opt-out period and holding that neither due process nor Rule 23(e) require a second opportunity to exclude), *aff'd*, 881 F.3d 1111 (9th Cir. 2018); *In re HIV Antitrust Litig.*, 2023 U.S. Dist. LEXIS 170754, at *41 (N.D. Cal. Sep. 25, 2023) (same, and further noting that a second opt-out period is particularly unnecessary where, as here, the parties likely to opt out are "sophisticated").  *Accord Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) ("Neither due process nor Rule 23(e)(3) requires, however, a second opt-out period ….  Requiring a second opt-out period as a blanket rule would disrupt settlement proceedings …").

This Supplemental Agreement, which would be applicable only in the event that the Court required a second opportunity for Class Members to request exclusion from the Classes,

establishes the conditions under which Perrigo may terminate the Settlement if the "opt-outs" from the Classes exceed an agreed-upon threshold.  "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement."  *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020).[6]

### 4. Rule 23(e)(2)(D): The Plan Of Allocation Treats Class Members Equitably Relative To Each Other

As discussed in Section IV below, the Settlement calls for all Class Members to be effectively apprised of the Settlement, the reasons therefore, and the risks and potential benefits of continued litigation.  The Notice also informs Class Members how the net proceeds of the Settlement will be equitably and effectively distributed among Class Members who return a valid claim form.  *See* Ex. A-1 to Stipulation at Appendix A.[7]

A plan of allocation will be approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013).  Here, the Plan is fair, reasonable, and adequate because it does not treat Lead Plaintiff or any other Class Member preferentially.  *See In re Ocean Power Techs., Inc., Sec. Litig.*, 2016 WL 7638464, at *1 (D.N.J. June 7, 2016).  The Plan, set out in the Notice attached as Exhibit A-1 to the Stipulation, explains how the Settlement proceeds will be distributed among Authorized Claimants.  The Plan provides

---

[6] As is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact an individual settlement.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts.").  In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera* if the Court requests.

[7] To protect the Classes from the uncertain status of direct action litigants who did not previously request or move for exclusion but nonetheless continue to litigate directly against Perrigo, the Plan of Allocation provides that any direct action litigant shall, no later than thirty (30) days after entry of the Preliminary Approval Order, dismiss said direct action or be barred from receiving payment in the Settlement.

that each Class Member will receive a *pro rata* share equal to all other Class Members who bought and sold at the same time.  Lead Plaintiff and all other Class Members will receive their payment pursuant to the same formula.  It has been crafted by Lead Counsel and Lead Plaintiff's damages experts, and is intended to fairly reflect the strengths and weaknesses of each type of claim.  *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 358611, at \*3 (D.N.J. Feb. 1, 2021), *aff'd in part, appeal dismissed in part sub nom. TIAA v. Valeant Pharms. Int'l, Inc.*, No. 21-1218, 2021 WL 6881210 (3d Cir. Dec. 20, 2021) ("courts give great weight to the opinion of qualified counsel" when assessing whether a plan of allocation is fair, reasonable and adequate); *In re Hemispherx Biopharma, Inc., Sec. Litig.*, 2011 WL 13380384, at \*7 (noting favorably in approving plan of allocation that it "has a rational basis and was developed by experienced Class Counsel in conjunction with a damages expert").

## IV.    THE PROPOSED PLAN OF NOTICE SHOULD BE APPROVED

Rule 23(e) governs notice requirements for settlement or "compromises" in class actions. The rule provides that a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.  Fed. R. Civ. P. 23(e).  The rule provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  In addition, Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Here, the proposed Notice provides detailed information concerning: (1) the rights of Class Members, including the manner in which objections can be lodged; (2) the nature, history, and progress of the litigation; (3) the proposed Settlement; (4) how to file a Claim Form; (5) a description of the Plan of Allocation; (6) the fees and litigation expenses to be sought by Lead

Counsel; and (7) how to contact the Claims Administrator and Lead Counsel and how to obtain further information regarding the proposed Settlement. *See* Stipulation, Ex. A-1. Plaintiffs request that the Court approve its selection of Claims Administrator, JND Legal Administration, to administer the dissemination of notice and analysis of claims received.

