## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ROOFERS' PENSION FUND, on behalf of itself and all others similarly situated,

v.

PERRIGO COMPANY PLC and JOSEPH C. PAPA, and JUDY BROWN,

Defendants.

Civ. A. No.: 16-cv-2805-MCA-LDW

Class Action

---

**SCULPTOR PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR AN ORDER EXCLUDING THEM FROM THE ROOFERS' CLASS ACTION SETTLEMENT, PROVIDING A SECOND OPPORTUNITY TO OPT OUT, OR ENLARGING THEIR TIME TO OPT OUT**

---

**CALCAGNI & KANEFSKY, LLP**

Mariellen Dugan
One Newark Center
1085 Raymond Blvd., 14th Floor
Newark, New Jersey 07102
(862) 233-8319
MDugan@ck-litigation.com

*Counsel for Plaintiffs Sculptor Master Fund, Ltd., f/k/a Oz Master Fund, Ltd., and Sculptor Enhanced Master Fund, Ltd., f/k/a Oz Enhanced Master Fund, Ltd.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 4

    **A.**    **The Pleadings** ............................................................................................ 4

    **B.**    **The Class Action Notice and Opt-Out Period** ......................................... 5

    **C.**    **The Sculptor Individual Action** ................................................................ 6

    **D.**    **The Class Action Settlement** .................................................................... 8

ARGUMENT ................................................................................................................... 9

I.      Sculptor Expressed Its Intention To Exclude Itself From The Class Action ..................... 9

II.    The Class Action Notice Failed To Apprise Class Members That They Would Be Bound By A Class Settlement Without A Further Opt-Out Opportunity ......................... 15

III.   Any Failure By Sculptor To Formally Opt Out Constitutes Excusable Neglect Meriting Relief ................................................................................................................ 19

    **A.**    **Permitting Sculptor To Opt Out Would Not Prejudice Defendants** .................... 21

    **B.**    **Sculptor Acted Without Delay After This Issue Arose And Permitting Sculptor To Opt Out Would Merely Continue Existing Judicial Proceedings** ... 21

    **C.**    **The Cause Of Any Delay Is Unclear, And Reflects At Most An Honest Mistake On Sculptor's Part** ......................................................................... 22

    **D.**    **Sculptor Has Acted In Good Faith Throughout** ......................................... 24

    **E.**    **Equity Also Favors Extending The Opt-Out Deadline For Sculptor** .................. 25

    **F.**    **The Court's Prior Extension Of The Opt-Out Deadline In Similar Circumstances In This Case Also Favors Granting Sculptor's Motion** .............. 27

IV.   Perrigo Defendants Are Estopped From Challenging Sculptor's Opt-Out Status ............ 28

CONCLUSION ................................................................................................................ 29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bonner v. Tex. City Indep. Sch. Dist. of Tex.,*
 305 F.Supp. 600 (S.D. Tex. 1969) .......................................................................11

*Carmignac Gestion S.A. v. Perrigo Co. plc, et al.,*
 No. 17-cv-10467 (D.N.J. Nov. 1, 2017) ..........................................................27, 28

*Drazen v. Pinto,*
 101 F.4th 1223 (11th Cir. 2024) ..........................................................................16

*In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.,*
 2017 WL 2829599 (D.N.J. June 30, 2017) ....................................... 11, 13, 20-24

*In re Celgene Corporation Sec. Litig.,*
 No. 2:18-cv-04772 (D.N.J) ..................................................................................18

*In re Del-Val Fin. Corp. Sec. Litig.*
 154 F.R.D. 95 (S.D.N.Y. 1994) ...........................................................................20

*In re Four Seasons Sec. L. Litig.,*
 493 F.2d 1288 (10th Cir. 1974) .........................................................................9, 10

*In re Ins. Brokerage Antitrust Litig.,*
 2009 WL 2255513 (D.N.J. July 24, 2009)................................................ 22-24, 27

*In re Ins. Brokerage Antitrust Litig. (MDL 1663),*
 374 F. App'x 263 (3d Cir. 2010)...........................................................................25

*In re Linerboard Antitrust Litig.,*
 223 F.R.D. 357 (E.D. Pa.), *amended*, 223 F.R.D. 370 (E.D. Pa. 2004).................9, 10, 15

*In re Mylan N.V. Sec. Litig.,*
 No. 1:16-cv-07926 (S.D.N.Y) ..............................................................................18

*In re Processed Egg Prods. Antitrust Litig.,*
 130 F. Supp. 3d 945 (E.D. Pa. 2015) ................................10, 20, 21, 23, 24, 27

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions,*
 148 F.3d 283 (3d Cir. 1998)..................................................................................16

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.,*
 177 F.R.D. 216 (D.N.J. 1997).........................................................................18, 19, 28

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
  164 F.R.D. 362 (S.D.N.Y.), *aff'd sub nom. In re Prudential Sec. Inc. Ltd.*
  *P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996) ...................................................................20

*Krouse v. Am. Sterilizer Co.*,
  126 F.3d 494 (3d Cir. 1997)........................................................................................29

*Manhattan-Ward, Inc. v. Grinnell Corp.*,
  490 F.2d 1183 (2d Cir. 1974).......................................................................................20

*Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*,
  120 F.R.D. 51 (N.D. Ill. 1988)......................................................................................20

*McCubbrey v. Boise Cascade Home & Land Corp.*,
  71 F.R.D. 62 (N.D. Cal. 1976).............................................................11, 15, 16, 17, 19

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950).......................................................................................................16

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  2010 WL 4116852 (C.D. Cal. Aug. 18, 2010).........................................................17

*Nelson v. AvalonBay Communities, Inc.*,
  2018 WL 1151714 (D.N.J. Mar. 5, 2018)...................................................................25

*Phillips Petroleum v. Shutts*,
  472 U.S. 797 (1985).......................................................................................................16

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
  507 U.S. 380 (1993).......................................................................................................26

*Plummer v. Chem. Bank*,
  668 F.2d 654 (2d Cir. 1982)............................................................................................9

*Skilstaf, Inc. v. CVS Caremark Corp.*,
  669 F.3d 1005 (9th Cir. 2012) ......................................................................................19

*Tennille v. W. Union Co.*,
  785 F.3d 422 (10th Cir. 2015) ......................................................................................18

*Twigg v. Sears, Roebuck & Co.*,
  153 F.3d 1222 (11th Cir. 1998) ....................................................................................16

*United States v. Asmar*,
  827 F.2d 907 (3d Cir. 1987)..........................................................................................28

**Statutes**

Fed. R. Civ. P. 6(b) ...........................................................................................1, 3, 19, 20

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................................................16

Fed. R. Civ. P. 23(d) ...........................................................................................1, 19, 20

Fed. R. Civ. P. 23(e)(4) ...........................................................................................19

Fed. R. Civ. P. 60(b)(1)...........................................................................................1, 19, 20

The Sculptor Plaintiffs ("Sculptor") move under Federal Rules of Civil Procedure 6(b), 60(b)(1) and 23(d) for an order modifying the judgment granting preliminary approval of Lead Plaintiff's settlement, on behalf of itself and class members, with the Perrigo Defendants ("Perrigo" or "Defendants"), to exclude Sculptor from the settlement or, alternatively, to provide a second opportunity to opt out of the Class Action or to enlarge the time for Sculptor to opt out.

## PRELIMINARY STATEMENT

In the fall of 2020, during the opt-out period of this Class Action, Sculptor's counsel intended to, and may have, submitted an opt-out form to the claims administrator formally opting out of the Class Action. However, Sculptor was not included in the claims administrator's list of parties that had opted out of the class. More than three years later, it is unclear whether Sculptor's opt-out request was: (1) never mailed by its then-counsel; (2) mailed but not received by the claims administrator; or (3) mailed and received but not properly processed.

