**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF NEW JERSEY**

|  |  |
|---|---|
| ROOFER'S PENSION FUND, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) ) Case No. 1:16-CV-02805 RMB LDW |
| v. | ) ) ) |
| PERRIGO COMPANY PLC, *et al.*, | ) ) Hon. Renée Marie Bumb ) Hon. Leda Dunn Wettre |
| Defendant. | ) ) CLASS ACTION ) ) ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION .................................................................................................................1

II. THE SETTLEMENT WARRANTS FINAL APPROVAL .....................................................3

    A. Lead Plaintiff and Lead Counsel Have Adequately Represented the Classes Through Their Litigation Efforts, Including Extensive Disovery ........................................5

    B. The Settlement Was Renegotiated at Arm's Length after Extensive Discovery ................7

    C. The Settlement Provides Adequate Relief Considering the Risks, Costs, and Delay of Trial and Appeal .........................................................................................9

        1. The compexity, risk, and likely duration of the litigation........................................9

        2. Risks and costs establishing liability and damages................................................10

        3. The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation....................................................13

    D. The Settlement Was Reached after Both Fact and Expert Discovery Were Completed ...14

    E. Ability of Defendants to Withstand a Greater Judgment.................................................15

    F. Reaction of Class Members ............................................................................................15

    G. The Settlement Satisfies Applicale *Prudential* Factors .................................................15

    H. The Settlement Satisfies Other Rule 23(e)(2) Factors ....................................................16

        1. The Proposed Method for Distributing Relief is Effective .....................................16

        2. The Requested Attorneys' Fees are Reasonable ....................................................17

        3. The Only Supplemental Agreement Is Not Operative ...........................................17

        4. The Settlement Treats Class Members Equitably ...................................................17

III. THE PLAN OF ALLOCATION SHOULD BE APPROVED ............................................18

IV. NOTICE SATISFIED RULE 23, DUE PROCESS, AND THE PSLRA..............................19

V. CONCLUSION................................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alves v. Main*,
2012 WL 6043272 (D.N.J. Dec. 4, 2012) ............................................................7, 8

*Alves v. Main*,
559 F. App'x 151 (3d Cir. 2014) ...........................................................................7

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) .............................................................................13

*Beltran v. SOS Ltd.*,
2023 WL 319895 (D.N.J. Jan. 3, 2023) ........................................10, 14, 16, 18

*Beltran v. SOS Ltd.*,
2023 WL 316294 (D.N.J. Jan. 19, 2023) .............................................................10

*Dartell v. Tibet Pharms., Inc.*,
2017 WL 2815073 (D.N.J. June 29, 2017) ...........................................................15

*Devlin v. Ferrandino & Son, Inc.*,
2016 WL 7178338 (E.D. Pa. Dec. 9, 2016) .........................................................14

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010)...................................................................................3

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)..............................................................................................20

*Fulton-Green v. Accolade, Inc.*,
2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ........................................................8

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)..................................................................3, 4, 5, 9, 10

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ...............................................................................13

*Huffman v. Prudential Ins. Co. of Am.*,
2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) .........................................................12

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litigation*,
2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ......................................................14

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006)..............................................................................13, 14

*In re Baby Prods. Antitrust Litig.*,
   708 F.3d 163 (3d Cir. 2013)..........................................................................................20

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)..................................................................................12, 14, 15

*In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*,
   795 F.3d 380 (3d Cir. 2015).............................................................................................5

*In re Flonase Antitrust Litig.*,
   951 F. Supp. 2d 739 (E.D. Pa. 2013) ..........................................................................15

*In re Hemispherx Biopharma, Inc., Sec. Litig.*,
   2011 WL 13380384, (E.D. Pa. Feb. 14, 2011) ......................................................14, 19

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
   2022 WL 16533571 (E.D. Pa. Oct. 28, 2022)...............................................................15

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
   2022 WL 717254 (E.D. Pa. Mar. 10, 2022)............................................................16, 17

*In re Lucent Techs., Inc., Sec. Litig.*,
   307 F. Supp. 2d 633 (D.N.J. 2004) ...............................................................................18

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
   307 F.R.D. 351 (E.D. Pa. 2015).......................................................................................8

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
   2015 WL 12827803 (E.D. Pa. May 8, 2015) ..................................................................8

*In re NFL Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016)..........................................................................................3, 8

*In re Ocean Power Techs., Inc., Sec. Litig.*,
   2016 WL 7638464 (D.N.J. June 7, 2016) ......................................................................17

*In re: Petrobras Sec. Litig.*,
   312 F.R.D. 354 (S.D.N.Y. 2016) .....................................................................................7

*In re Petrobras Sec.*,
   862 F.3d 250 (2d Cir. 2017)..............................................................................................7

*In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions,*
148 F.3d 283 (3d Cir. 1998)..............................................................................4

*In re Turquoise Hill Res. Ltd. Sec. Litig.,*
2021 WL 148752 (S.D.N.Y. Jan. 15, 2021) ......................................................7

*In re Warfarin Sodium Litig.,*
391 F.3d 516 (3d Cir. 2004)..........................................................................3, 8

*In re Wilmington Tr. Sec. Litig.,*
2018 WL 6046452 (D. Del. Nov. 19, 2018) ............................................4, 10, 14

*In re WorldCom, Inc. Sec. Litig.,*
2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ..................................................7

*In re Valeant Pharms. Int'l Sec. Litig.,*
2020 WL 3166456 (D.N.J. June 15, 2020) ......................................................4

