**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| ROOFERS' PENSION FUND, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:16-CV-02805 RMB LDW |
| v. | ) ) ) | |
| PERRIGO COMPANY PLC, *et al*., | ) ) ) | Hon. Renée Marie Bumb Hon. Leda Dunn Wettre |
| Defendant. | ) ) ) ) ) | CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**<u>MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ...................................................................................................................... 5

I.    PLAINTIFFS' COUNSEL ARE ENTITLED TO COMPENSATION FROM THE COMMON FUND ............................................................................................ 5

II.   THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND ........................................................................................... 6

III.  THE REQUESTED FEE IS REASONABLE UNDER EITHER THE PERCENTAGE-OF-RECOVERY METHOD OR THE LODESTAR METHOD ........... 7

    A.    The Requested Fee Is Reasonable Under the Percentage-of-Recovery Method ................................................................................................... 7

    B.    The Reasonableness of the Requested Fee Is Confirmed by a Lodestar Cross-Check ............................................................................................ 9

IV.   THE REQUESTED FEE ENJOYS A PRESUMPTION OF REASONABLENESS BECAUSE IT HAS BEEN AUTHORIZED BY THE COURT-APPOINTED LEAD PLAINTIFF PURSUANT TO A PRE-LITIGATION AGREEMENT ............................................................................ 11

V.    THE FACTORS CONSIDERED BY COURTS IN THE THIRD CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE ............... 12

    A.    The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request .................................... 13

    B.    The Reaction of Class Members to the Settlement and Fee Request To Date Supports Approval of the Fee Request ............................................. 13

    C.    The Skill and Efficiency of Lead Counsel Support Approval of the Fee Request .................................................................................................. 14

    D.    The Complexity and Duration of the Litigation Support Approval of the Fee Request ............................................................................................ 15

    E.    The Risk of Non-Payment Supports Approval of the Fee Request ..................... 16

    F.    The Significant Time Devoted to this Case by Plaintiffs' Counsel Supports Approval of the Fee Request .................................................................... 18

G.    The Requested Fee of 19% of the Settlement Fund is within the Range of Fees Typically Awarded in Actions of this Nature ................................................ 19

H.    The Fact that the Benefits of the Settlement Are Attributable to the Efforts of Plaintiffs' Counsel Support Approval of the Fee Request ............................... 19

I.    The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request ........................................................................................................ 19

VI.    LEAD COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED ................................................. 20

VII.    LEAD PLAINTIFF MEMBERS SHOULD BE AWARDED THEIR REASONABLE COSTS UNDER 15 U.S.C. §78U-4(A)(4) .......................................... 22

VIII.    CONCLUSION ......................................................................................................... 24

## TABLE OF AUTHORITIES

Page(s)

CASES

*In re Aetna Inc. Sec. Litig.*,
   2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ....................................................8

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
   No. 03-1519, slip op. (D.N.J. Jan. 30, 2013), ECF No. 405 .......................8

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002).................................................................8, 14

*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006).....................................................7, 9, 19, 21

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
   772 F.3d 125 (2d Cir. 2014)......................................................................24

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*,
   148 F. Supp. 3d 303 (S.D.N.Y. 2015).........................................................9

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985).....................................................................................6

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)......................................................12

*Blum v. Stenson*,
   465 U.S. 886 (1984)...................................................................................20

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980).....................................................................................5

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)......................................................................12

*In re Cendant Corp. Sec. Litig.*,
   404 F.3d 173 (3d Cir. 2005)........................................................................5

*In re Cognizant Tech. Solutions Corp. Sec. Litig.*,
   No. 16-6509 (ES) (CLW), slip op. (D.N.J. Dec. 20, 2021), ECF No. 184 ...............8

*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000)................................................................14

*In re Datatec Sys., Inc. Sec. Litig.*,
   2007 WL 4225828 (D.N.J. Nov. 28, 2007) ..............................................16

iii

*Demaria v. Horizon Healthcare Servs., Inc.*,
    2016 WL 6089713 (D.N.J. Oct. 18, 2016)............................................................................10

*Dickerson v. York Int'l Corp.*,
    2017 WL 3601948 (M.D. Pa. Aug. 22, 2017) ......................................................................11

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
    582 F.3d 524 (3d Cir. 2009).............................................................................5, 6, 13, 20

*Fogarazzo v. Lehman Bros., Inc.*,
    2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ........................................................................16

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).................................................................................................7

*In re Genta Sec. Litig.*,
    2008 WL 2229843 (D.N.J. May 28, 2008)..........................................................................16

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000)...................................................................................5, 12, 13

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).........................................................................................................13

*In re Ikon Office Sols., Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000).................................................................................. *passim*

*In re Ins. Brokerage Antitrust Litig.*,
    297 F.R.D. 136 (D.N.J. 2013)............................................................................................7

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964)..........................................................................................................6

*Klein v. Altria Group, Inc.*,
    No. 3:20-cv-00075-DJN, slip op. (E.D. Va. Mar. 31, 2022), ECF No. 320 .............................8

*Knurr v. Orbital ATK, Inc.*,
    No. 1:16-cv-01031-TSE-MSN, slip op. (E.D. Va. June 7, 2019), ECF No. 462......................8

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    2009 WL 4730185 (D.N.J. Dec. 4, 2009) ............................................................................7

*Landmen Partners Inc. v. The Blackstone Grp. L.P.*,
    No. 08 Civ. 3601 (HB), slip op. (S.D.N.Y. Dec. 18, 2013), ECF No. 191...............................9

*Lanni v. New Jersey*,
    259 F.3d 146 (3d Cir. 2001)..............................................................................................11

*In re Linerboard Antitrust Litig.*,
2004 WL 1221350 (E.D. Pa. June 2, 2004) *amended*, 2004 WL 1240775 (E.D. Pa. June 4, 2004) ............................................................................................14

*In re Lithium Ion Batteries Antitrust Litig.*,
2019 WL 3856413 (N.D. Cal. Aug. 16, 2019) ......................................................11

*Local 703 v. Regions Fin. Corp.*,
2015 WL 5626414 (N.D. Ala. Sept. 14, 2015) .......................................................9