The proposed Preliminary Approval Order, Ex. A to the Stipulation, mandates that Lead Counsel provide Class Members notice of the Settlement by mailing by first-class mail, the Postcard Notice, or emailing, if possible, a link to the Notice and Proof of Claim form, to Class Members who can be identified with reasonable effort. Stipulation, Ex. A at ¶¶8-9. The Claims Administrator shall use the notice database established in connection with Class Notice to ensure that all recipients identified at that time receive notice by these means, and shall also send requests to a broad range of nominees that any additional potential Class Members that may have held shares as beneficial owners be identified. All forms of Notice will be translated into Hebrew for the benefit of Israeli class members. *Id.* at ¶8. Contemporaneously with the mailing of the Postcard Notice and emailing of links, the Claims Administrator shall cause copies of the Notice, Proof of Claim form, and other key documents to be posted on the litigation website previously established in connection with Class Notice, www.PerrigoSecuritiesLitigation.com, a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded. *Id.* at ¶11. Additionally, Summary Notice will be disseminated electronically at least once in a national newswire in the United States, and once in a national newswire in Israel. *Id.* at ¶12.

The proposed Notice and its dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 435

(3d Cir. 2016), *as amended* (May 2, 2016). "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014). The form and manner of providing notice to Class Members are the best practicable under the circumstances and satisfy due process, Rule 23, and the PSLRA. *See, e.g., Kanefsky v. Honeywell Int'l Inc.*, No. 2:18-cv-15536, ECF No. 179, at 3-5 (D.N.J. Jan. 18, 2022) (approving a similar notice program).

## V.   PROPOSED SCHEDULE OF EVENTS

The Parties respectfully propose for the Court's consideration the following schedule of events in connection with the Settlement Hearing, as set forth in the Preliminary Approval Order filed herewith: if the Court agrees with the proposed schedule, Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date in August, 2024 at least 110 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the final Settlement Hearing. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.

| Event | Deadline for Compliance | Example Date[8] |
|---|---|---|
| Mailing of Postcard Notice | No later than sixteen (16) calendar days after the entry of the Preliminary Approval Order) (the "Notice Date"). (Preliminary Approval Order ¶ 8) | April 29, 2024 |
| Publication of Summary Notice | No later than ten (10) calendar days after the Notice Date (Preliminary Approval Order ¶12) | May 9, 2024 |

---

[8] The example dates provided are based on the assumptions that the Court enters the Preliminary Approval Order on April 12, 2024, and schedules the Settlement Hearing for August 5, 2024.

| | | |
|---|---|---|
| Date for Lead Plaintiff to file papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and expenses | No later than thirty-five (35) calendar days before the Settlement Hearing (Preliminary Approval Order ¶22) | July 1, 2024 |
| Filing deadline for objections | Received no later than 21 calendar days before the Settlement Hearing (Preliminary Approval Order ¶ 18) | July 15, 2024 |
| Date for Claims to be Filed | Postmarked or submitted electronically no later than ten (10) calendar days before the Settlement Hearing (Preliminary Approval Order ¶ 15(a)) | July 26, 2024 |
| Date for Lead Plaintiff to file reply papers in further support of the Settlement, the Plan of Allocation and for application for attorneys' fees and expenses | No later than seven (7) calendar days before the Settlement Hearing (Preliminary Approval Order ¶ 23) | July 29, 2024 |
| Date for Settlement Hearing | To be set by the Court at least 110 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. (Preliminary Approval Order ¶ 6) | August 5, 2024 |

## VI.    CONCLUSION

For all of these reasons, Plaintiffs respectfully request that the Court preliminarily approve the Settlement, the proposed Plan of Allocation, and the proposed Plan of Notice, and set a Settlement Hearing in August, 2024 at least 110 days after entry of the Preliminary Approval Order.

DATED:  April 5, 2024

**LOWENSTEIN SANDLER LLP**

/s/ Michael B. Himmel
Michael B. Himmel
One Lowenstein Drive
Roseland, NJ  07068
(973) 597-2500
mhimmel@lowenstein.com

*Liaison Counsel for Lead Plaintiff
and the Classes*

**POMERANTZ LLP**

Joshua B. Silverman (*pro hac vice*)
Omar Jafri (*pro hac vice*)
10 South LaSalle Street
Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
jbsilverman@pomlaw.com
ojafri@pomlaw.com

Jeremy A. Lieberman (*pro hac vice*)
Thomas Przybylowski (*pro hac vice*)
600 Third Avenue
New York, NY 10016
Telephone: (212) 661 1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
tprzybylowski@pomlaw.com

*Co-Lead Counsel*

**BERNSTEIN LITOWITZ
BERGER & GROSSMANN LLP**
Gerald H. Silk *(pro hac vice)*
James A. Harrod (*pro hac vice*)
Jessie L. Jensen (*pro hac vice*)
1251 Avenue of the Americas
New York New York 10020
Telephone: (212) 445-1400
Facsimile: (212) 554-1444
Jerry@blbglaw.com
Jim.harrod@blbglaw.com
Jesse.jensen@blbglaw.com

*Co-Lead Counsel*