What is eminently clear, however, is that during the past three-and-a-half years, both Sculptor and Perrigo have known that Sculptor intended to opt out of the Class Action, and have acted as if Sculptor did so, including by continuing to litigate an individual action, *Sculptor Master Fund, Ltd. v. Perrigo Company plc*, No. 2:19-cv-04900 (D.N.J.) (the "Individual Action"). Far from treating this Individual Action as if it had been filed by a class member who would be bound by any resolution of the Class Action, the parties instead treated it for what it was: an opt-out action. For example, Perrigo sought to dismiss the *Sculptor* Individual Action on grounds that are incompatible with Sculptor being a member of the class, adopted discovery schedules and procedures that are incompatible with Sculptor being a member of the class, and even structured the settlement of the Class Action to allow for the inclusion of a provision that is incompatible with Sculptor being a member of the class. And Perrigo has not just litigated as if Sculptor had opted out; it has expressly stated as much, referring to the *Sculptor* Individual Action as an "opt-

out action" and "individual action" and characterizing Sculptor as an "Opt-Out Plaintiff" in filing after filing.

Perrigo now asks the Court to disregard Sculptor's clear expression of its intent to opt out, and Perrigo's acknowledgement of the same, on the grounds that Sculptor did not follow the precise opt-out steps set forth in the Class Notice.  Regardless of whether that is true—a question of fact that neither party is able to fully determine—any failure to actually submit the opt-out form does not change Sculptor's de facto opt out or eviscerate the separate Individual Action that Sculptor has pursued for years.  The Court should reject Defendants' gamesmanship for at least four independent reasons.

***First***, all that is required to opt out of a class action is a "reasonable indication" of an intent to opt out, which Sculptor unambiguously provided, whether or not it submitted the opt-out form. Sculptor filed a separate Individual Action against Perrigo, continued to actively litigate that Individual Action before, during, and after the opt-out period, collaborated with Perrigo and other opt-out plaintiffs to establish a discovery schedule that was separate from the Class Action, opposed Perrigo's attempts to bar Sculptor's individual claims on timeliness grounds that Perrigo argued applied to Sculptor as an opt-out plaintiff, and produced documents during fact discovery conducted separately from the Class Action—all while representing itself as an opt-out plaintiff before this Court (including in repeated filings to Magistrate Judge Wettre, who also presides over the Individual Action).  All of those events provided more than the necessary "reasonable indication" of Sculptor's intent to opt out, which was so unmistakably clear that all parties, including Defendants and Class Counsel, have treated Sculptor as an opt-out plaintiff *for years*.

***Second***, Perrigo's attempt to hold Sculptor to the exact letter of the Class Action Notice reveals the inadequacy of that notice.  Unlike the class action notices that class counsel have used

in other securities class actions, the Notice in this case failed to apprise class members with individual actions that they must formally exclude themselves or face the consequences of having their individual actions barred by a potential settlement. Thus, Defendants cannot, consistent with due process, seek to enforce the Notice to preclude Sculptor's Individual Action due to a subsequent settlement that the Notice never warned might erase individual actions. Perrigo should not be permitted to elevate form over substance when it suits its own purposes but ignore the same when inconvenient. The Court could remedy the deficiency of the Class Action Notice either by finding that Sculptor's Individual Action is not barred or by providing Sculptor with a second opportunity to opt out.

*Third*, even if Sculptor's indication of its intent to exclude itself were insufficient, pursuant to Fed. R. Civ. P. 6(b), Sculptor respectfully asks the Court for permission to submit an opt-out form after the deadline. Sculptor's good faith oversight in ensuring that an opt-out form was mailed, received, and/or processed by the claims administrator constitutes excusable neglect warranting an extension of the opt-out deadline. Indeed, this Court already granted another opt-out plaintiff an extension when it sought to opt out after the deadline due to excusable neglect. Sculptor is in the exact same position, only several years later—time that has only passed because Sculptor believed, and Perrigo acted as if, Sculptor *had already* opted out. Equity favors granting Sculptor's request because Perrigo should not receive a windfall merely because of a technical error, particularly one that Perrigo never sought to clarify during the multiple years of litigating the Individual Action. Defendants' remaining silent for years—inducing Sculptor to expend significant resources to litigate the Individual Action—and then covertly permitting the insertion of a provision in the Plan of Allocation conditioning *any* recovery by Sculptor on its dismissal of the Individual Action should not be rewarded. It is also in the best interest of absent class members

3

to consider Sculptor as an opt-out plaintiff as Sculptor's inclusion would only serve to dilute other class members' recovery from the settlement.

**Fourth**, equitable and judicial estoppel prohibit the Perrigo Defendants from challenging Sculptor's opt-out status more than three years after the exclusion deadline.

Sculptor therefore respectfully requests that the Court reject the Perrigo Defendants' contention that Sculptor is included within the Class Action settlement, or alternatively, permit Sculptor to opt out at this point, either through an exception to the deadline or the grant of a second opportunity to opt out.

## STATEMENT OF FACTS

### A.    The Pleadings

In June 2017, Lead Plaintiff Perrigo Institutional Investor Group filed an amended putative class complaint alleging that the Perrigo Defendants violated Sections 10(b), 14(e), and 20(a) of the Securities Exchange Act of 1934 and the Israel Securities Law of 1968 by making material misrepresentations and omissions related to Perrigo's organic growth rate, integration and overvaluation of Omega Pharma N.V., collusive pricing and pricing pressure in Perrigo's generic drugs division, and deterioration of value of Perrigo's royalty stream for the drug Tysabri, in order to discourage Perrigo shareholders' acceptance of the Mylan N.V.'s 2015 tender offer.  *Roofers'*, ECF No. 89, Amend. Compl. ¶¶ 1, 24, 273.  After the Court granted in part and denied in part Perrigo's motion to dismiss in July 2018, *see Roofers'*, ECF No. 136, the Lead Plaintiff and the Perrigo Defendants engaged in discovery involving document production and review, and depositions of fact and expert witnesses.  On November 30, 2018, the Lead Plaintiff moved for class certification.  *Roofers'*, ECF No. 163-1.

On February 6, 2019, the Sculptor Plaintiffs filed their individual complaint, also in the District of New Jersey, asserting claims against the Perrigo Defendants under Sections 10(b),

14(e), and 20(a) of the Securities Exchange Act of 1934, on the basis of the same material misrepresentations and omissions. *Sculptor*, ECF No. 1, Compl. ¶¶ 1-17, 33. Sculptor collectively held over 2.59 million shares of Perrigo common stock, owning around 5% of the company, that it purchased between April 8, 2015 and May 3, 2017. *Id.* ¶ 37.

### B.    The Class Action Notice and Opt-Out Period

A year after the motion for class certification, the Court certified the class and appointed the Lead Plaintiff as the Class Representative and its counsel as the Class Counsel. *Roofers'*, ECF No. 226. Starting in August 2020, the *Roofers'* Notice of Pendency of Class Action ("Class Action Notice" or "Notice") was mailed to potential class members and established a December 3, 2020, deadline to opt out of the Class Action. Discussing the rights and consequences of remaining in the class, the Class Action Notice provided:

> If the Classes prevail on the common issues, or if a settlement is reached, you may be able to recover an award. If Defendants prevail, you may not pursue a lawsuit on your own behalf with regard to any of the issues decided in this Action.

*Roofers'*, ECF No. 292, Ex. 2 at 3.