*See In re Valeant Pharms. Int'l, Inc. Sec. Litig.,*
2021 WL 358611 (D.N.J. Feb. 1, 2021) ..........................................................19

*In re ViroPharma Inc. Sec. Litig.,*
2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ..............................................8, 9, 11

*In re Vivendi Universal, S.A. Sec. Litig.,*
765 F. Supp. 2d 512 (S.D.N.Y. 2011)..............................................................13

*In re Vivendi, S.A. Sec. Litig.,*
838 F.3d 223 (2d Cir. 2016)............................................................................13

*Kanefsky v. Honeywell Int'l Inc.,*
2022 WL 1320827 (D.N.J. May 3, 2022) ..............................................7, 10, 12

*Lazy Oil, Co. v. Witco Corp.,*
95 F. Supp. 2d 290 (W.D. Pa. 1997)................................................................12

*Lazy Oil, Co. v. Witco Corp.,*
166 F.3d 581 (3d Cir. 1999)............................................................................12

*McDonough v. Horizon Blue Cross Blue Shield of N.J.,*
641 F. App'x 146 (3d Cir. 2015) ......................................................................3

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
339 U.S. 306 (1950)........................................................................................20

*Par Pharm.*,
   2013 WL 3930091 ................................................................................................13, 18

*Schuler v. Medicines Co.*,
   2016 WL 3457218 (D.N.J. June 24, 2016) ...........................................................14

*Se. Pa. Trans. Auth. v. Orrstown Fin. Servs., Inc.*,
   2023 WL 1454371 (M.D. Pa. Feb. 1, 2023) ..........................................................17

*TIAA v. Valeant Pharms. Int'l, Inc.*,
   No. 21-1218, 2021 WL 6881210 (3d Cir. Dec. 20, 2021) .....................................19

*Utah Ret. Sys. V. Healthcare Servs. Grp., Inc.*,
   2022 WL 118104 (E.D. Pa. Jan 12, 2022) ...............................................................6

**Rules & Regulations**

Fed. R. Civ. P. 23(e)(2) ........................................................................... *passim*

Fed. R. Civ. R. 23(e)(1)(B) ...............................................................................20

Fed. R. Civ. R. 23(e)(2)(B) ...........................................................................7, 20

Fed. R. Civ. R. 23(e)(2)(C) .................................................................................9

Fed. R. Civ. R. 23(e)(2)(C)(i) .............................................................................9

Fed. R. Civ. R. 23(e)(2)(C)(ii) ..........................................................................16

Fed. R. Civ. R. 23(e)(2)(C)(iii) .........................................................................16

Fed. R. Civ. R. 23(e)(2)(C)(iv) .........................................................................16

Fed. R. Civ. R. 23(e)(2)(D) ...............................................................................16

Fed. R. Civ. P. 23(e)(3) .......................................................................................4

Israeli Securities Law, 1968 .........................................................................5, 18

**Statutes**

Section 10(b) of the Securities Exchange Act of 1934 ........................... *passim*

Section 14(e) of the Securities Exchange Act of 1934 ........................... *passim*

Section 20(a) of the Securities Exchange Act of 1934 ........................................5

**Additional Citations**

4 Newberg and Rubenstein on Class Actions § 13:49 (6th ed. 2023) ...................................9

Lead Plaintiff Perrigo Institutional Investor Group, on behalf of itself and the Class Members of the three certified Classes (collectively, "Plaintiffs"), respectfully submits this Memorandum of Law in support of its Motion for Final Approval of Class Action Settlement, including final approval of the proposed Plan of Allocation.[1]

## I.    INTRODUCTION

Following more than seven years of hard-fought litigation, Lead Plaintiff has negotiated a favorable $97,000,000 Settlement to resolve this Action in its entirety. As detailed herein, the Settlement not only eliminates the risks of continued litigation—including overcoming Defendants' pre-trial challenges to Lead Plaintiff's experts and loss causation theory, obtaining favorable trial judgment on liability and damages, as well as the uncertainty, further delay and expense of litigating the Action through trial and post-trial appeals—but it also recovers an above-average percentage of Class Members' damages. The Settlement is the result of protracted negotiation by well-informed counsel, culminating in a mediator's proposal that was ultimately accepted by all Parties.

As detailed herein, the Settlement took place after comprehensive discovery, in which over 3.5 million pages of documents were reviewed. It also took place after more than three dozen depositions were taken or defended, expert reports exchanged and experts deposed, and summary judgment was fully briefed, argued, and largely decided. As a result, Lead Plaintiff and Lead Counsel fully understood the strengths and weaknesses of the Classes' claims at the time of Settlement.

---

[1] Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation of Settlement (the "Stipulation"), ECF No. 424, and the Joint Declaration of Joshua B. Silverman and James A. Harrod ("Joint Declaration") filed herewith. All references to "¶" are to the numbered paragraphs of the Joint Declaration. Citations are omitted and emphasis is added, unless otherwise indicated.

The Settlement represents a favorable recovery under any assessment, but is particularly strong in light of the risks of continuing litigation to trial and appeal. While Lead Plaintiff believes that the remaining claims are meritorious and supported by evidence developed during discovery, they also recognized the claims were substantially trimmed at summary judgment and were likely to be further curtailed. In August 2023, the Court granted summary judgment as to all claims against Former Defendant Brown, as to the generic drug-related claims against Defendant Papa, and as to certain alleged misrepresentations concerning Perrigo's integration and the performance of Omega Pharmaceuticals. That opinion suggested that the Court would also grant summary judgment as to remaining claims involving generic drug competition, a risk the Court echoed at subsequent oral argument on the issue of corporate scienter.