*In re Lucent Techs., Inc. Sec. Litig.*,
327 F. Supp. 2d 426 (D.N.J. 2004) .......................................................................12

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................................23, 24

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*,
2016 WL 11575090 (D.N.J. June 28, 2016) ..........................................................21

*Missouri v. Jenkins*,
491 U.S. 274 (1989).............................................................................................10

*Morrison v. National Australia Bank Ltd.*,
561 U.S. 247 (2010)...............................................................................................3

*N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*,
No. 08-cv-5653-PAC, slip op. (S.D.N.Y. May 10, 2016), ECF No. 277 .................9

*In re Novo Nordisk Sec. Litig.*,
No. 3:17-cv-00209-ZNQ-LHG, slip op. (D.N.J. July 13, 2022), ECF No. 361 .......7

*O'Hern v. Vida Longevity Fund, LP*,
2023 WL 3204044 (D. Del. May 2, 2023).............................................................11

*In re Ocean Power Techs., Inc.*,
2016 WL 6778218 (D.N.J. Nov. 15, 2016) .......................................................7, 20

*In re PAR Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013)...............................................................5

*Peace Officers' Annuity & Benefit Fund of Ga. v. Davita, Inc.*,
2021 WL 29818070 (D. Colo. July 15, 2021) .........................................................8

*In re Processed Egg Prods. Antitrust Litig.*,
2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ..........................................................20

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)...............................................................10, 13, 19, 20

*Ret. Ass'n v. ComScore, Inc.*,
    2018 WL 8801073 (S.D.N.Y. June 7, 2018) ...........................................................8

*Rihn v. Acadia Pharm. Inc.*,
    2018 WL 513448 (S.D. Cal. Jan. 22, 2018)............................................................10

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ......................................................................8

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005) .................................................................8, 10

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005)................................................................................7, 9

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    2008 WL 9447623 (D.N.J. Dec. 9, 2008) .............................................................24

*In re Safety Components, Inc. Sec. Litig.*,
    166 F. Supp. 2d 72 (D.N.J. 2001) .........................................................................21

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
    2012 WL 1964451 (D.N.J. May 31, 2012)............................................................18

*In re Schering-Plough Corp. ENHANCE Sec. Litig.*,
    2013 WL 5505744 (D.N.J. Oct. 1, 2013)...................................................9, 11, 24

*In re Schering-Plough Corp. Sec. Litig.*,
    No. 01-CV-0829 (KSH/MF), slip op. (D.N.J. Dec. 31, 2009), ECF No. 163 .........8

*Schuler v. Medicines Co.*,
    2016 WL 3457218 (D.N.J. June 24, 2016) .........................................................6, 13

*In re Signet Jewelers Ltd. Secs. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..........................................................8

*In re Snap Inc. Sec. Litig.*,
    Case No. 2:17-cv-03679-SVW-AGR, slip op. (C.D. Cal. Mar. 9, 2021), ECF
    No. 400.....................................................................................................................8

*Stevens v. SEI Invs. Co.*,
    2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ...........................................................10

*Sullivan v. DB Invs.*,
    667 F.3d 273 (3d Cir. 2011)...........................................................................6, 7, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).................................................................................................6

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) ..................................................................18

*In re ViroPharma Inc. Sec. Litig.*,
    2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ................................................13, 14, 21

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ......................15, 16, 18

*In re Wilmington Trust Sec. Litig.*,
    2018 WL 6046452 (D. Del. Nov. 19, 2018) ..........................................................7, 8

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................6, 11

*Yedlowski v. Roka Bioscience, Inc.*,
    2016 WL 6661336 (D.N.J. Nov. 10, 2016) ..............................................................21

## STATUTES AND RULES

15 U.S.C. § 78u–4(a)(4)........................................................................ *passim*

Fed. R. Civ. P. 23 ....................................................................................2

Court-appointed Lead Counsel, Pomerantz LLP ("Pomerantz") and Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") respectfully submit this memorandum of law in support of their motion for: (i) an award of attorneys' fees for all Plaintiffs' Counsel in the amount of 19% of the Settlement Fund; (ii) an award of $4,110,165.69 in litigation expenses reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the Action; and (iii) awards of $100,000 to each of the three primary constituent members of Lead Plaintiff Perrigo Institutional Investor Group for costs incurred directly related to their representation of the Classes, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## PRELIMINARY STATEMENT

The proposed Settlement, which provides for a $97,000,000 cash payment for the benefit of the Classes, is an excellent result that was achieved only after years of hard-fought litigation by Plaintiffs' Counsel. The Settlement is a direct result of the skill, tenacity, and effective advocacy of Lead Counsel who litigated this Action against highly skilled defense counsel on a fully contingent basis for more than seven years. Lead Counsel's efforts including conducting extensive investigation of the claims, surmounting Defendants' motions to dismiss, successfully moving for certification of the Class, completing extensive fact and expert discovery, fully briefing motions for summary judgment that resulted in the partial denial of those motions, and engaging in

---

[1] Lead Plaintiff is comprised of Migdal Insurance Company Ltd., Migdal Makefet Pension and Provident Funds Ltd., and Atudot Pension Fund for Employees and Independent Workers Ltd. (together, "Migdal"), Clal Insurance Company Ltd., Clal Pension and Provident Ltd. (together, "Clal"), , and Meitav DS Provident Funds and Pension Ltd. ("Meitav"). Capitalized terms that are not defined in this memorandum of law have the same meanings as set forth in the Stipulation and Agreement of Settlement dated April 4, 2024 (ECF No 424) ("Stipulation") or in the Joint Declaration of Joshua Silverman and James A. Harrod in Support of (I) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Joint Declaration" or "Joint Decl."), filed herewith. Citations to "¶ __" herein refer to paragraphs in the Joint Declaration and citations to "Ex. __" herein refer to exhibits to the Joint Declaration.

extended arm's-length settlement negotiations, including numerous mediation efforts, over the course of many years.  Lead Counsel prosecuted the Action and obtained the Settlement in the face of significant challenges to proving both liability and damages that posed the serious risk that there might be no recovery.