During the fall of 2020—a period when COVID-19 cases were on the rise, vaccines were not publicly available, and Sculptor's counsel were working remotely—Sculptor's then-lead counsel, Leigh Nathanson, had requested and understood that an associate at her firm submitted an opt-out form to the claims administrator excluding Sculptor from the Class Action. L. Nathanson Decl. (Nathanson Decl.) ¶ 6. After more than three years, it is unclear whether the opt-out form was in fact never mailed notwithstanding Ms. Nathanson's understanding, whether the request was mailed but not received, or whether the claims administrator received but did not properly process Sculptor's opt-out request. *Id.* ¶ 12. Whatever the explanation, on January 5, 2021, Joshua B. Silverman, one of the Class Counsel, filed a declaration listing persons and entities

that requested exclusion—a list that did not include the Sculptor Plaintiffs.  *Roofers'*, ECF No. 331-1.

### C.    The Sculptor Individual Action

Believing it had opted out, Sculptor continued to litigate the Individual Action for more than three years after the exclusion deadline.  During the opt-out period, representing itself as an "Individual Action" Plaintiff, together with other opt-out plaintiffs, Sculptor negotiated with Perrigo on a discovery schedule that was separate from the Class Action and obtained approval on the same from the Court.  *Sculptor*, ECF Nos. 102, 104.

Perrigo's conduct after the exclusion deadline not only acknowledged that Sculptor had opted out of the Class Action, but also sought to take advantage of that fact.  On December 7, 2020, just days after the opt-out deadline, Defendants sought leave to file a motion for judgment on the pleadings in six opt-out actions, including Sculptor's Individual Action, arguing that these actions were time-barred because "*American Pipe* tolling does not apply to independent opt-out actions filed before a court has decided to certify a class."  *Sculptor*, ECF No. 110, at 1.  Defendants also stated: "The complaint in each of these opt-out Actions demonstrates that Plaintiffs discovered (or a reasonably diligent plaintiff would have discovered) the alleged facts more than two years before those complaints were filed."  *Id.* at 2.  In response, Sculptor pointed out Defendants' gamesmanship in seeking to dismiss individual actions only after the opt-out period.  *See Sculptor*, ECF No. 112, at 1 ("Rather than file motions to dismiss on statute of limitations grounds when these actions were first filed, Defendants waited until December 7, 2020—just six days after the deadline for class members to opt out of the Class had passed—to seek leave to file motions pursuant to Fed. R. Civ. P. 12(c).").

Defendants' conduct thereafter in the Individual Action litigation further confirmed their understanding of Sculptor's opt out. *See*, *e.g.*, *Sculptor*, ECF Nos. 117 (Feb. 19, 2021) (providing the Court with a status update and including Sculptor's action in the "List of Individual Actions"); 119 (Mar. 10, 2021) (submitting a joint letter by the Perrigo Defendants and opt-out plaintiffs, including Sculptor, to inform the Court about the separate discovery schedule applicable to the individual actions); 126 (June 16, 2021) (notifying the Court that "[f]act discovery closed in each of the Individual Actions" with Defendants having taken 14 depositions and listing Sculptor's action as one of the Individual Actions); 132 (Sept. 29, 2021) (informing the Court about ongoing expert discovery and listing Sculptor's action as an Individual Action); 137 (Jan. 5, 2022) (updating the Court on the parties' intention to wait until resolution of summary judgment motions in the Class Action with Sculptor's action listed as an Individual Action); ECF No. 353-138 (Ex. 131) (Subramanian Rep.) (Aug. 6, 2021) at 9, n. 21 (Perrigo's expert referring to Sculptor as one of the "Opt-Out Plaintiffs" and defining this term as "those who **have opted out** of the related Class Action *Roofers' Pension Fund v. Papa, et. al.*, No. 2:16-cv-02805-MCA-LDW (D.N.J.)") (emphasis added).

Unsurprisingly, based on the parties' representations, the Court also appears to have understood Sculptor to be an opt-out plaintiff. *See*, *e.g.*, *Sculptor*, ECF Nos. 120 (Mar. 24, 2021) (amending the scheduling order to reflect the proposal made by the Individual Action plaintiffs, including Sculptor, and Defendants); 130 (Aug. 23, 2021) (extending the expert discovery deadline with Sculptor's case caption listed on top with other opt-out plaintiffs); 133 (Oct. 8, 2021) (order about expert discovery deadline with Sculptor's case caption listed along with other opt-out plaintiffs); 139 (Jan. 7, 2022) (recognizing completion of "discovery in the above-captioned

Individual Actions" including the Sculptor action and administratively closing these actions pending outcome of the summary judgment motions in the Class Action).

### D.    The Class Action Settlement

In the Class Action, the Perrigo Defendants moved for summary judgment in April 2021, which this Court granted in part and denied in part.  *Roofers'*, ECF Nos. 342, 400.  After four in-person mediation sessions over the 2018 to 2024 period, Lead Plaintiff and the Perrigo Defendants agreed on a proposal to settle the Class Action, releasing all claims known and unknown that were asserted or could have been asserted in the Class Action complaint against Perrigo in exchange for a $97 million settlement fund, with distributions to class members upon submission of valid Claim Forms.  On April 5, 2024, the Parties filed a Stipulation and proposed Plan of Allocation establishing the terms and conditions of the settlement.  *Roofers'*, ECF No. 424.

Under the proposed class settlement, assuming all Class Members submitted a valid claim form for their shares, the estimated average recovery is $0.693 per eligible share.  *Roofers'*, ECF No. 424-2 ¶ 3.  Separate from the standard provisions on a class-wide release of claims against the Perrigo Defendants, the Plan of Allocation also includes a bespoke provision—plainly targeted at Sculptor—that states:

> Any Class Member that has maintained a direct action against Perrigo related to the Released Plaintiffs' Claims shall have a Recognized Loss of zero and be barred from receiving any payment in the Settlement, unless said direct action is dismissed within thirty (30) days of preliminary approval of the Settlement.

*Roofers'*, ECF No. 424-2, App. A ¶ 23.

On April 23, 2024, the Court granted preliminary approval of this settlement conditioned on a Settlement Hearing to determine fairness, reasonableness, and adequacy of the settlement and the proposed Plan of Allocation.  *Roofers'*, ECF No. 427, at 2.

On April 30, 2024, during a call with defense counsel, the Perrigo Defendants contended, for the first time, that the Sculptor Plaintiffs had failed to formally opt out of the Class Action and, therefore, were precluded from pursuing their Individual Action against the Defendants. Nathanson Decl. ¶ 9. While the Perrigo Defendants contended that the Sculptor Plaintiffs were required to formally opt out of the Class Action, their counsel has since refused to disclose when during the more than three years since the opt out deadline the Perrigo Defendants came to understand that Sculptor Plaintiffs had not submitted a formal opt-out notice. J. Pickhardt Decl. (Pickhardt Decl.) ¶ 3. Immediately following the April 30 conversation, Sculptor's then-lead counsel notified lead Class Counsel about the issue and requested an extension of the Plan of Allocation's 30-day deadline to dismiss any individual action against the Defendants to partake in the class recovery, in order to give Sculptor the opportunity to seek relief from the Court in connection with its opt-out status. Nathanson Decl. ¶ 10.

On May 22, 2024, Class Counsel agreed to waive the Plan of Allocation's 30-day deadline, provided that Sculptor timely filed a motion to adjudicate its exclusion status, timely submitted a claim form in the Class Action that would be treated as conditional until the opt-out motion was resolved, and agreed to not object to or seek to delay the class settlement. *Id.* ¶ 11. On July 1, 2024, after informing the Perrigo Defendants and conferring with Class Counsel, Sculptor filed its pre-motion letter seeking leave to file this motion, which the Court granted on July 8, 2024. *Roofers'*, ECF Nos. 429, 431.