In assessing the Settlement, Lead Plaintiff and Lead Counsel also considered the impact that the loss of such claims would have on damages. Of the seven §10(b) corrective events asserted, two dealt entirely with generic drug-related disclosures and three more were predominantly attributed to generic drug-related disclosures. Those drops accounted for the majority of §10(b) damages. Moreover, recovery under §14(e), which was already without precedent under the specific circumstances here, would become even more difficult if Plaintiffs were unable to argue at trial that investors were misled regarding practices in Perrigo's generic drug division. And, Defendants indicated that they would argue that the elimination of that theory of recovery required exclusion of Plaintiffs' loss causation/damages expert.

Accordingly, absent the Settlement, there was a very real risk that after trial and appeals, Class Members might recover less than the Settlement or nothing at all. The Settlement avoids this uncertainty, as well as the delay and expense of continued litigation, while providing a substantial and immediate benefit to the Classes. Moreover, the Settlement is not "claims-made."

Rather, all Settlement proceeds, after deducting Court-approved fees and costs, will be distributed to Class Members who submit valid Claims.  Because the Settlement easily satisfies the factors set forth in Rule 23(e)(2) and *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) for approving class action settlements, and because the Plan of Allocation treats Class Members equitably and ensures that each Authorized Claimant will receive a *pro rata* share of the proceeds from the Settlement, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement, including the Plan of Allocation.

## II.    THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e)(2) requires judicial approval of any class action settlement.  Whether to grant such approval lies within the district court's discretion. *See In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004). This discretion should be guided by this Circuit's strong judicial policy favoring settlement, which "is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010); *see also McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 F. App'x 146, 150 (3d Cir. 2015) (noting "overriding public interest in settling class action litigation").

Under Rule 23(e)(2), the Court should approve a proposed class action settlement if it finds it to be "fair, reasonable, and adequate."  *See also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016).  In making this determination, Rule 23(e)(2) provides that a court consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

3

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.[2]

Consistent with this guidance, courts in this Circuit have long considered the factors enumerated in *Girsh v. Jepson* in deciding whether to approve a class action settlement:

> (1) the complexity, expense and likely duration of the litigation …; (2) the reaction of the class to the settlement …; (3) the stage of the proceedings and the amount of discovery completed …; (4) the risks of establishing liability …; (5) the risks of establishing damages …; (6) the risks of maintaining the class action through the trial …; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery …; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation ….

521 F.2d 153, 157 (3d Cir. 1975) (ellipses in original); *In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *4 (D. Del. Nov. 19, 2018). "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Valeant Pharms. Int'l Sec. Litig.*, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020). The Third Circuit also advises courts to consider, where applicable, the additional factors set forth in *In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283 (3d Cir. 1998). All of these factors, to the extent they apply, favor approval.

---

[2] The Advisory Committee Notes to the 2018 amendments to Rule 23 explain that the four Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment. Accordingly, Lead Plaintiff addresses the fairness, reasonableness, and adequacy of the Settlement principally in relation to the four Rule 23(e)(2) factors, but also discuss the application of the non-duplicative factors articulated by the Third Circuit in *Girsh* and *Prudential*.

### A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Classes Through Their Litigation Efforts, Including Extensive Discovery

The first Rule 23(e)(2) factor—whether Lead Plaintiff and Lead Counsel "have adequately represented the class"—favors approval of the Settlement.  This determination "primarily examines two matters: the interests and incentives of the class representatives, and the experience and performance of class counsel."  *In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 392 (3d Cir. 2015).  The adequacy inquiry overlaps with the third *Girsh factor,* which covers the stage of proceedings and the amount of discovery completed.  *See Girsh*, 521 F.2d at 157; *Prudential*, 148 F.3d at 323.

This Court previously determined that Lead Plaintiff and Lead Counsel satisfied Rule 23's adequacy requirement.  ECF No. 226.  Their vigorous representation of Class Members in this litigation confirms that finding to be correct.  Among other things, they: (i) conducted an extensive investigation of potential violations of the securities laws at issue, including a thorough review of Perrigo's filings with the U.S. Securities and Exchange Commission ("SEC"), analyst reports, press releases and other publicly available information, as well as a global private investigation including interviews with numerous former employees; (ii) drafted a detailed Amended Complaint asserting claims under Sections 10(b), 14(e), and 20(a) of the Securities Exchange Act of 1934, as well as the Israeli Securities Law, 1968; (iii) briefed and successfully defeated in large part Defendants' motions to dismiss the Amended Complaint, sustaining the most important claims; (iv) engaged in extensive fact discovery, including obtaining and reviewing millions of pages of documents, taking and defending dozens of depositions, pursuing foreign discovery via letter rogatory, raising several discovery motions with the Court, and serially briefing requests made by the U.S. Department of Justice to stay discovery; (v) consulted with experts and retained world-class testifying experts on issues related to market efficiency, generic drug competition,

significance of the misrepresented material, damages, loss causation, and Israeli law; (vi) engaged in paper and deposition discovery of Defendants' experts; (vii) briefed and successfully moved for class certification; (viii) briefed and defeated Defendants' petition for interlocutory appeal of the certification decision; (ix) opposed Defendants' summary judgment motions, which spanned hundreds of pages; (x) participated in a seven hour oral argument on summary judgment, and additional follow-up briefing and argument; (xi) participated in several formal mediation and settlement conference sessions; and (xii) negotiated and documented the Settlement. ¶¶6, 11-26.