As detailed in the accompanying Joint Declaration,[2] Lead Counsel vigorously pursued the claims in this Action for the benefit of the Classes for over seven years.  Among other things, Lead Counsel:  (i) conducted a wide-ranging investigation concerning the alleged misstatements made by Defendants, including numerous interviews with former Perrigo employees and a thorough review of publicly available information (¶ 5); (ii) drafted the detailed 137-page Amended Complaint for Violation of The Federal Securities Laws ("Amended Complaint") (¶ 5, 12); (iii) researched and drafted detailed briefing in opposition to the Defendants' motions to dismiss the Amended Complaint (¶ 14); (iv) successfully moved for certification of the Classes through a contested motion and defeated Defendants' petition to appeal the Court's  class certification order under Rule 23(f); (v) completed a highly-litigated fact and expert discovery process that included requests for production or documents, interrogatories, requests for admission, numerous meet and confers, and several discovery disputes; (vi) obtained, reviewed, and analyzed more than 3.4 million pages of documents (¶ 23); (vii) took or defended 40 depositions (¶ 60); (viii) consulted extensively with experts in the subjects of damages, loss causation, generic drugs, and investment banking throughout the litigation and submitted six merits-stage expert reports from Lead

---

[2] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Action and a description of the services Plaintiffs' Counsel provided for the benefit of the Classes; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of the litigation; and the facts and circumstances underlying Lead Counsel's request for an award of attorneys' fees and expenses.

Plaintiff's experts, (¶ 60); (ix) opposed Defendants' motions for summary judgment through extensive briefing and seven hours of oral argument (¶¶ 28-32); (x) opposed *Daubert* motions filed by Defendants seeking exclude each of Lead Plaintiff's' three experts (¶ 28); and (xi) engaged in extensive settlement negotiations and mediation efforts over five years, which included several mediation sessions with a highly experienced private mediator and with Magistrate Judge Wettre.

Through these efforts, Lead Counsel not only vigorously advanced claims on behalf of Class Members, but also achieved the first certification of a foreign purchaser class since the Supreme Court's decision limiting such classes in in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). That precedent allowed the TASE Purchaser class here to participate in the litigation and Settlement and will assist investors in other dual-listed companies going forward.

The Settlement achieved through Plaintiffs' Counsel's efforts is a particularly favorable result when considered in light of the substantial litigation risks in the Action, including the risks associated with proving Defendants' liability and establishing loss causation and damages. These risks are detailed in the Joint Declaration at paragraphs 60 to 66 and are summarized in the memorandum of law supporting the Settlement. These risks posed a real possibility for the outset of the litigation that Lead Plaintiff and the Classes might not be able to recover at all or could have recovered a lesser amount than obtained in the Settlement.

As compensation for their efforts on behalf of the Classes and for the risk of nonpayment they faced in prosecuting the Action on a contingent basis, Lead Counsel now seek an attorney-fee award for all Plaintiff's Counsel in the amount of 19% of the Settlement Fund. As detailed herein, the requested fee is on the lower end of the range of fees that courts in this Circuit have awarded in securities class actions with comparable recoveries on a percentage basis. Further, the requested fee represents a "negative" multiplier of approximately 0.48 on Plaintiffs' Counsel's

total lodestar, which is below the range of multipliers typically awarded in class actions with significant contingency risks such as this one.

The fee request also has the support of all members of Lead Plaintiff, which are each sophisticated institutional investors that actively supervised and participated in the Action. *See* Declaration of Isaac Drucker submitted on behalf of Clal Pension and Provident Ltd. and Atudot Pension Fund for Employees and Independent Workers Ltd. (Ex. G) ("Drucker Decl."); Declaration of Roni Tirosh Maderer on behalf of Migdal Insurance Company Ltd. and Migdal Makefet Pension and Provident Funds Ltd. (Ex. H) ("Maderer Decl."); Declaration of Liat Cohen-David on behalf of Meitav DS Provident Funds and Pension Ltd. (Ex. I) ("Cohen-David Decl."). Each of Lead Plaintiff's members have approved and fully support the fee request as reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation. *Id.* Moreover, the 19% fee request is based on sliding-scale attorneys' fees arrangement that was entered into between all members of Lead Plaintiff and Lead Counsel at the outset of the litigation. This further supports the reasonableness of the fee.

In addition, while the deadline set by the Court for Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date no objections have been received. The deadline for objections is August 6, 2024. Lead Counsel will address any objections to the motion for attorneys' fees and litigation expenses in its reply papers, which will be filed by August 22, 2024.

Lead Counsel also seek to recover the litigation expenses that Plaintiffs' Counsel incurred in prosecuting and resolving this litigation, which total $4,110,165.69 during more than seven years of litigation. As discussed below, these expenses were reasonable and necessary for the prosecution and resolution of this complex litigation and are of the type that are routinely charged

4

to clients in non-contingent litigation. The largest component of these expenses, roughly 58%, relate to expert costs, including experts in loss causation and damages and the pharmaceutical industry. Finally, Lead Counsel also request that the members of Lead Plaintiff be granted awards as provided for under the PSLRA in the total amount of $300,000, in reimbursement for the substantial time that their employees dedicated to the Action.

For all the reasons set forth herein and in the Joint Declaration, Lead Counsel respectfully submit that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards and, therefore, should be awarded by the Court.

## ARGUMENT

### I.    PLAINTIFFS' COUNSEL ARE ENTITLED TO COMPENSATION FROM THE COMMON FUND

It is well settled that an attorney who maintains a lawsuit that results in the creation of a fund or benefit in which others have a common interest may obtain fees from that common fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 205 (3d Cir. 2005) ("attorneys whose efforts create, discover, increase, or preserve a common fund are entitled to compensation"); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009); *In re PAR Pharm. Sec. Litig.*, 2013 WL 3930091, at *9 (D.N.J. July 29, 2013).

In addition to providing just compensation, awards of fair attorneys' fees from a common fund ensure that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (citations omitted); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In

5

order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").  Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak,* 377 U.S. 426, 432 (1964)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

Courts in this Circuit have consistently adhered to these principles.  *See, e.g., Schuler v. Medicines Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) ("Under the common fund doctrine, 'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *Diet Drugs*, 582 F.3d at 540); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members.").