## ARGUMENT

### I. SCULPTOR EXPRESSED ITS INTENTION TO EXCLUDE ITSELF FROM THE CLASS ACTION

A formal opt-out request is not necessary for class members to exclude themselves from a class action. Instead, "a 'reasonable indication' of intent to opt out is sufficient." *In re Linerboard Antitrust Litig.*, 223 F.R.D. 357, 365 (E.D. Pa.), *amended*, 223 F.R.D. 370 (E.D. Pa. 2004); *see*

*also, e.g.*, *Plummer v. Chem. Bank*, 668 F.2d 654, 657 n. 2 (2d Cir. 1982) ("[W]e find nothing in Rule 23 which requires [class members] to file written reasons for their exercise of choice. Any reasonable indication of a desire to opt out should suffice."); *In re Four Seasons Sec. L. Litig.*, 493 F.2d 1288, 1291 (10th Cir. 1974) ("Counsel for appellant would have us lay down a rule that in order to opt out the request must be explicit. The trial court here ruled that the important question was whether notice was communicated. We consider this to be the correct judicial approach to the problem, since we are not construing a will, a deed or a contract. A reasonable indication of a desire to opt out ought to be sufficient."). "This standard is necessary to give effect to the Due Process right to opt out identified by the Supreme Court in *Phillips Petroleum v. Shutts*, 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)." *Linerboard*, 223 F.R.D. at 365.

"[T]o give a 'reasonable indication' of its intent to opt out, the party must perform some action that is unambiguously inconsistent with an intention to participate in the settlement." *In re Processed Egg Prods. Antitrust Litig.*, 130 F. Supp. 3d 945, 952 (E.D. Pa. 2015). "In determining whether a party has given a reasonable indication of its intent to opt out, courts use considerable flexibility." *Linerboard*, 223 F.R.D. at 366; *see also Four Seasons.*, 493 F.2d at 1291 ("[C]onsiderable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude himself[.]"). An opt-out request does not need to be explicit; instead, "the important question [is] whether notice was communicated." *Four Seasons*, 493 F.2d at 1291.

Here, as described above, Sculptor clearly and unambiguously demonstrated its intention to exclude itself from the Class Action, both before the opt-out deadline and for years afterwards. In February 2019—over two months after Lead Plaintiff had moved for class certification and more than 21 months before the opt-out deadline—Sculptor initiated the Individual Action.

Sculptor thereafter actively participated in taking fact discovery with the Perrigo Defendants and filed at least three letters informing the Court about the status of discovery. Representing itself to the Court as an "Individual Action" plaintiff, Sculptor collaborated with other opt-out plaintiffs to negotiate a discovery schedule that was separate from the schedule in the Class Action and obtained Court approval of this proposed schedule. *Sculptor*, ECF Nos. 102 (Aug. 12, 2020), 104 (Aug. 17, 2020); *see*, *e.g.*, *Bonner v. Tex. City Indep. Sch. Dist. of Tex.*, 305 F.Supp. 600, 617 (S.D. Tex. 1969) (holding that trial testimony of three teachers that expressed their disapproval of the Class Action was sufficient to constitute a request for exclusion).

The discovery schedule—negotiated prior to the opt-out deadline—also made unambiguously clear that Sculptor (and the other opt-out plaintiffs) intended to opt out of the Class Action. Not only did it provide for discovery on a schedule wholly different from the Class Action, but the schedule provided for a fact discovery deadline that went beyond the formal opt-out deadline. Such a schedule made no sense unless Sculptor had excluded itself from the Class Action; Sculptor would have no need or ability to pursue the Individual Action beyond the opt-out deadline if it intended to remain in the class and be bound by whatever resolution resulted in the Class Action. *See McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 71 (N.D. Cal. 1976) (finding that class members sufficiently conveyed their request for exclusion where "no reasonable person could view their conduct as expressing a desire to participate in the proposed settlement"). Thus, in effect, "[b]y litigating throughout the opt-out period, [Sculptor] essentially opted out[.]" *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 2017 WL 2829599, at *6 (D.N.J. June 30, 2017).

Each of these actions by Sculptor was individually sufficient to constitute the requisite "reasonable indication" of its intent to opt-out of the Class Action; and taken together, they left no

11

doubt.  Yet, the Court need not rely on whether Sculptor's actions *should* have constituted reasonable notice of its intent to opt out as there is overwhelming evidence that it *did* provide notice, which was understood by everyone involved, that Sculptor had, in fact, opted out of the Class Action.

*First*, Perrigo's post-exclusion motion practice plainly evidences its understanding that Sculptor had opted out.  Merely days after the opt-out deadline, Defendants sought leave to file a motion for judgment on the pleadings that Sculptor's Individual Action, along with five other opt-out actions, were time-barred because "tolling does not apply to *independent opt-out actions* filed before a court has decided to certify a class."  *Sculptor*, ECF No. 110 at 1 (emphasis added); *see id*. at 2 ("The complaint in *each of these opt-out Actions* demonstrates that Plaintiffs discovered (or a reasonably diligent plaintiff would have discovered) the alleged facts more than two years before those complaints were filed.") (emphasis added).  Through this motion, Perrigo not only expressly labeled Sculptor's individual claims an "independent opt-out action[]," it also sought to take advantage of Sculptor's decision to opt out by waiting until days after the opt-out deadline so that, if successful, the opt-out actions would be found untimely *and* the opt-out plaintiffs would also be ineligible to obtain class recovery since they had already excluded themselves from the Class Action.  *See Sculptor*, ECF No. 112 ("Rather than file motions to dismiss on statute of limitations grounds when these actions were first filed, Defendants waited until December 7, 2020—*just six days after the deadline for class members to opt out* of the Class had passed—to seek leave to file motions pursuant to Fed. R. Civ. P. 12(c).") (emphasis added).

*Second*, the Parties continued to actively litigate the Sculptor action separate from the Class Action in a manner that was flatly contradictory to any suggestion that Sculptor had not opted out.  Fact discovery in the Class Action ended on December 31, 2020, *see Roofers'*, ECF No. 296 at 2;

12

yet, *after* that date, Perrigo took full discovery of the opt-out plaintiffs, including Sculptor, and

even conducted a 30(b)(6) deposition of Sculptor's representative.  *See Sculptor*, ECF No. 126 at

1 ("Between February 1, 2021 and the close of the fact discovery period, the Individual Action

Plaintiffs produced 29,000 documents (in excess of 160,000 pages) and Defendants have taken 14

depositions across the Individual Actions.").  Expert discovery in the Class Action ended on

January 31, 2021, s*ee Roofers'*, ECF No. 296 at 2; yet, *after* that date, and with the Court's

approval, the parties conducted full expert discovery in the Individual Action, which ended on

November 10, 2021, and was separate from the Class Action.  *See Sculptor*, ECF No. 130 at 7.

Indeed, Perrigo's expert defined "Opt-Out Plaintiffs" as "those who *have opted out* of the related

Class Action *Roofers' Pension Fund v. Papa, et. al.*, No. 2:16-cv-02805-MCA-LDW (D.N.J.)[,]"

and expressly included Sculptor within this definition.  ECF No. 353-138 (Ex. 131) (Subramanian

Rep.) at 9, n. 21 (emphasis added).[1]

All of these efforts would have been wasteful and pointless if, as Defendants now claim,

Sculptor had not opted out and remained a part of the class.  Yet at no point during the more than

three years at issue did Perrigo ever indicate to Sculptor or the Court that it even questioned, let

alone believed, that Sculptor had not opted out.  *See Caterpillar*, 2017 WL 2829599, at *4 (finding

---

[1]    As noted above, this was hardly the only time during the past several years that Perrigo
acknowledged and represented that Sculptor was an opt-out plaintiff.  *See, e.g., Sculptor*, ECF
Nos. 117 (Feb. 19, 2021) (providing the Court with a status update and including Sculptor's action
in the "List of Individual Actions"); 119 (Mar. 10, 2021) (submitting a joint letter by the Perrigo
Defendants and opt-out plaintiffs, including Sculptor, to inform the Court about the separate
discovery schedule applicable to the individual actions); 126 (June 16, 2021) (notifying the Court
that "[f]act discovery closed in each of the Individual Actions" with Defendants having taken 14
depositions and listing Sculptor's action as one of the Individual Actions); 132 (Sept. 29, 2021)
(informing the Court about ongoing expert discovery and listing Sculptor's action as an Individual
Action); 137 (Jan. 5, 2022) (updating the Court on the parties' intention to wait until resolution of
summary judgment motions in the Class Action with Sculptor's action listed as an Individual
Action).

that "[defendant] Caterpillar's counsel in Texas could have clarified the situation by simply timely asking the question of opposing counsel in the contested litigation: 'Is your client accepting the class settlement?'").