Significantly, Lead Plaintiff won certification of the first foreign purchaser class since the Supreme Court decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). Not only did this set important precedent, but it insured that Perrigo purchasers would be treated equitably in this litigation and Settlement regardless of where their purchases took place.

At each of these stages, Lead Plaintiff diligently supervised and provided meaningful direction and assistance to Lead Counsel. Lead Plaintiff's efforts included, *inter alia*, negotiating retainers that provided an advantageous cap on attorneys' fees, communicating regularly with Lead Counsel about case developments and strategy, reviewing and commenting on court filings and other material documents, responding to Defendants' discovery requests, including by reviewing and verifying interrogatory responses and searching for and producing potentially relevant documents, preparing for and providing testimony at a deposition (including the travel and proffering of six representative witnesses—two from each of the three main groups of Lead Plaintiff members—for deposition in the United States), assessing and authorizing all settlement negotiations, proffering a representative to travel to the United States to participate in the settlement conference that led to the Settlement, and analyzing the Settlement. ¶¶86-88 and Exs. G-I thereto. In addition, Lead Plaintiff has no interests antagonistic to the Classes, and shares

claims in common with Class Members.  *See Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, 2022 WL 118104, at *4 (E.D. Pa. Jan 12, 2022) ("Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the class since they all raise the same claims and seek the same relief: they share the same interest in holding Defendants accountable for their alleged misconduct.").

Lead Plaintiff also demonstrated its adequacy by retaining highly competent lawyers experienced in prosecuting complex securities class actions.  Pomerantz LLP ("Pomerantz") and Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") have each successfully prosecuted hundreds of securities class actions on behalf of damaged investors.  *See, e.g.*, *In re: Petrobras Sec. Litig.,* 312 F.R.D. 354, 362 (S.D.N.Y. 2016), *aff'd in part, vacated in part sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) (finding Pomerantz is "qualified, experienced and able to conduct the litigation," in case achieving a $3 billion settlement); *Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *8 (D.N.J. May 3, 2022) (finding Pomerantz to be "highly experienced," to have "won substantial recoveries" in securities class actions and "qualified"); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2021 WL 148752, at *11 (S.D.N.Y. Jan. 15, 2021) (appointing BLB&G, "a firm highly experienced in securities class action litigation," as class counsel); *In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2591402, at *18 (S.D.N.Y. Nov. 12, 2004) (in case where over $6 billion was recovered, the Court noted that "[t]he quality of the representation given by Lead Counsel [which included BLB&G] is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation.").

Lead Counsel vigorously pursued the Classes' claims for many years and negotiated a favorable Settlement through protracted negotiation.  "[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest

of the class."). *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x

151 (3d Cir. 2014).

### B.    The Settlement Was Negotiated at Arm's Length after Extensive Discovery

The second factor under Rule 23(e)(2) considers whether the Settlement was negotiated at

arm's length.  *See* Rule 23(e)(2)(B).  A presumption of fairness attaches where, as here, the Parties

engaged in arm's-length negotiations following years of litigation that included extensive

discovery and consultation with an expert.  *See, e.g.*, *NFL*, 821 F.3d at 436; *Warfarin*, 391 F.3d at

535, 537.  This presumption is further supported where a neutral mediator is involved, because the

"participation of an independent mediator in settlement negotiations virtually insures that the

negotiations were conducted at arm's length and without collusion between the parties."  *Alves*,

2012 WL 6043272, at *22.

Few negotiations are as contested or prolonged as in this Action.  The Parties participated

in two separate mediation sessions before a private mediator and five settlement conferences

before the Magistrate Judge.  ¶¶37-43.  First, in 2018 and 2019, the Parties attempted to mediate

the dispute before an experienced and neutral mediator, the Hon. Daniel Weinstein (Ret.).  ¶¶37-

38.  Then, between 2020 and 2024, Magistrate Judge Wettre conducted five separate settlement

conferences.  ¶¶39-42.  The final such conference resulted in a mediator's proposal, which both

sides accepted, resulting in the Settlement.  ¶43.

When a settlement results from arm's-length negotiations, the assessment by experienced

counsel that a settlement is in the best interest of the class is entitled to "considerable weight."  *In

re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016) (courts "'afford[]

considerable weight to the views of experienced counsel regarding the merits of the settlement'");

*In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 387 (E.D. Pa. 2015)

("'A presumption of correctness is said to attach to a class settlement reached in arms-length

8

negotiations between experienced, capable counsel after meaningful discovery.'"), *amended*, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016).  This flows from the principle that "a settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution."  *Fulton-Green v. Accolade, Inc.*, 2019 WL 4677954, at *9 (E.D. Pa. Sept. 24, 2019).  Based on its experience and knowledge of this case, Lead Counsel believes that the Settlement is fair, reasonable, and adequate, and is in the best interests of Class Members.

Rule 23(e)(2) and *Girsh* also consider the amount of discovery completed at the time of settlement, because that is an objective measure of how informed the parties are as to the strengths and weaknesses of their case.  At the time of the Settlement, there can be no doubt that Lead Plaintiff and Lead Counsel were well informed.  As noted above, they had obtained and reviewed nearly 3.5 million pages of documents, thoroughly researched the legal bases for their claims and the defenses asserted by Defendants, taken or defended dozens of depositions, and completed expert discovery.  ¶¶7, 11-36.  As a result, Lead Plaintiff and Lead Counsel understood the strengths and risks of the case when they agreed to settle.  *See* 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:49 (6th ed. 2023) (approval warranted "[w]here a court can conclude that the parties had sufficient information to make an informed decision about settlement").