## II.   THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND

Lead Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained for the Classes and utilize a lodestar cross-check to confirm that the fee is reasonable.  In the Third Circuit, the percentage-of-recovery method is "generally favored" in cases involving a settlement that creates a common fund.  *See Sullivan v. DB Invs.*, 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage of recovery method "because it allows courts to award fees from the [common] fund 'in a manner that rewards counsel for success and penalizes it for failure.'"); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Rite Aid*

*Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).  The percentage-of-recovery method is almost universally preferred in common fund cases because it most closely aligns the interests of counsel and the class.  *See Rite Aid*, 396 F.3d at 300; *see In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016).  The Third Circuit also recommends that the percentage award be "cross-check[ed]" against the lodestar method to ensure its reasonableness.  *See Sullivan*, 667 F.3d at 330.

## III.   THE REQUESTED FEE IS REASONABLE UNDER EITHER THE PERCENTAGE-OF-RECOVERY METHOD OR THE LODESTAR METHOD

### A.   The Requested Fee Is Reasonable Under the Percentage-of-Recovery Method

The requested 19% fee is reasonable and below most requests under the percentage-of-recovery method.  While there is no absolute rule, courts in the Third Circuit have observed that fee awards generally range from 19% to 45% of the settlement fund.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *Ikon*, 194 F.R.D at 196.  Fees most commonly range from 25% to one-third of the recovery.  *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery"); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) (same); *see also In re Wilmington Trust Sec. Litig.*, 2018 WL 6046452, at *9 (D. Del. Nov. 19, 2018) (finding 28% to be a "typical fee percentage" in the Third Circuit).

A review of attorneys' fees awarded in securities class actions with comparably sized settlements in this District and Circuit strongly supports the reasonableness of the requested 19% fee.  *See AT&T Corp.*, 455 F.3d at 169 (affirming fee award of 21.25% of $100 million settlement); *In re Novo Nordisk Sec. Litig.*, No. 3:17-cv-00209-ZNQ-LHG, slip op. at 2 (D.N.J. July 13, 2022), ECF No. 361 (awarding 29% of $100 million settlement); *In re Cognizant Tech. Solutions Corp.*

7

*Sec. Litig.*, No. 16-6509 (ES) (CLW), slip op. at 1-2 (D.N.J. Dec. 20, 2021), ECF No. 184 (awarding 20% of $95 million settlement); *Wilmington Trust*, 2018 WL 6046452, at *9 (awarding 28% of $210 million settlement); *Alaska Elec. Pension Fund v. Pharmacia Corp.*, No. 03-1519, slip op. at 2 (D.N.J. Jan. 30, 2013), ECF No. 405 (awarding 27.5% of $164 million settlement); *In re Schering-Plough Corp. Sec. Litig.*, No. 01-CV-0829 (KSH/MF), slip op. at 2 (D.N.J. Dec. 31, 2009), ECF No. 163 (awarding 23% of $165 million settlement); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 590-91 (E.D. Pa. 2005) (awarding 25% of $126.6 million settlement); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 130-31 (D.N.J. 2002) (awarding 28% of $194 million settlement); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 734-36 (E.D. Pa. 2001) (awarding 25% of $193 million settlement); *In re Aetna Inc. Sec. Litig.*, 2001 WL 20928, at *14-16 (E.D. Pa. Jan. 4, 2001) (awarding 30% of $82.3 million settlement, net of expenses); *Ikon*, 194 F.R.D. at 192-197 (awarding 30% of $111 million settlement, net of expenses).

In addition, Lead Counsel's fee request is consistent with fees awarded by courts in other Circuits in similarly sized or larger securities class action settlements. *See, e.g., Klein v. Altria Group, Inc.*, No. 3:20-cv-00075-DJN, slip op. at 10 (E.D. Va. Mar. 31, 2022), ECF 320 (awarding 30% of $90 million settlement); *Peace Officers' Annuity & Benefit Fund of Ga. v. Davita, Inc.*, 2021 WL 29818070 (D. Colo. July 15, 2021) (awarding 30% of $135 million settlement); *In re Snap Inc. Sec. Litig.*, Case No. 2:17-cv-03679-SVW-AGR, slip op. at 1-2 (C.D. Cal. Mar. 9, 2021), ECF No. 400 (awarding 25% of $154.7 million settlement); *In re Signet Jewelers Ltd. Secs. Litig.*, 2020 WL 4196468 at *24 (S.D.N.Y. July 21, 2020) (awarding 25% of $240 million settlement); *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031-TSE-MSN, slip op. at 2 (E.D. Va. June 7, 2019), ECF No. 462 (awarding 28% of $108 million settlement); *Fresno Cty. Emps.' Ret. Ass'n v. ComScore, Inc.*, 2018 WL 8801073, at *1 (S.D.N.Y. June 7, 2018) (awarding 20% of $110 million

settlement); *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, No. 08-cv-5653-PAC, slip op. at 2-3 (S.D.N.Y. May 10, 2016), ECF No. 277 (awarding 28% of $110 million settlement); *Local 703 v. Regions Fin. Corp.*, 2015 WL 5626414, at *1 (N.D. Ala. Sept. 14, 2015) (awarding 30% of $90 million settlement); *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 148 F. Supp. 3d 303, 305 (S.D.N.Y. 2015) (awarding 25% of $180 million settlement); *Landmen Partners Inc. v. The Blackstone Grp. L.P.,* No. 08 Civ. 3601 (HB), slip op. at 5 (S.D.N.Y. Dec. 18, 2013), ECF No. 191) (awarding 33.3% of $85 million settlement).

### B.      The Reasonableness of the Requested Fee Is Confirmed by a Lodestar Cross-Check

The Third Circuit recommends that district courts use counsel's lodestar as a "cross-check" to determine whether the fee that would be awarded under the percentage approach is reasonable. *See Sullivan*, 667 F.3d at 330; *AT&T*, 455 F.3d at 164.[3]  "The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method." *Rite Aid*, 396 F.3d at 306.  "Conversely, where the ratio of the [percentage-of-recovery] to the lodestar is relatively low, the cross-check can confirm the reasonableness of the potential award under the [percentage] method." *In re Schering-Plough Corp. ENHANCE Sec. Litig.*, 2013 WL 5505744, at *33 (D.N.J. Oct. 1, 2013).