*Third*, these same developments appear to have led the Court to similarly conclude—for *years*—that Sculptor is an opt-out plaintiff. In the Individual Action, the Court granted orders approving scheduling amendments, supervised extensive fact and expert discovery that was conducted separately from the Class Action, and oversaw the Parties' separate mediation efforts. *See*, *e.g.*, *Sculptor* ECF Nos. 120 (Mar. 24, 2021) (amending scheduling order based on proposal by Individual Action plaintiffs, including Sculptor, and the Perrigo Defendants); 130 (Aug. 23, 2021) (extending expert discovery deadline with Sculptor's case caption listed on top as an opt-out plaintiff); 133 (Oct. 8, 2021) (order about expert discovery deadline with Sculptor's case caption listed with other opt-out plaintiffs); 139 (Jan. 7, 2022) (recognizing completion of "discovery in the above-captioned Individual Actions" including the Sculptor action and administratively closing these actions pending outcome of summary judgment motions in the Class Action).

*Fourth*, the inclusion of an otherwise superfluous provision in the proposed Plan of Allocation suggests that the Defendants were aware that Sculptor intended to opt out. Apparently tailor-made to target Sculptor, Provision 23 requires: "Any Class Member that has maintained a direct action against Perrigo related to the Released Plaintiffs' Claims" to dismiss that action "within thirty (30) days of preliminary approval of the Settlement" or else forfeit all recovery as a member of the class. *Roofers'*, ECF No. 424-2, App. A ¶ 23. If Perrigo believed that Sculptor had never intended to opt out, Provision 23 would be superfluous because members are already subject to a class-wide release. This provision's inclusion thus indicates that Perrigo **knew** that Sculptor

14

had intended to, and believed it had, opted out, and sought to exploit that status by allowing for the addition of a provision that requires Sculptor to dismiss its Individual Action within 30-days of preliminary approval of the settlement—*months* before the claims deadline and the Settlement Hearing—or else risk recovering nothing in either action.

The Court should not tolerate Defendants' change of position, especially when deployed in an opportunistic "gotcha" strategy to force Sculptor to forfeit the substantial investment it has made in the Individual Action on pains of losing any recovery at all. Sculptor clearly expressed its intention to exclude itself from the Class Action and that intention was unambiguously communicated to—and understood by—the Perrigo Defendants. It is precisely for situations like this that courts are permitted "considerable flexibility" when determining whether a party provided a "reasonable indication" of its intention to opt out. *Linerboard*, 223 F.R.D. at 366; *see also McCubbrey*, 71 F.R.D. at 70 ("The serious due process implications of holding an absent member bound by a class adjudication demand that we ***look beyond formalistic procedures to evaluate whether a class member has reasonably expressed a desire to be excluded*** from a class suit.") (emphasis added). By the standards governing opt outs from class actions, which seek to align the existence of binding class actions with individual litigants' due process rights, Sculptor opted out.

## II.    THE CLASS ACTION NOTICE FAILED TO APPRISE CLASS MEMBERS THAT THEY WOULD BE BOUND BY A CLASS SETTLEMENT WITHOUT A FURTHER OPT-OUT OPPORTUNITY

Defendants' attempt to elevate the technicalities of opt-out procedures in the Class Action Notice over the abundant evidence that Sculptor had "reasonably indicated" its intent to opt out only serves to highlight a fatal flaw in that Notice: it never disclosed that class members who did not opt out would be bound by a settlement. Instead, the Notice only warned that a class loss ***on the merits*** would bar individual actions:

15

> If the Classes prevail on the common issues, or if a settlement is reached, you may be able to recover an award. If Defendants prevail, you may not pursue a lawsuit on your own behalf with regard to any of the issues decided in this Action.

*Roofers'*, ECF No. 292, Ex. 2 at 3.  This limitation of a bar on pursuing individual lawsuits to situations in which "Defendants prevail" suggested an expectation that class members would be provided with a further opportunity to opt out of any proposed settlement, particularly in light of the preceding sentence, which covered both merits decisions and settlements.

Because the Notice failed to adequately disclose the implications of not opting out if the Class Action eventually settled, it was insufficient to deprive Sculptor of its rights in the Individual Action.  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  Indeed, "[i]n the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class."  *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 306 (3d Cir. 1998).  A class action notice, therefore, must be "[t]he best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and "should describe the action and the [class members'] rights in it."  *Phillips Petroleum v. Shutts*, 472 U.S. 797, 812 (1985).

A class action notice that "fail[s] to perform its function of providing an adequate basis for informed decision-making" is insufficient under the "due process criteria[.]"  *McCubbrey*, 71 F.R.D. at 67-68; *see Drazen v. Pinto*, 101 F.4th 1223, 1262 (11th Cir. 2024) (explaining that "[Rule 23](c)(2)(B) is meant to provide absent class members with more, not less, information, so that

16

they can make an informed decision about opting-out or not" and that "[t]his is buttressed with the Rule's command to direct 'the best notice that is practicable.'"); *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) ("[U]nder Rule 23.... Not only must the substantive claims be adequately described but the [class action] notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action.") (citations omitted); *see, e.g., Negrete v. Allianz Life Ins. Co. of N. Am.*, 2010 WL 4116852, at *12-13 (C.D. Cal. Aug. 18, 2010).

Applying these principles, courts have rejected class action notices as inadequate when such notices failed to properly apprise class members with pending individual actions that they "must satisfy the exclusion requirements or suffer the consequence of permitting [their] ongoing litigation to evaporate." *McCubbrey*, 71 F.R.D. at 68; *see id.* at 67 ("[D]ue process demands that the options available to class members and the consequences of their elections be detailed with sufficient clarity to afford absent members a realistic opportunity to evaluate alternative options available to them."); *see also Negrete*, 2010 WL 4116852, at *12-13 (finding the "*Mooney* notice inadequate to bind the absent class members" because the *Mooney* notice failed to inform class members with overlapping claims that "their certified class claims in *Negrete* would somehow be extinguished by an adverse judgment in *Mooney*").