### C.     The Settlement Provides Adequate Relief Considering the Risks, Costs, and Delay of Trial and Appeal

Several of the *Girsh* factors and Rule 23(e)(2)(C) involve "a substantive review of the terms of the proposed settlement" and the "relief that the settlement is expected to provide to" Class Members. *See* Fed. R. Civ. P. 23(e)(2)(C).  Because the Settlement here provides a strong recovery relative to the risks, costs and delay of continued litigation, these factors favor approval.

### 1. The complexity, risk, and likely duration of the litigation

Rule 23(e)(2)(C)(i) and the first *Girsh* factor look to "the complexity, expense and likely duration of the litigation." *Girsh*, 521 F.2d at 157. This factor is intended to "capture the probable costs, in both time and money, of continued litigation." *In re ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *9 (E.D. Pa. Jan. 25, 2016). To assess this factor, the Court weighs the value of an immediate guaranteed settlement against the challenges that remain in proceeding with the litigation. *Honeywell*, 2022 WL 1320827, at *5; *see also Beltran v. SOS Ltd.*, 2023 WL 319895, at *4 (D.N.J. Jan. 3, 2023) (Pascal, M.J.), *report & recommendation adopted*, 2023 WL 316294 (D.N.J. Jan. 19, 2023) (finding that securities cases are "notably complex, lengthy, and expensive … to litigate").

This case has been pending since 2016, and Class Members still face substantial hurdles, costs, and delay to recovery absent the Settlement. Each of their trial experts would be challenged at a *Daubert* hearing, which would be both risky and costly. ¶62. And, Defendants would be permitted to bring additional motion(s) for summary judgment on loss causation grounds. *Id*. To the extent Plaintiffs' claims survived, Plaintiffs would face an uncertain and costly trial, followed by appeals. As explained below, the Settlement is more than adequate in the face of those obstacles.

### 2. Risks and costs of establishing liability and damages

In assessing a settlement, a court should also consider "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial." *Girsh*, 521 F.2d at 157. "These [*Girsh*] factors balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." *Wilmington Tr.*, 2018 WL 6046452, at *5.

Lead Plaintiff and Lead Counsel believe that their remaining case is strong but acknowledge that there are very tangible risks to establishing liability and damages. The next step, if litigation continued, would involve a *Daubert* hearing on the potential exclusion of Lead Plaintiff's expert witnesses. If its damages/loss causation expert was limited or excluded, Lead Plaintiff might be unable to adduce sufficient evidence to establish either loss causation or the amount of damages attributable to Defendants' fraud. *See Beltran,* 2023 WL 319895, at *5 ("proving damages in securities fraud cases … invariably requires expert testimony which may, or may not be, accepted by a jury."). And, Defendants would be permitted to renew their attempts to obtain summary judgment on loss causation, which would especially threaten the §14(e) claim.

If the claims survived, a trial would be costly and risky. Defendants have already successfully narrowed Plaintiffs' claims and maintained that the evidence shows that they did not make false statements, did not act with scienter and that Plaintiffs cannot establish that fraud or misrepresentations were the cause of their losses. While Lead Plaintiff and Lead Counsel believe there is substantial evidence supporting their claims, there can be no assurance that a jury would find in their favor. A reasonable jury might find that Defendants' statements about the integration and performance of Omega were not misleading, a risk that is heightened because the acquisition had closed so shortly before the statements. Or, a jury might find that Defendants—who deny trying to deceive investors—did not act with scienter. *See, e.g., ViroPharma*, 2016 WL 312108, at *12 ("Since stockholders normally have little more than circumstantial and accretive evidence to establish the requisite scienter, proving scienter is an uncertain and difficult necessity for plaintiffs.").

Liability and damages here are uncertain. For the §10(b) claims, Lead Plaintiff contends that five corrective disclosures can be completely or partially attributed to disclosures about

Omega.  However, as the Court noted in its summary judgment opinion, loss causation appears confounded for three of those five dates: April 25, 2016, May 12, 2016 and August 10, 2016.  ¶63. Another disclosure event, April 21-22, 2016, involves a stock drop following the resignation of Defendant Joe Papa, which both he and Perrigo deny had anything to do with problems at Omega. And, while analysts linked one corrective event, February 18, 2016 expressly to problems with Omega, Defendants have and would likely continue to argue that those problems were unrelated to the alleged misrepresentations.

For the §14(e) claims, the challenge is even greater.  Even if Lead Plaintiff was able to prove that Class Members were deprived of information at the time they decided not to tender shares to Mylan, there is no clear precedent for establishing or measuring damages under these circumstances.  Lead Plaintiff and Lead Counsel believe it will be difficult to establish any damages unless they can also prove that the two-part tender offer would have succeeded but for the specific misrepresentations about Omega, proof which Defendants argue is lacking and for which Lead Plaintiff would have to rely on the proverbial "battle of experts … with no guarantee whom the jury would believe."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001); *see also Lazy Oil, Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997) ("[C]ourts have recognized the need for compromise where divergent testimony would render the litigation an expensive and complicated battle of experts."), *aff'd*, 166 F.3d 581 (3d Cir. 1999).[3]

While there are strong responses to most of Defendants' arguments on liability and damages, they pose undeniable risks.  Any one of these arguments, if successful, could result in

---

[3] While *Girsh* also addresses the risks of maintaining a certified class through trial, Lead Plaintiff and Lead Counsel believe that risk is not heightened here.  Nevertheless, they acknowledge that a "district court retains the authority to decertify or modify a class at any time during the litigation." *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 322 (3d Cir. 2011).

the claims at issue being severely curtailed or even eliminated. *See Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019) (Courts should "'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action.'").