In complex contingent litigation such as this Action, fees representing multiples above the lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. Lodestar multipliers "compensate counsel for the risk of assuming the representation on a

---

[3]  Under the full "lodestar method," a court multiplies the number of hours each timekeeper spent on the case by the hourly rate, then adjusts that lodestar figure by applying a multiplier to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorneys' work. The multiplier is intended to "account for the contingent nature or risk involved in a particular case and the quality" of the work. *Rite Aid*, 396 F.3d at 305-06.

contingency fee basis." *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020); *see also Rihn v. Acadia Pharm. Inc.*, 2018 WL 513448, at *6 (S.D. Cal. Jan. 22, 2018) ("Courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases" because, in doing so, it provides a "financial incentive to accept contingent-fee cases which may produce nothing.").  Courts typically approve fees in class cases that correspond to ***positive*** multiples of one to four times the lodestar, and sometimes more.  *See Prudential*, 148 F.3d at 341 ("[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied");  *Stevens*, 2020 WL 996418, at *13 (approving multiplier of 6.16); *Demaria v. Horizon Healthcare Servs., Inc.*, 2016 WL 6089713, at *5 (D.N.J. Oct. 18, 2016) ("A multiplier of 4.3 is consistent with the considerable risks that counsel faced in taking on this litigation, and the sophisticated legal work required to achieve success."); *Rite Aid*, 362 F. Supp. 2d at 589-90 (reaffirming award of 25% of $126.6 million with 6.96 multiplier); *Ikon*, 194 F.R.D. at 195 (approving a 2.7 multiplier and noting it was "well within the range of those awarded in similar cases").

Here, the lodestar cross-check further demonstrates the reasonableness of the requested fee percentage because the fee request is substantially below Lead Counsel's total lodestar.  As detailed in the Joint Declaration, Plaintiffs' Counsel spent 63,147.30 hours of attorney and other professional time prosecuting the Action.  ¶¶79-81 and Exs. B-D thereto.  Plaintiffs' Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney, paralegal, or other professional by his or her current hourly rate, is $38,164,874.35.  *Id.* [4]

---

[4] The Supreme Court, Third Circuit, and courts in this District have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001); *Schering-Plough ENHANCE*, 2013 WL 5505744, at *33 ("In utilizing the blended billing rates to calculate the lodestar, the

Thus, the requested fee of 19% of the Settlement Fund, or $18,430,000 (plus interest), therefore represents a negative multiplier of 0.48 on counsel's lodestar. In other words, Plaintiffs' Counsel will recover just 48% of the total value of the time that they dedicated to the Action. ¶ 78. The fact that the requested fee is substantially less than counsel's lodestar strongly supports the reasonableness of the request. *See O'Hern v. Vida Longevity Fund, LP*, 2023 WL 3204044, at *10 (D. Del. May 2, 2023) (a "negative multiplier of 0.83" was "well under the generally accepted range and provides strong additional support for approving the attorneys' fee request"); *Dickerson v. York Int'l Corp.*, 2017 WL 3601948, at *11 (M.D. Pa. Aug. 22, 2017) ("A negative multiplier reflects that counsel is requesting only a fraction of the billed fee; negative multipliers thus 'favor approval.'"); *In re Lithium Ion Batteries Antitrust Litig.*, 2019 WL 3856413, at *8 (N.D. Cal. Aug. 16, 2019) (the requested fee is "particularly appropriate where the lodestar cross-check results in a negative multiplier"); *In re Bear Stearns Cos., Inc. Sec.*, *Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (a negative multiplier was a "strong indication of the reasonableness of the proposed fee").

Accordingly, the 19% fee requested here is reasonable under both the percentage-of-the-fund approach and the lodestar approach.

## IV. THE REQUESTED FEE ENJOYS A PRESUMPTION OF REASONABLENESS BECAUSE IT HAS BEEN AUTHORIZED BY THE COURT-APPOINTED LEAD PLAINTIFF PURSUANT TO A PRE-LITIGATION AGREEMENT

While approval of the fee is left to the sound discretion of the Court, the fact that the fee request is based on *ex ante* fee agreements entered into between Lead Plaintiff members and their counsel at the outset of the Action creates a "presumption of reasonableness" as to the fee. *See,*

---

courts allow the use of current billing rates at the time the calculation is made rather than the billing rates actually in effect at the time the hours were recorded.").

*e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001) (*ex ante* fee agreements in securities class actions should be given "a presumption of reasonableness"); *id.* at 220 ("courts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel").

Moreover, all members of Lead Plaintiff, who took an active role in the litigation and closely supervised the work of Lead Counsel, support the approval of the requested fee based on, among other things, the significant recovery obtained for the Classes, the work performed, and the risks of the Action. *See* Drucker Decl. (Ex. G); Maderer Decl. (Ex. H); Cohen-David Decl. (Ex. I). Lead Plaintiff's endorsement of the fee request further supports its approval. *See, e.g.*, *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").

## V.   THE FACTORS CONSIDERED BY COURTS IN THE THIRD CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

Under Third Circuit law, district courts have considerable discretion in setting an appropriate percentage-based fee award in traditional common fund cases. *See, e.g., Gunter,* 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees."). Nonetheless, in exercising that broad discretion, the Third Circuit has noted that a district court should consider the following factors in determining a fee award:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*Diet Drugs*, 582 F.3d at 541 (citing *Gunter*, 223 F.3d. at 195 n.1; *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998)).  These fee award factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Diet Drugs*, 582 F.3d at 545; *see Schuler*, 2016 WL 3457218, at *9.  Each of these factors supports the award of the 19% fee requested by Lead Counsel here.

### A.     The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award.  *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016).

Here, Lead Counsel secured a Settlement that provides for a substantial, certain, and near-term payment of $97,000,000.  The Settlement will benefit a large number of investors.  To date, the Claims Administrator, JND Legal Administration ("JND"), has mailed or emailed 300,005 copies of the Postcard Notice or Settlement Notice to potential Class Members and their nominees. *See* Declaration of Luiggy Segura, submitted on behalf of JND (Ex. A) ("Segura Decl."), at ¶ 11. Accordingly, while the claim-submission deadline is not until August 26, 2024, a large number of Class Members can be expected to benefit from the Settlement.  *See In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004) *amended*, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (size of benefitted population "is best estimated by the number of entities that were sent the notice describing the [Settlement].").