Applying these principles, the Notice in this case did not apprise investors with pending individual actions that the failure to timely opt out of the Class Action would preclude them from continuing or initiating their own action against the Perrigo Defendants in the event Lead Plaintiff elected to settle the Class Action claims rather than pursue them to a final judgment. In this regard, the Class Action Notice stands in stark contrast to the language used in class notices from other securities cases, including those involving Class Counsel here. Those other notices were

17

emphatically clear that the failure to opt out creates a blanket bar on current and subsequent individual actions relating to the issues raised in the class action—not just a bar in the event the defendants prevail on the merits.  For example, in *In re Celgene Corporation Securities Litigation*, No. 2:18-cv-04772 (D.N.J), the notice of pendency of class action informed:  "However, if you remain a member of the Class, ***you may not pursue a lawsuit on your own*** behalf with regard to any of the issues in the Action in connection with your purchase/acquisition of Celgene common stock."  *Celgene*, ECF No. 199, Ex. 1 at 5 (emphasis added).  The *In re Mylan N.V. Securities Litigation*, No. 1:16-cv-07926 (S.D.N.Y), notice of pendency of class action provided:  "If you choose to remain in the Class, ***you will not be able to pursue a lawsuit on your own*** with regard to any of the issues that were or could have been decided in this Action." *Mylan*, ECF No. 218-2, Ex. B at 3 (emphasis added).  *See also In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. 216, 239 (D.N.J. 1997) (finding the class notice adequate where it "explicitly informs class members that, absent exclusion, a class member will not be able to continue his or her own lawsuit" with the inclusion of language that stated "IF YOU REMAIN A MEMBER OF THE CLASS, YOU CANNOT BRING YOUR OWN LAWSUIT AGAINST PRUDENTIAL FOR MISLEADING SALES PRACTICES."); *Tennille v. W. Union Co.*, 785 F.3d 422, 436-37 (10th Cir. 2015) (holding that the notice "adequately apprised putative class members of the nature of the claims at issue" where it informed class members that "if they did not opt out, they would give up their right to sue Western Union for the claims that this settlement resolves and they won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Western Union about the legal issues in this case ever again") (citations omitted).

It is ironic that the Perrigo Defendants seek to elevate form over substance by challenging Sculptor's opt-out status on technical grounds and yet wish to ignore that the Class Action

Notice—unlike the *Celgene* and *Mylan* examples—did not apprise class members that failure to timely opt out would bar their ongoing individual actions against Defendants in the event of a class settlement. The Perrigo Defendants should not be allowed to advance form over substance when it suits them while ignoring the technical errors in the Notice. This Court could correct the inadequacy of the Notice here by either finding that Sculptor's Individual Action against the Perrigo Defendants is not barred, *see e.g.*, *McCubbrey*, 71 F.R.D. at 69, or, alternatively, providing absent class members with the second opportunity to opt out of the class at the settlement stage as implied by the Notice's narrow description of when individual actions would be barred. *See* Fed. R. Civ. P. 23(e)(4) ("[T]he court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so."); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1024 (9th Cir. 2012) (recognizing that "due process was satisfied by affording [plaintiff] a second opt-out opportunity").

III. **ANY FAILURE BY SCULPTOR TO FORMALLY OPT OUT CONSTITUTES EXCUSABLE NEGLECT MERITING RELIEF**

Even if the Court finds that Sculptor's expression of its intent to opt out was insufficient **and** that the Class Action Notice sufficiently apprised investors that their individual actions would be barred by a class settlement unless they formally opted out, the Court should still grant Sculptor the relief sought in this motion. Where an opt-out deadline has elapsed, "a Court retains the power to permit class members an extension of time to opt out pursuant to Federal Rules of Civil Procedure 6(b)(2), 60(b) or 23(d)." *Prudential Ins.*, 177 F.R.D. at 235.[2] Indeed, the Court has already exercised that power to allow another opt out after the deadline in this very case. *See infra*

---

[2]    Some of the cases cited, including *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. 216, 235 (D.N.J. 1997), reference Rule 6(b)(1)(B)'s predecessor, Rule 6(b)(2).

III.F.  If the Court finds that Sculptor has not already opted out, it should allow Sculptor to do so now.

Rule 6(b)(1)(B) allows the Court to extend the time to opt out of a class action after the exclusion deadline if the party failed to act because of excusable neglect.  *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time … on motion made after the time has expired if the party failed to act because of excusable neglect.").[3]  A finding of excusable neglect would also permit the Court, under Rule 60(b)(1), to relieve Sculptor from the Court's preliminary approval of the class settlement.  *See* Fed. R. Civ. P. 60(b)(1) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for … mistake, inadvertence, surprise, or excusable neglect").[4]  And Rule 23(d) grants the Court authority to "make appropriate orders to manage a class action." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 164 F.R.D. 362, 369 n. 4 (S.D.N.Y.), *aff'd sub nom.* 107 F.3d 3 (2d Cir. 1996).  Courts apply an identical excusable neglect standard under 6(b)(1)(B), 60(b)(1), and 23(d).  *See Manhattan-Ward, Inc. v. Grinnell Corp.*, 490 F.2d 1183, 1186 (2d Cir. 1974) ("We assume that Rules 6(b)(2) and 60(b)(1) cover excusable neglect by a party, or by its attorneys, or by both, and we also agree … that the relevant standards are no different if the matter is viewed as arising simply under the court's discretion to implement Rule 23.").

Four factors determine whether Sculptor's conduct constitutes excusable neglect:  "(1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential effect on judicial

---

[3]  *See e.g.*, *In re Del-Val Fin. Corp. Sec. Litig.*, 154 F.R.D. 95, 96 (S.D.N.Y. 1994); *Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 120 F.R.D. 51, 52-53 (N.D. Ill. 1988).

[4]  *See e.g.*, *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 2017 WL 2829599, at *2 (D.N.J. June 30, 2017); *In re Processed Egg Prod. Antitrust Litig.*, 130 F. Supp. 3d 945, 953 (E.D. Pa. 2015).

proceedings; (3) the reason for the delay, including whether it was within the reasonable control

of the movant; and (4) whether the movant acted in good faith." *Caterpillar*, 2017 WL 2829599,

at *4 (citing *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 246 F.3d 315, 321-323 (3d Cir.

2001)). In this case, each of these factors supports granting Sculptor's opt-out request.

### A.      Permitting Sculptor To Opt Out Would Not Prejudice Defendants

"[P]rejudice is not an imagined or hypothetical harm[.] [Rather] a finding of prejudice

should be a conclusion based on facts in evidence." *Processed Egg*, 130 F. Supp. 3d at 954 (citing

*In re O'Brien Envt'l Energy, Inc.,* 188 F.3d 116, 127 (3d Cir. 1999)). The only consequence to

Defendants in granting Sculptor's request is that they must continue litigating an individual action

that they have litigated for over three years without raising the purported opt-out issue. This is not

the type of prejudice that justifies denying an extension of the opt-out deadline. *Id.* ("[T]o find

prejudice, courts typically require more than the fact that the defendant will face an additional

lawsuit."); *see also Caterpillar*, 2017 WL 2829599, at *4-5 (finding that "danger of prejudice to

Caterpillar is slight" where "Caterpillar continued to defend in Texas throughout the opt-out

period, making the assumption that [plaintiff] must have opted out of this class settlement"). This

factor accordingly favors granting Sculptor's motion.

### B.      Sculptor Acted Without Delay After This Issue Arose And Permitting Sculptor To Opt Out Would Merely Continue Existing Judicial Proceedings

The second factor, which assesses the length of the delay and potential effect on

proceedings, "weighs in favor of finding excusable neglect" because "the litigation between

[Sculptor] and [Defendants] has continued without any significant interruption." *Processed Egg*,

130 F. Supp. 3d at 955. There is no set duration of delay that weighs against a finding of excusable

neglect—rather courts consider the circumstances at hand when making the determination. *See*,

*e.g.*, *id.*; *Caterpillar*, 2017 WL 2829599, at *5. And the facts of this case show neither delay nor

any disruption.  When Sculptor's counsel first learned of this issue at the end of April, counsel promptly informed lead Class Counsel and the Court and promptly sought leave to file this motion—all before the proposed class settlement is finalized.  Nathanson Decl. ¶¶ 9, 10.  And there is no reason to fear any "copycat" attempts to opt out of the class after the deadline, as there is no other purported class member that has litigated an individual opt-out action (and been labeled an opt-out plaintiff by Defendants) since the exclusion period ended.  Sculptor's request for relief is targeted and party-specific.