Moreover, any trial victory would inevitably lead to an appeal, which certainly would delay and could potentially eliminate any financial recovery. *See Honeywell*, 2022 WL 1320827, at *4. There are many instances in which favorable trial results in securities fraud class actions were overturned on appeal. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) (in a case brought in 2005, a Supreme Court decision after entry of a verdict in Plaintiffs' favor reduced the billion-dollar award into an approximately $78 million recovery); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (reversing and remanding securities class action jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of intervening Supreme Court case); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231-32 (10th Cir. 1996) (1973 case tried to a verdict for plaintiffs in 1988 vacated in 1996 as a result of an intervening Supreme Court decision).

Consequently, the risks associated with establishing liability and damages at trial, and preserving any trial victory through appeal, strongly favor approving the Settlement.

### 3. The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation

The eighth and ninth *Girsh* factors, typically considered in tandem, ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. "In making this assessment, the Court compares the present value of the damages plaintiffs would likely recover if successful,

13

appropriately discounted for the risk of not prevailing, with the amount of the proposed settlement." *Par Pharm.*, 2013 WL 3930091, at *7; *see also In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006) ("[T]he percentage recovery[] must represent a material percentage recovery to plaintiff in light of all the risks[.]").

After consulting with damages experts, Lead Counsel estimate that the Settlement represents a recovery of 5.59% to 7.98% of estimated maximum aggregate §10(b) damages that would be available at trial, depending upon which disclosures survived *Daubert* and renewed motions for summary judgment on loss causation.[4]  That entire range is above the median recovery for securities fraud actions in this Circuit.  *See Wilmington Tr.*, 2018 WL 6046452, at *8 (noting "Third Circuit median recovery of 5% of damages in class action securities litigation"); *see also Schuler v. Medicines Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (4% recovery "falls squarely within the range of previous settlement approvals"); *In re Hemispherx Biopharma, Inc., Sec. Litig.*, 2011 WL 13380384, at *6 (E.D. Pa. Feb. 14, 2011) (5.2% recovery "falls squarely within the range of reasonableness approved in other securities class action settlements"); *In re Am. Bus. Fin. Servs. Inc. Noteholders Litigation*, 2008 WL 4974782, at *7 (E.D. Pa. Nov. 21, 2008) (approving settlement that provided 2.5% recovery of damages); *In re AT & T Corp. Sec. Litig.*, 455 F.3d 160, 169 (3d Cir. 2006) (affirming settlement for 4% of total damages).  That the Settlement represents a larger-than-normal recovery despite the heightened risks favors approval. As another court in this District recently noted, the "certainty" of the Settlement is better than the "gamble" of a trial.  *See Beltran*, 2023 WL 319895, at *5.

---

[4] Due to the lack of precedent in calculating §14(e) damages under the circumstances here, and the lack of jury awards of damages under those circumstances, Lead Plaintiff and Lead Counsel do not include §14(e) damages in their estimate.

**D.    The Settlement Was Reached After Both Fact and Expert Discovery Were Completed**

*Girsh* also directs courts to consider "the degree of case development that class counsel have accomplished prior to settlement" to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating" the settlement. *Cendant*, 264 F.3d at 235. A settlement following sufficient discovery and arms-length negotiation is "presumptively valid." *Devlin v. Ferrandino & Son, Inc.*, 2016 WL 7178338, at *5 (E.D. Pa. Dec. 9, 2016). Here, both fact and expert discovery were *completed* prior to settlement, and Lead Counsel had the benefit of having briefed and argued summary judgment. ¶60. There can be no doubt that counsel had adequate information to assess the strengths and weaknesses of Lead Plaintiff's claims when negotiating the Settlement. *See Dartell v. Tibet Pharms., Inc.*, 2017 WL 2815073, at *5 (D.N.J. June 29, 2017) (finding factor favored approval where parties had "fully briefed motions to dismiss, a motion for class certification, and [had] engaged in discovery," as well as the "engage[ment of] two experts").

**E.    Ability of Defendants to Withstand a Greater Judgment**

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Cendant*, F.3d at 240. This factor applies only when "a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 744 (E.D. Pa. 2013). That is not the case here—the Settlement represents an above-average recovery and was not tempered based on ability to pay. Accordingly, this factor is neutral. *Id.*

15

#### F.    Reaction of Class Members

Lead Plaintiff members, whose financial interests are aligned with other Class Members, strongly support the Settlement. *See* Exs. G to I to Joint Declaration. While the objection deadline has not yet passed, no Class Member has objected to date. Lead Plaintiff will address any future objections in its reply brief.

#### G.    The Settlement Satisfies Applicable *Prudential* Factors

The applicable *Prudential* factors also support the Settlement. *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2022 WL 16533571, at *7-*8 (E.D. Pa. Oct. 28, 2022) ("*Innocoll II*"). Lead Plaintiff and Lead Counsel are well-informed of the strengths and weaknesses of the case after many years of litigation (Section II(B)-(C), *supra*). The method for processing claims is fair and reasonable. (Section III, *infra*). Class Members were afforded a full and fair opportunity to opt out of the Class following certification. ¶26.[5] And, the requested attorneys' fees are fair and reasonable (Section II(H)(2), *infra*).