### B.     The Reaction of Class Members to the Settlement and Fee Request To Date Supports Approval of the Fee Request

The Postcard Notice or Settlement Notice has been sent to over 300,000 potential Class Members and their nominees and the Settlement Notice was posted on a publicly accessible

website.  The Settlement Notice provided a summary of the terms of the Settlement and stated that

Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 20% of the

Settlement Fund.  *See* Settlement Notice, attached as Exhibit A to Segura Decl., at ¶¶ 5, 51.  The

Settlement Notice also advised Class Members that they could object to the Settlement or fee

request and explained the procedure for doing so.  *See id.* at p. 3, ¶¶ 55-56.  While the August 6,

2024 objection deadline set by the Court has not yet passed, as noted above, no objections have

been received to date.

### C.   The Skill and Efficiency of Lead Counsel Support Approval of the Fee Request

Lead Counsel's efforts have resulted in a favorable outcome for the benefit of the Classes.

*See AremisSoft*, 210 F.R.D. at 132 ("the single clearest factor reflecting the quality of class

counsels' services to the class are the results obtained.") (quoting *Cullen v. Whitman Med. Corp.*,

197 F.R.D. 136, 149 (E.D. Pa. 2000)).  The substantial and certain recovery obtained for Class

Members is the direct result of the significant efforts of highly skilled attorneys who possess

substantial experience in the prosecution of complex securities class actions.[5]  Lead Counsel's

success in identifying confidential witnesses through their investigation, in overcoming

Defendants' motions to dismiss in a case with very substantial risks, certifying the Classes,

conducting substantial fact and expert discovery, and sustaining key claims in the case in the wake

of Defendants' motions for summary judgment, all created the circumstances in which Lead

Plaintiff was able to obtain the $97 million cash Settlement.  In addition, Lead Counsel's reputation

---

[5] Plaintiffs' Counsel consists of Lead Counsel Pomerantz and BLB&G as well as Liaison Counsel Lowenstein Sandler LLP ("Lowenstein").  The experience of Lead Counsel and Lowenstein is set forth in their firm resumes, which are attached to the Joint Declaration within Exhibits B, C, and D.

as attorneys who will zealously carry a meritorious case through trial further enabled them to negotiate the favorable recovery for the benefit of the Classes.

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Lead Counsel.  *See, e.g., Ikon*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."). Here, Defendants were represented ably by Fried, Frank, Harris, Shriver & Jacobson; Gibson, Dunn & Crutcher LLP; and Greenbaum Rowe Smith & Davis LLP, who vigorously opposed Lead Counsel at every step of the Action.  The ability of Lead Counsel to obtain a favorable outcome for the Classes in the face of this formidable legal opposition further confirms the quality of Lead Counsel's representation.

### D.     The Complexity and Duration of the Litigation Support Approval of the Fee Request

The complexity and duration of the litigation also support approval of the fee requested. Securities litigation is regularly acknowledged to be particularly complex and expensive litigation, usually requiring expert testimony on several issues, including loss causation and damages.  *See, e.g., Fogarazzo v. Lehman Bros., Inc.*, 2011 WL 671745, at \*3 (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *In re Genta Sec. Litig.*, 2008 WL 2229843, \*3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive."); *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, \*3 (D.N.J. Nov. 28, 2007) ("[R]esolution of [accounting and damages issues] would likely require extensive and conceptually difficult expert economic analysis. . . .  Trial on [scienter and loss causation] issues would [be] lengthy and costly to the parties.").

Here, the $97,000,000 recovery is very favorable in light of the complexity of this case and the significant risks and expenses that the Classes have already faced and would continue to face by litigating to trial. While this litigation had already advanced extremely far, including through the resolution of summary judgment motions and briefing of *Daubert* motions, in the absence of settlement, Lead Plaintiff, through Lead Counsel, would have been required to engage in substantial additional work on further challenges to Lead Plaintiff's experts, pretrial preparation and motion practice, including work on a pre-trial order, proposed jury instructions, and motions *in limine*. ¶¶ 7, 63-65. Substantial time and expense would need to be expended in preparing the case for trial, and the trial itself would be expensive and uncertain, and would require a substantial amount of fact and expert testimony. *Id.*

Finally, even if the jury returned a favorable verdict at trial, it is likely that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process. ¶¶ 63, 65. Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome. *See Warner Commc'ns*, 618 F. Supp. at 747-48 ("Even a victory at trial is not a guarantee of ultimate success. If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself."). Considering the magnitude, expense, and complexity of this securities case—especially when compared against the significant and certain recovery achieved by the Settlement—Lead Counsel's fee request is reasonable. Accordingly, this factor weighs in Lead Counsel's favor.

### E.     The Risk of Non-Payment Supports Approval of the Fee Request

Lead Counsel undertook this Action on an entirely contingent fee basis, taking the risk that the litigation would yield no or very little recovery and leave them uncompensated for their time,

as well as for their out-of-pocket expenses.  As explained in detail in the Joint Declaration, Lead Counsel faced significant risks in this case from the outset that could have resulted in no recovery or a recovery smaller than the Settlement Amount.  A number of these risks were borne out at the motion to dismiss stage when the Court granted dismissal of certain of Lead Plaintiff's claims related to organic growth and Tysabri, as well as of certain Omega and generic-drug related statements it deemed forward-looking.  ¶ 14.  In addition, the Court granted summary judgment to all claims against Former Defendant Judy Brown; granted summary judgment as to Defendant Papa on the generic drug-related claims; and had suggested that would likely grant summary judgment as to remaining generic drug-related claims against Perrigo but reserved ruling until further briefing on the issue of corporate scienter.  ¶ 34.  Lead Plaintiff's remaining claims, concerning Defendants representations about Omega, would also have been difficult to prove at trial, with evidence to be presented principally through adverse witnesses. ¶¶ 60-65.  Accordingly, there were many significant risks in the Action from the outset and many risks that still existed when the Settlement was reached.  *Id.*

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.  *See, e.g., Warner Commc'ns*, 618 F. Supp. at 747-49 (citing cases).  This is particularly true in securities litigation, such as this Action, because securities litigation has long been regarded as "notably difficult and notoriously uncertain."  *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993).