In similar circumstances, and indeed in even more disruptive ones, courts have found that this factor favors a finding of excusable neglect and thus relief.  *See Caterpillar*, 2017 WL 2829599, at *4-5 (permitting a late opt-out request made *after* the Court's final approval of the proposed class settlement where the plaintiff was litigating her individual action for *several years* while the class action was being settled and noting that the plaintiff's counsel "wrote to class counsel promptly" after learning about the miscommunication on submitting the opt-out form); *see also In re Ins. Brokerage Antitrust Litig.*, 2009 WL 2255513, at *5 (D.N.J. July 24, 2009), *aff'd sub nom.* 374 F. App'x 263 (3d Cir. 2010) (dismissing as meritless arguments that granting plaintiffs' motion for extension of time to opt out would "potentially result in a flood of similar motions and undermine the Settlement Agreement").  Granting Sculptor's opt-out request would neither materially affect the judicial proceedings in this Class Action nor result in any adverse changes to the Court's case management schedule, and thus this factor favors relief as well.

### C.    The Cause Of Any Delay Is Unclear, And Reflects At Most An Honest Mistake On Sculptor's Part

The third factor, which assesses "the reason for the delay, including whether it was within the reasonable control of the movant," turns in the first instance on a factual question that to date the parties have not been able to answer: whether Sculptor's prior counsel failed to submit an opt-

out request, whether an opt-out request was submitted but not received, or whether the claims administrator received but failed to properly include Sculptor's request.  But while the initial delay may have been caused by Sculptor's counsel, the cause of subsequent delay was any party's failure to raise this issue after it became aware of it.  For Sculptor's part, it raised and addressed the issue immediately after the April 30, 2024 call on which the Perrigo Defendants first contended that Sculptor had not opted out and was bound by the class settlement.  Nathanson Decl. ¶¶ 9, 10.  For Defendant's part, they have refused to disclose when they discovered the purported opt-out issue. Pickhardt Decl. ¶ 3.

To be sure, the question of whether Sculptor's opt out had been recognized by the claims administrator could have been caught earlier, including when the list of excluded plaintiffs from the Class Action did not include Sculptor's name.  *See Roofers'*, ECF No. 331-1.  But, as in other cases that have found excusable neglect, Sculptor was "focused on prosecuting [its] case," "[Perrigo's] counsel was silent about the [opt-out] process," and moreover all parties ***treated Sculptor as an opt-out plaintiff***.  *Caterpillar*, 2017 WL 2829599, at *5.  The Third Circuit has "explicitly rejected the argument that excusable neglect applies only to those situations where the failure to comply is a result of circumstances beyond the movant's reasonable control."  *Processed Egg*, 130 F. Supp. 3d at 955 (citations omitted); *see id*. at 956 ("While the reason or cause for delay was within the reasonable control of the Kraft DAPs and their counsel and this factor could weigh against finding excusable neglect, it is not determinative on its own."); *see also Ins. Brokerage*, 2009 WL 2255513, at *5 (concluding that "excusable neglect is appropriate" even if plaintiffs "could have learned of the Settlement Agreement" prior to the opt-out deadline).

### D.    Sculptor Has Acted In Good Faith Throughout

The fourth and final explicit factor considered in finding excusable neglect also favors granting Sculptor's motion.  "[A]n honest oversight that is not part of a sinister, well-conceived plan to frustrate the opponent will not bar a finding of excusable neglect." *Processed Egg*, 130 F. Supp. 3d at 956 (citations omitted).  That is this case.

Sculptor has never sought any tactical advantage from the purported failure to opt out. Sculptor did not pursue two avenues for relief at once, or seek to create optionality, or change its position to seek advantage.  Far from any such "sinister" plan in which Sculptor "willfully miss[ed] the opt-out deadline," its "attorney pursued litigation against [Perrigo] in conformity with opting out[,]" reflecting Sculptor's clear intent and willingness to live with whatever result it could obtain on its own regardless of the Class Action result.  *Caterpillar*, 2017 WL 2829599, at *5; *see Processed Egg*, 130 F. Supp. 3d at 956 (finding good faith where plaintiff's counsel did not file an opt-out request believing it was unnecessary and noting that "given counsel's candid admission of having been wrong, this factor weighs in favor of finding excusable neglect"); *see also Ins. Brokerage*, 2009 WL 2255513, at *6 (holding that the good faith factor "weighs heavily in favor of excusable neglect" where defendant failed to "assert or even allude[] to any bad faith on the part of either [plaintiff]" and opining that "the issue of bad faith was raised, if at all, by [plaintiffs] … in the context of [defendant's] counsel's failure to notify the [plaintiff's] counsel … of the Settlement Agreement during the pendency of state court litigation").

Simply put, there is no argument that Sculptor is at fault for anything more than a good faith mistake.  For more than five years, Sculptor invested significant resources to actively pursue its action, believing it was opting out of the Class Action and representing the same.  At most, Sculptor mistakenly believed it had submitted a formal opt out form, and then spent time, money,

24

and effort litigating on the basis that it had opted out. The good faith that is apparent from these facts further counsels in favor of relief.

### E.    Equity Also Favors Extending The Opt-Out Deadline For Sculptor

Ultimately, "the excusable neglect analysis is an 'equitable inquiry' and is left to the Court's discretion." *Nelson v. AvalonBay Communities, Inc.*, 2018 WL 1151714, at *2 (D.N.J. Mar. 5, 2018); *see In re Ins. Brokerage Antitrust Litig. (MDL 1663)*, 374 F. App'x 263, 266 (3d Cir. 2010) (recognizing that "district court discretion is at its greatest" where its "equitable powers are exercised in the form of case management decisions in a complex class action"). And, in making this "equitable determination," the Court considers "all relevant circumstances surrounding the party's omission." *Nelson*, 2018 WL 1151714, at *2 (quoting *Pioneer Inv. Sews. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Treating Sculptor, here, as a member of the class would be inequitable to both Sculptor *and* to other class members, and would result in an inequitable windfall to Defendants.

***Inequitable To Sculptor.*** Sculptor has expended significant resources litigating the Individual Action, and would suffer significant prejudice if that effort was forfeited after the Perrigo Defendants also repeatedly took the position that it was an opt-out action. Moreover, Sculptor's recovery under the class settlement—which was likely negotiated without accounting for Sculptor's 2.59 million shares of Perrigo common stock—would be significantly lower than its anticipated recovery from its Individual Action. And Sculptor cannot challenge the inadequacy of the class settlement during the Settlement Hearing because, in order to secure Class Counsel's waiver of the Plan of Allocation's 30-day deadline to dismiss its Individual Action, Class Counsel insisted that Sculptor agree to "not object to or seek to delay the Class Settlement." Nathanson Decl. ¶ 11. Denying Sculptor the relief it seeks here would thus leave Sculptor significantly worse

off than Sculptor would have been had it either opted out (as it believed it had, positioning itself for higher recoveries) or not opted out (as Defendants now claim it did, and which would have saved Sculptor the significant litigation expenses it incurred). This inequitable result should not stand.[5]

**Inequitable To Absent Class Members.** Class Counsel and Perrigo's counsel have refused to disclose whether the $0.693 average per share recovery estimate assumes Sculptor as being a member of the Class Action, creating the very substantial likelihood that Sculptor was not accounted for in the Class Action settlement. Pickhardt Decl. ¶¶ 2, 3. In any event, including Sculptor's 2.59 million shares in the Class Action would dilute the settlement and reduce other class members' per share recovery. Beyond the prejudice to the other class members' recovery, to the extent that Class Counsel either did not consider Sculptor as a class member when it negotiated the settlement or at the time of calculating the average per share recovery, this would present a fact that was never disclosed in the Settlement Notice even though it could weigh on class members' consideration as to the fairness and adequacy of the settlement. *See Roofers'*, ECF No. 424. Any such disclosure issue would be rectified by simply excluding Sculptor from the class.