#### H.    The Settlement Satisfies Other Rule 23(e)(2) Factors

The remaining factors of Rule 23(e)(2) instruct courts to consider: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees, including the timing of payment; (iii) the existence of any other agreements; and (iv) whether the settlement

---

[5] "Due process does not require a second opt-out period." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2020 WL 5211035, at *13 (E.D. Pa. Sept. 1, 2020) (*quoting In re Nat. Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 423 (E.D. Pa. 2015)); *see also Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1309 (S.D. Cal. 2017) (approving settlement without second opt-out period and holding that neither due process nor Rule 23(e) require a second opportunity to exclude), *aff'd*, 881 F.3d 1111 (9th Cir. 2018); *In re HIV Antitrust Litig.*, 2023 U.S. Dist. LEXIS 170754, at *41 (N.D. Cal. Sep. 25, 2023) (same, and further noting that a second opt-out period is particularly unnecessary where, as here, the parties likely to opt out are "sophisticated"); *accord Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) ("Neither due process nor Rule 23(e)(3) requires, however, a second opt-out period …. Requiring a second opt-out period as a blanket rule would disrupt settlement proceedings …").

treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv); Fed. R. Civ. P. 23(e)(2)(D). These factors also support approval here.

### 1.    The Proposed Method for Distributing Relief Is Effective

Under Rule 23(e)(2)(C)(ii), the court must "scrutinize the method of claims processing to ensure that it facilitates [the] filing [of] legitimate claims." Fed. R. Civ. P. 23, 2018 Advisory Note, subdiv. (e)(2). Here, the method for processing claims follows well-established and effective procedures. Class Members must provide basic information and trading records to substantiate their transactions in Perrigo common stock. Requiring such documentation is reasonable because "there is no central repository of the owners of the securities" and it "prevent[s] fraudulent claims." *Beltran*, 2023 WL 319895, at *7; *see also In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2022 WL 717254, at *5 (E.D. Pa. Mar. 10, 2022) ("*Innocoll I*") (It is "standard" to require the submission of records "proving ownership of the shares" in securities cases.). In addition, claimants have the opportunity to cure claim deficiencies or request that the Court review any claim denial (Stipulation, ¶¶29(d)-(e)). *See Se. Pa. Trans. Auth. v. Orrstown Fin. Servs., Inc.*, 2023 WL 1454371, at *11 (M.D. Pa. Feb. 1, 2023) (allowing claimants to "cure any deficiencies … or request that the Court review a denial" supports approval under Rule 23(e)(2)).

### 2.    The Requested Attorneys' Fees are Reasonable

As set forth in more detail in the accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees, Payment of Litigation Expenses, and Compensatory Awards to Lead Plaintiff Members, Lead Counsel's 19% fee request is reasonable and appropriate. It is substantially lower than the 25-30% fees usually requested in §10(b) cases of this magnitude. Moreover, it was negotiated at the inception of the litigation by sophisticated financial institutions. Further, because the $97 million cash component of the Settlement has already been fully funded, there is no risk that counsel will be paid but Settlement Class Members

will not.  Importantly, the Settlement may not be terminated based on a ruling regarding attorneys' fees.  *See* Stipulation, ¶40.  This further supports approval.  *See Innocoll I*, 2022 WL 717254, at *5.

### 3.   The Only Supplemental Agreement Is Not Operative

As discussed in the motion for preliminary approval, Lead Plaintiff and Perrigo have entered into a standard supplemental agreement providing Perrigo with the right (but not the obligation) to terminate the Settlement if the Court had ordered a second exclusion period and if a certain level of valid requests for exclusion were received.  Because no second exclusion period was ordered, that supplemental agreement is of no effect.

### 4.   The Settlement Treats Class Members Equitably

Settlement proceeds will be distributed according to a Plan of Allocation that treats all Class Members equitably because it does not give any preference to Lead Plaintiff or any other Class Member.  *See In re Ocean Power Techs., Inc., Sec. Litig.*, 2016 WL 7638464, at *1 (D.N.J. June 7, 2016).  The Plan, set out in the Settlement Notice attached as Exhibit A-1 to the Stipulation, explains how the Settlement proceeds will be distributed among Authorized Claimants.  It provides that each Class Member will receive a *pro rata* share equal to all other Class Members who bought and sold at the same time.  All Class Members, including Lead Plaintiff members, will receive their payment pursuant to the same formula.  *See also* Section III, *infra.*

## III.   THE PLAN OF ALLOCATION SHOULD BE APPROVED

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate."  *Beltran*, 2023 WL 319895, at *9.  An allocation formula recommended by experienced and competent class counsel "need only have a reasonable and rational basis."  *Par Pharm.*, 2013 WL 3930091, at *8.  Moreover, "[a] plan of allocation that

18

reimburses class members based on the type and extent of their injuries [relative to strength and value of their claims] is generally reasonable." *In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004).

The Plan here has been crafted by Lead Counsel and Lead Plaintiff's damages experts, and is intended to equitably distribute the Net Settlement Fund to Class Members who timely submit valid Claims demonstrating they suffered economic losses as a result of Defendants' alleged violations of the federal securities laws set forth in the Complaint, as opposed to economic losses caused by other factors. ¶¶53-59. For §10(b) claims and parallel claims under Israeli Securities Law, 1968, the Plan assesses the amount of artificial inflation considering when each claimant purchased and sold shares, considering the corrective disclosures asserted. For §14(e) claims, a loss is recognized if a claimant held shares over the tender offer expiration. *Id*. The Plan also seeks to fairly reflect the strengths and weaknesses of each type of claim. Thus, losses for claims that were not likely to survive are reasonably discounted, on an equal basis for all claimants.