Plaintiffs' Counsel have not been compensated for any of their time or expenses since the case began in 2016.  Since that time, Plaintiffs' Counsel have expended over 63,147.30 hours in the prosecution of this litigation with a resulting lodestar of $38,164,874.35 and have incurred $4,110,165.69 in litigation expenses.  ¶¶ 79-85.  "Courts routinely recognize that the risk created

17

by undertaking an action on a contingency fee basis militates in favor of approval." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result, and that a successful result would be realized only after considerable and difficult effort.  This factor strongly favors approval of the requested fee.

**F.   The Significant Time Devoted to this Case by Plaintiffs' Counsel Supports Approval of the Fee Request**

As set forth above, since the inception of the case, Plaintiffs' Counsel have expended over 63,147.30 hours and incurred $4,110,165.69 in expenses prosecuting this Action for the benefit of the Classes.   ¶¶ 79-85 and Exs. B-D thereto.   As more fully discussed above and in the Joint Declaration, this Action was vigorously litigated and defended.   This includes, *inter alia,* the considerable time spent in the initial investigation of the case; working extensively with experts; seeking out and interviewing former employees with information that would be used to support Lead Plaintiff's allegations; researching complex issues of law; preparing and filing the detailed Amended Complaints; researching and briefing the issues in connection with Defendants' motions to dismiss; reviewing and analyzing over 3.4 million pages of documents produced by Defendants and third parties; preparing to take or defend 40 depositions; moving for certification of the Classes; preparing detailed oppositions to Defendants' motions for summary judgment and *Daubert* motions; and engaging in extensive settlement negotiations.  ¶¶ 5, 11-36.  At all times, Lead Counsel conducted their work with skill and efficiency, conserving resources and avoiding duplication of efforts.  The foregoing represents a very significant commitment of time, personnel, and out-of-pocket expenses by Plaintiffs' Counsel while taking on the substantial risk of recovering nothing for their efforts.

**G.    The Requested Fee of 19% of the Settlement Fund is within the Range of Fees Typically Awarded in Actions of this Nature**

As discussed above in Part III, the requested fee of 19% of the Settlement Fund is well within the range of fees awarded in comparable cases, when considered as a percentage of the fund or on a lodestar basis.  Accordingly, this factor strongly supports approval of the requested fee.

**H.    The Fact that the Benefits of the Settlement Are Attributable to the Efforts of Plaintiffs' Counsel Support Approval of the Fee Request**

In determining the appropriate fee, Third Circuit courts also consider whether class counsel benefited from a governmental investigation or enforcement action concerning the alleged wrongdoing.  *See Prudential*, 148 F.3d at 338.  Here, there were no parallel enforcement actions or prosecutions by the Securities Exchange Commission or the Department of Justice that benefitted class counsel.  Accordingly, Lead Counsel respectfully submits that creation of the Settlement here is the result of Plaintiffs' Counsel's vigorous pursuit of Lead Plaintiff's claims through years of litigation, not the by-product of any governmental investigation.  This factor further supports the reasonableness of the requested fee award.  *See AT & T*, 455 F.3d at 173 ("Here, class counsel was not aided by the efforts of any governmental group, and the entire value of the benefits accruing to class members is properly attributable to the efforts of class counsel. This strengthens the . . . conclusion that the fee award was fair and reasonable.").

**I.    The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request**

A 19% fee is also consistent—or below—typical attorneys' fees in non-class cases.  *See Ocean Power*, 2016 WL 6778218, at *29.  If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery.  *See, e.g., id.*; *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any

recovery."); *Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984) (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."). Thus, Lead Counsel's requested fee of 19% of the Settlement Fund is fully consistent with these private standards.

*       *       *

Accordingly, when considered under the Third Circuit's factors, Lead Counsel's requested fee of 19% of the Settlement Fund is fair and reasonable.[6]

## VI.   LEAD COUNSEL'S APPLICATION FOR REASONABLY INCURRED LITIGATION EXPENSES SHOULD BE APPROVED

Lead Counsel also respectfully request that this Court approve payment of $4,110,165.69 for litigation expenses that Plaintiffs' Counsel incurred in connection with this Action. All of these expenses, which are set forth in declarations submitted by Plaintiffs' Counsel, were reasonably necessary for the prosecution and settlement of this Action. Counsel in a class action are entitled to recover expenses that were "'adequately documented and reasonable and appropriately incurred in the prosecution of the class action.'" *ViroPharma*, 2016 WL 312108, at *18; *accord In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001).

The expenses for which Lead Counsel seek payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, expert/consultant fees, mediation fees, document management

---

[6] Another factor the Third Circuit asks district courts to consider is whether the settlement contains "any innovative terms." *Diet Drugs*, 582 F.3d at 541; *Prudential*, 148 F.3d at 340. Consistent with Lead Plaintiff's claims and the Court's certification order granting certification of an innovative class of injured Israeli purchasers, the Settlement allocates recovery for their injuries. Regardless, a lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Prods. Antitrust Litig.*, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

costs, on-line legal and factual research, photocopying, and postage expenses. *See Viropharma*, 2016 WL 312108, at *18 (approving costs and expenses for, among other things, experts, travel, copying, postage, telephone, filing fees, and online and financial research); *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *23 (D.N.J. Nov. 10, 2016) (approving costs and expenses for experts, investigation, mediation, publishing notice, and online legal research, and noting that "[c]ourts have held that all of these items are properly charged to the [c]lass"). The largest category of expenses was for the retention of Lead Counsel's experts and consultants, which total $2,374,689.23, or approximately 58% of the total litigation expenses incurred by Plaintiffs' Counsel. Plaintiffs' Counsel also incurred $208,273.53 in expenses from JND for administering the 2020 Class Notice, and $570,964.35 for e-discovery costs.