**Inequitable Windfall to Defendants.** For many of the same reasons, requiring Sculptor to participate in the class settlement would represent an unearned and inequitable windfall to Defendants, who would be able to transform a class action settlement that would otherwise only

---

[5] Even though prejudice to the movant is not one of the four factors considered in the excusable neglect balancing test, in *Pioneer*, the Supreme Court recognized that the determination under the excusable neglect analysis "is at bottom an equitable one" and must take into account "all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). As such, the extraordinary prejudice to Sculptor is a "relevant circumstance" that should be considered.

cover a subset of potential plaintiffs into one that also eliminates all claims by one of the biggest

shareholders—a shareholder whose interests may not have been factored into the settlement price.

It would also bless Defendants' gamesmanship of representing Sculptor as an opt-out plaintiff in

its filings for over three years, and then reversing course, claiming that Sculptor had not opted out,

putting Sculptor in the impossible position of either forfeiting the Individual Action it has spent

years litigating or risking no recovery.  Courts properly reject such tactics and outcomes, and this

Court should as well.  *See Processed Egg*, 130 F. Supp. 3d at 954 ("[I]f Cal–Maine were to avoid

defending the lawsuit filed by the Kraft DAPs because the Kraft DAPs mistakenly failed to opt

out, Cal–Maine would actually be enjoying ***an undeserved windfall*** because, were it not for the

mistake, Cal–Maine would have had to litigate against the Kraft DAPs.") (emphasis added); *Ins.*

*Brokerage*, 2009 WL 2255513, at *4 ("[A]ny prejudice [defendant] will suffer is greatly mitigated

by the potential windfall [defendant] would enjoy if [plaintiffs] Epix and Office Depot are not

allowed an extension of time to opt out.").

### F.   The Court's Prior Extension Of The Opt-Out Deadline In Similar Circumstances In This Case Also Favors Granting Sculptor's Motion

Finally, the case for finding excusable neglect is further strengthened by the history of this

litigation, in which the Court has already reached that conclusion in a similar circumstance.

On November 24, 2020, Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz")

transmitted exclusion requests on behalf of its clients to the *Roofers'* claims administrator.

*Carmignac Gestion S.A. v. Perrigo Co. plc, et al.,* No. 17-cv-10467 (D.N.J. Nov. 1, 2017), ECF

Nos. 131-5, 131-6.  However, those requests were not properly delivered.  *Id.*  Upon realizing their

mistake after the exclusion deadline, in January 2021, Kessler Topaz immediately sought relief

and filed a motion for an order excluding their clients from the Class Action, or alternatively,

enlarging their time to file formal requests for exclusion.  *Carmignac*, ECF No. 131.  The Court,

which also presides over the *Carmignac* action, granted Kessler Topaz's late opt-out request, finding that "[a]ll Plaintiffs in the above-captioned actions are hereby excluded from the certified classes in *Roofers' Pension Fund v. Papa, et al.*, No. 2:16-cv-02805" and that their requests for exclusion are "hereby deemed timely-filed." *Carmignac*, ECF No. 136 at 3.

Sculptor apologizes to the Court that its own request for relief comes years after that prior request, but the delay reflects Sculptor's non-wavering belief that it ***had*** in fact opted out. If that belief was mistaken, it was caused by, and not caught due to, excusable neglect by Sculptor's counsel, a ground that fully merits the relief sought here.

## IV.   PERRIGO DEFENDANTS ARE ESTOPPED FROM CHALLENGING SCULPTOR'S OPT-OUT STATUS

The Defendants' consistent, years-long, and express recognition that Sculptor was one of the "***Opt-Out Plaintiffs***" pursuing "***independent opt-out actions***" not only establishes that Sculptor's intent was communicated, but also estops Defendants from now changing positions. "[T]o succeed on a traditional estoppel defense the litigant must prove (1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment." *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987). All three elements are present here.

After the exclusion deadline, the Perrigo Defendants represented in countless filings that Sculptor's action is an "Individual Action" or one of the "opt-out Actions." *See, e.g.*, *Sculptor*, ECF Nos. 110, 117, 119, 126, 132, 137; *contra In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. at 234-35 (dismissing the estoppel argument where plaintiff requesting opt out could not point to misrepresentations by defendant and where defendant did not litigate the individual action after the class action court's final order). Relying on such representations, Sculptor believed that it had provided sufficient indication of its intent to opt out, and continued to expend significant resources to pursue its Individual Action for over three years. Sculptor's reliance was to its

detriment because Sculptor now stands to lose out on its meritorious, and thoroughly-litigated, individual claims against the Perrigo Defendants to which it has dedicated substantial time and resources.

The doctrine of judicial estoppel "prevents a litigant from asserting a position inconsistent with one previously asserted" and "applies when: (1) the party's position is inconsistent with a position taken in the same or in a previous proceeding and (2) the party asserted either or both of the inconsistent positions in bad faith." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997).

Defendants' position that Sculptor is a class member is inconsistent with its prior position that Sculptor was one of the "Opt-Out Plaintiffs" "who have ***opted out of the related Class Action Roofers' Pension Fund v. Papa, et. al.***, No. 2:16-cv-02805-MCA-LDW (D.N.J.)." *See* ECF No. 353-138 (Ex. 131) (Subramanian Rep.) at 9, n. 21 (emphasis added). Only days after the exclusion period, the Perrigo Defendants even sought leave to file a judgment on the pleadings that Sculptor's action should be barred under timeliness grounds because tolling is unavailable to plaintiffs that chose to file an independent action without waiting for a determination on the class certification issue. *See Sculptor*, ECF No. 110, at 1. At the very least, Perrigo's current position is taken as a knowing about face to deprive Sculptor of sufficient recovery to address its securities violations claims.

Both equitable and judicial estoppel, therefore, prohibit the Perrigo Defendants from challenging Sculptor's opt-out status more than three years after the exclusion period.

## <u>CONCLUSION</u>

Failure to have ensured receipt of its opt-out form, where Sculptor otherwise sufficiently expressed its intention to opt out, should not shackle Sculptor to a class settlement that it believes insufficiently compensates for its injuries and would effect a forfeiture of the substantial

investment it has made in its own Individual Action.  Nor should absent class members be subject to a dilution in their average share recovery because Sculptor's damages were not contemplated when negotiating the settlement.  And, surely, the Perrigo Defendants should not be rewarded for their gamesmanship of staying silent for years about the purported opt-out issue, only to attempt to bar Sculptor's Individual Action as soon as the Court has granted preliminary approval of the settlement.

For these reasons,  Sculptor respectfully requests the Court to enter an order finding that Sculptor reasonably indicated its intention to opt out, or alternatively, provide a second opportunity to opt out or grant an extension of the exclusion deadline, allowing Sculptor to now submit its formal opt-out request.

Respectfully submitted,

Dated:  July 15, 2024                    **CALCAGNI & KANEFSKY, LLP**

By:   */s/ Mariellen Dugan*
Mariellen Dugan
One Newark Center
1085 Raymond Blvd., 14th Floor
Newark, New Jersey 07102
(862) 233-8319
MDugan@ck-litigation.com

**QUINN EMANUEL
URQUHART & SULLIVAN, LLP**

Jonathan E. Pickhardt (*pro hac vice* forthcoming)
Jesse Bernstein (*pro hac vice* forthcoming)
Owen F. Roberts (*pro hac vice* forthcoming)
51 Madison Avenue
New York, NY 10010
(212) 849-7115
jonpickhardt@quinnemanuel.com

*Counsel for Plaintiffs Sculptor Master Fund, Ltd.
and Sculptor Enhanced Master Fund, Ltd.*