Following publication of the Settlement Notice, and after discussions with Israeli Counsel[6] concerning the way certain technical aspects of the Plan of Allocation may affect the small percentage of Class Members who purchased in the United States and sold in Israel, or vice-versa, Lead Plaintiff proposes two *de minimis* changes to the Plan of Allocation. First, the Plan of Allocation provided for a fixed exchange rate. An objective daily exchange rate can and should be utilized, using the rates published by a major Israeli bank. Second, as Israeli Counsel have

---

[6] Israeli Counsel are Jacob Sabo and Kalai-Rosen & Co., who had originally brought class action claims in Israel arising out of the same facts and circumstances as this Action, styled *Israeli Electric Corp. Employees' Education Fund v. Perrigo Company plc, et al.* (Class Action 64911-06-17); *Keinan v. Perrigo Company plc, et al.* (Class Action 68081-03-17); and *Schweiger v. Perrigo Company plc, et al.* (Class Action 43897-05-16), but agreed to stay those claims in favor of litigation in this Action.

19

pointed out, many of the cross-border trades involved a currency exchange fee. It is appropriate to include those fees when assessing the Recognized Losses of those who incurred them. Neither of these changes will have a material effect, but these minor alterations make the Plan of Allocation even more equitable.

Lead Counsel, who have consulted with experts in formulating the Plan, believe that the Plan, with the minor changes described above, represents the most fair and equitable basis for distributing the Net Settlement Fund. *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 358611, at *3 (D.N.J. Feb. 1, 2021), *aff'd in part, appeal dismissed in part sub nom. TIAA v. Valeant Pharms. Int'l, Inc.*, No. 21-1218, 2021 WL 6881210 (3d Cir. Dec. 20, 2021) ("courts give great weight to the opinion of qualified counsel" when assessing whether a plan of allocation is fair, reasonable and adequate); *In re Hemispherx Biopharma, Inc., Sec. Litig.*, 2011 WL 13380384, at *7 (noting favorably in approving plan of allocation that it "has a rational basis and was developed by experienced Class Counsel in conjunction with a damages expert").

## IV.    NOTICE SATISFIED RULE 23, DUE PROCESS, AND THE PSLRA

Lead Plaintiff, via the Claims Administrator approved by the Court, JND, has provided notice as specified in the preliminary approval order, ECF No. 427. *See, generally,* Declaration of Luiggy Segura, attached as Ex. A to Joint Decl. Links to Settlement Notice and Claim Forms were emailed to all Class Members for whom email addresses could be ascertained. *Id.* For others, so long as a physical address could be determined either directly or via a nominee, Postcard Notice was mailed directing the Class Member to the Settlement Website, where electronic filing, the Settlement Notice and Claim Form, and other key documents were made available, in both English and Hebrew. *Id.* Additionally, Summary Settlement Notice was published on newswires in the United States (in English) and in Israel (in Hebrew). *Id.* Finally, in addition to the Settlement Website, a toll-free number was established for investor questions, and both the Claims

Administrator and Lead Counsel provided contact information for any Class Members who may have questions. *Id.*. Through this comprehensive plan of notice, over 300,000 notices were mailed or emailed to prospective Class Members, a Settlement website was and toll-free information number were established, and summary notice was published repeatedly in English and Hebrew. *Id*. To ensure clear notice in Israel, additional publications of summary notice were made beyond that required by the preliminary approval order, and the Settlement Website has copies of all relevant materials in Hebrew. *Id*.

The comprehensive plan of notice satisfied Rule 23, as it was "the best notice … practicable under the circumstances" and directed "in a reasonable manner to all class members who would be bound by the" Settlement (Fed. R. Civ. P. 23(c)(2)(B) & (e)(1)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974)). It likewise satisfied due process, because it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) ("Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class."). Collectively, the notices provide all information specifically required by Rule 23 and the PSLRA. *See* ECF No. 427.

## V.  CONCLUSION

For the reasons set forth above and in the Joint Declaration, Plaintiffs respectfully request that the Court grant final approval to the Settlement and approve the Plan of Allocation.

DATED:  July 25, 2024

LOWENSTEIN SANDLER  LLP

/s/ Michael B. Himmel
Michael B. Himmel
One Lowenstein Drive
Roseland, NJ  07068
(973) 597-2500
mhimmel@lowenstein.com

*Liaison Counsel for Lead Plaintiff
and the Classes*

POMERANTZ LLP

Joshua B. Silverman (*pro hac vice*)
Omar Jafri (*pro hac vice*)
10 South LaSalle Street
Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
jbsilverman@pomlaw.com
ojafri@pomlaw.com

Jeremy A. Lieberman (*pro hac vice*)
Thomas Przybylowski (*pro hac vice*)
600 Third Avenue
New York, NY 10016
Telephone: (212) 661 1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
tprzybylowski@pomlaw.com

*Co-Lead Counsel*

**BERNSTEIN LITOWITZ
BERGER & GROSSMANN LLP**
Gerald H. Silk *(pro hac vice)*
James A. Harrod (*pro hac vice*)
Jessie L. Jensen (*pro hac vice*)
1251 Avenue of the Americas
New York New York 10020
Telephone: (212) 445-1400
Facsimile: (212) 554-1444
Jerry@blbglaw.com
Jim.harrod@blbglaw.com
Jesse.jensen@blbglaw.com

*Co-Lead Counsel*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on July 25, 2024, I caused the foregoing Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement to be electronically filed with the Clerk of the Court using the ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Dated: July 25, 2024                             *s/ Michael B. Himmel*
                                                      Michael B. Himmel

24