The requested expense amount is in line or less than other securities fraud litigations of a similar duration and scope. *See, e.g.*, *AT&T*, 455 F.3d at 169 (approving expenses of nearly $5.5 million); *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, 2016 WL 11575090, at *5 (D.N.J. June 28, 2016) (approving award of $9.5 million in expenses). A complete breakdown by category of the expenses incurred by Plaintiffs' Counsel is set forth in Exhibits B to D to the Joint Declaration. These expense items are recorded separately by Plaintiffs' Counsel, and such charges are not duplicated in the firm's hourly rates.

Lead Counsel notes that the expense request includes a request for reimbursement of $199,214 in expenses from Israeli counsel Jacob Sabo and $14,000 in expenses for Israeli counsel Kalai-Rosen & Co. (together, "Israeli Counsel"), who had originally brought class action claims in Israel arising out of the same facts and circumstances as this Action, styled *Israeli Electric Corp. Employees' Education Fund v. Perrigo Company plc, et al.* (Class Action 64911-06-17); *Keinan v. Perrigo Company plc, et al.* (Class Action 68081-03-17); and *Schweiger v. Perrigo Company*

*plc, et al.* (Class Action 43897-05-16), but agreed to stay those claims in favor of litigation in this Action.  Lead Counsel agreed to share a small portion of fees awarded with Israeli Counsel, which have advised Lead Counsel extensively regarding aspects of this litigation impacting Israeli purchasers.  Among other things, following publication of the Notice, Israeli Counsel proposed minor modifications to the Plan of Allocation to create parity for Class Members who bought in Israel and sold in the United States, or vice-versa.  Lead Counsel have agreed to accept those changes, which are more fully explained in the final approval brief filed herewith, and believe that Israeli Counsel have conferred a benefit upon Class Members.

The Settlement Notice informed potential Class Members that Lead Counsel would apply for payment of litigation expenses in an amount not to exceed $4.5 million.  *See* Segura Decl. (Ex. A), at Ex. A, ¶¶ 5, 51.  The total amount of litigation expenses requested by Plaintiffs' Counsel is $4,110,165.69.  To date, there has been no objection to the expense application.

## VII.    LEAD PLAINTIFF MEMBERS SHOULD BE AWARDED THEIR REASONABLE COSTS UNDER 15 U.S.C. §78u-4(a)(4)

In connection with their request for an award of Litigation Expenses, Lead Counsel also seek an award of $100,000 each for Lead Plaintiff members Migdal, Clal and Meitav for costs incurred by them directly related to their representation of the Class.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).  Here, the members of Lead Plaintiff seek an award based on the substantial amount of time dedicated by their employees in furthering and supervising the Action. *See* Drucker Decl. (Ex. G); Maderer Decl. (Ex. H); Cohen-David Decl. (Ex. I).

Each of the Lead Plaintiff members took an active role in the litigation and has been fully committed to pursuing the claims on behalf of the proposed class since they became involved in

the case. During the course of the litigation, employees of Lead Plaintiff members dedicated a substantial number of hours to the litigation by, among other things: meeting and communicating with Lead Counsel regarding case strategy and developments; reviewing and commenting on pleadings and briefs filed in the Action; searching for and producing documents in response to Defendants' requests; travelling for and sitting for depositions; meeting and consulting with Lead Counsel regarding settlement negotiations; attending mediation sessions; and evaluating and approving the proposed Settlement. *See* Drucker Decl.; Maderer Decl.; Cohen-David Decl. These efforts required representatives of Lead Plaintiff members to dedicate considerable time and resources to the Action that they would have otherwise devoted to their regular duties.

Numerous courts have approved reasonable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class. In *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009), the court awarded $144,657 to the New Jersey Attorney General's Office and $70,000 to certain Ohio pension funds to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.* at *21. As the court noted, their efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *Id.*; *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig*. 772 F.3d 125, 132-33 (2d Cir. 2014) (affirming award of $453,003 to class representatives for time dedicated to the action by employees institutional lead plaintiffs); *In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 WL 9447623, at *29 (D.N.J. Dec. 9, 2008) (awarding "$150,000 to Lead Plaintiffs to compensate them for their reasonable costs and expenses directly relating to their representation of the Class pursuant to 15 U.S.C. § 78u–4(a)(4)"); *Schering-Plough ENHANCE*, 2013 WL 5505744, at *37-*38 (approving awards of $102,447 to lead plaintiffs in PSLRA action).

The awards sought by Lead Plaintiff members are reasonable and justified under the PSLRA based on the significant amount of time their employees devoted to the Action on behalf of the Classes and should be granted.

## VIII.   CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 19% of the Settlement Fund; $4,110,165.69 in payment of the reasonable litigation expenses that Plaintiffs' Counsel incurred in connection with the prosecution and resolution of the Action; and an aggregate of $300,000 in reimbursement of Lead Plaintiff's members' collective costs in representing the Classes in the Action.

Dated: July 25, 2024

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

*/s/ Michael B. Himmel*
Michael B. Himmel
One Lowenstein Drive
Roseland, NJ 07068
(973) 597-2500
mhimmel@lowenstein.com

*Liaison Counsel for Lead Plaintiff and the Classes*

**POMERANTZ LLP**
Joshua B. Silverman (*pro hac vice*)
Omar Jafri (*pro hac vice*)
10 South LaSalle Street
Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
jbsilverman@pomlaw.com
ojafri@pomlaw.com

Jeremy A. Lieberman (*pro hac vice*)
Thomas Przybylowski (*pro hac vice*)
600 Third Avenue
New York, NY 10016
Telephone: (212) 661 1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
tprzybylowski@pomlaw.com

*Co-Lead Counsel*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Gerald H. Silk (*pro hac vice*)
James A. Harrod (*pro hac vice*)
Jessie L. Jensen (*pro hac vice*)
1251 Avenue of the Americas
New York New York 10020
Telephone: (212) 445-1400
Facsimile: (212) 554-1444
Jerry@blbglaw.com
Jim.harrod@blbglaw.com
Jesse.jensen@blbglaw.com

*Co-Lead Counsel*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on July 25, 2024, I caused the foregoing Memorandum of Law in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses to be electronically filed with the Clerk of the Court using the ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Dated: July 25, 2024                                        *s/ Michael B. Himmel*
                                                                    Michael B. Himmel