[Docket No. 432.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| ROOFER'S PENSION FUND, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>JOSEPH PAPA., et al.,<br><br>      Defendants. | Civil No. 16-2805 (RMB) (LDW)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge:**

More than four years ago, the Court certified this class action and approved a notice of a pendency of class action to be sent to potential class members. That notice described this class action and provided explicit instructions to potential class members on how to opt out from the action if the members so choose. The deadline to opt out passed about three-and-a-half years ago. All agree that Sculptor Master Fund, Ltd. and Sculptor Enhanced Master Fund, Ltd. (collectively, Sculptor) are absent from the opt-out list the Court ordered to be published shortly after the opt-out deadline. Despite the opt-out list's publication years ago, questions about Sculptor's opt-out status recently surfaced after this Court preliminary approved a class-wide settlement to resolve this case.

At this late date, Sculptor now asks this Court to exclude it from this class action or give it another try to opt out. Sculptor offers a trio of possibilities to explain its absence from the opt-out list: its former counsel never mailed the opt-out request, the request got lost in the mail, or its former counsel mailed the request, but the claims administrator never processed

it.  When faced with its clear absence from the opt-out list, Sculptor is unperturbed, saying it gave a "reasonable indication" of opting out by maintaining its separate lawsuit against Defendant Perrigo Company PLC (Perrigo) and the company's former officers.  Sculptor contends that that lawsuit shows it never intended to be part of this class action.

Sculptor makes several other arguments.  In addition to opting out by "reasonable indication," Sculptor asserts the Court can excuse its failure to properly opt out under Federal Rules of Civil Procedure 6(b)'s and 60(b)'s excusable neglect provisions.  Sculptor also challenges the adequacy of the class notice on due process grounds.  According to Sculptor, the due process deficiencies in the class notice require this Court to provide class members a second try to opt out.  Lastly, invoking equitable and judicial estoppel principles, Sculptor contends Perrigo should be estopped from disavowing Sculptor's opt-out status.

All of Sculptor's arguments are unpersuasive.  First, given this Court's clear instructions to class members on how to opt out form this class action that Sculptor failed to follow, the Court will not accept Sculptor's opt out by reasonable indication approach.  Even if the Court accepted this approach, Sculptor's conduct would not satisfy it.  Second, Sculptor has not shown excusable neglect for the Court to allow the late opt out (or give it another try to opt out).  Third, Sculptor's due process challenge to the class notice fails because the notice adequately informed class members of the consequences of failing to opt out.  Lastly, Sculptor's estoppel arguments are equally meritless because, among other reasons, it has not shown it missed the opt-out deadline because of Perrigo's supposed misconduct.  Thus, for the below reasons, the Court **DENIES** Sculptor's entire motion.

## I. BACKGROUND

### A. The Lawsuits

In June 2017, Lead Plaintiff Perrigo Institutional Investor Group (Lead Plaintiff) filed an amended punitive class action complaint against Perrigo claiming it and various corporate individuals violated federal securities laws (the *Roofer's* Class Action).[1] [*Roofer's*, Am. Compl. (Docket No. 89).] Lead Plaintiff alleged Perrigo violated, among other things, Sections 10(b), 14(e), and 20(a) of the Securities Exchange Act of 1934 by repeatedly making material misrepresentations and omissions about the company's "organic growth[,]" its integration with Omega Pharma N.V., generic drug pricing, and "the deteriorating value of Perrigo's largest financial asset, a royalty stream for the drug Tysabri." [*Id.* ¶ 1.] In July 2018, the Court granted, in part, and denied, in part, Perrigo's motion to dismiss, significantly narrowing Lead Plaintiff's claims. *Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *1, *24 (D.N.J. July 27, 2018).

Then, in November 2018, Lead Plaintiff moved for class certification. [*Roofer's*, Docket No. 163-1.] While that motion was pending, in February 2019, Sculptor filed its own lawsuit against Perrigo, alleging the substantially same federal securities laws violations that Lead Plaintiff did in the *Roofer's* Class Action (the *Sculptor* Action).[2] [*Sculptor*, Compl. ¶¶ 1–17, 33 (Docket No. 1).]

### B. The Class Action Notice and the Opt-out Period

In November 2019, the Court certified the class in *Roofer's*, appointing the Lead Plaintiff as the Class Representative and its counsel as Class Counsel. [*Roofer's*, Docket No.

---

[1] *Roofer's Pension Fund v. Papa, et al.*, No. 16-cv-2805 (D.N.J.).
[2] *Sculptor Master Fund, Ltd v. Perrigo Co. plc*, No. 19-cv-4900 (D.N.J.).

226.]  Then, in July 2020, the Court entered a Stipulation and Order Approving Notice of Pendency of Class Action (the 2020 Class Notice Order).  [*Roofer's*, 2020 Class Notice Order (Docket No. 292).]  The 2020 Class Notice Order informed potential class members that "[i]f you fall within one or more of the Class definitions and are not otherwise excluded, you will automatically be considered a member of such Class unless you request exclusion."  [*Id.*, Ex. 2.]  It also explained, "[i]f you choose to remain in the Class(es), you will be bound by all orders and judgments in this Action, whether favorable or unfavorable." [*Id.* (emphasis removed).]  On this point, the Notice elaborated, "[i]f the Classes prevail on the common issues, or if a settlement is reached, you may be able to recover a reward," whereas "[i]f Defendants prevail, you may not pursue a lawsuit on your own behalf with regard to any of the issues decided in this Action."  [*Id.*]   And the Notice's opt-out provision advised, "[i]f you choose to be excluded, or in other words, 'opt-out' of the Action, you may individually pursue any legal rights that you may have against any of the Defendants." [*Id.*]  Potential class members had until December 3, 2020 to opt out of the *Roofer's* Class Action.  [*Roofer's*, Decl. of Luiggy Segura ¶ 3, Ex. A (Segura Decl.) (Docket No. 311).]

If a class member wanted to opt out of the *Roofer's* Class Action, the 2020 Class Notice Order instructed as follows:

> **HOW TO BE EXCLUDED FROM THE CLASSES:** If you fall within one or more of the Class definitions and are not otherwise excluded, *you will automatically be considered a member of such Class unless you request exclusion*. Any member of a Class may request not to be bound by these proceedings.  *To exclude yourself from the Class(es), you must send a signed letter by mail stating that you "request exclusion" from the Class(es) in "Roofer's Pension Fund v. Papa, et al., No. 16- CV-2805-MCA-LDW."*  Be sure to include: (i) your name, address, and telephone number, (ii) the transactional details of the Perrigo common stock you purchased, acquired, sold and/or held during the Class Period, including purchase/sale dates,

amount of shares purchased or sold, the price of such purchases or sales, and the number of shares held as of market close on November 12, 2015 at least through 8:00 a.m. eastern time on November 13, 2015; and (iii) the signature of the person or entity requesting exclusion or an authorized representative. <u>Your request for exclusion will not be effective unless it contains all of this information.</u> You must then mail your exclusion request, ***postmarked no later than [90 days after the Postcard is mailed], 2020***, to:

Perrigo Securities Litigation
[Notice Admin]

You cannot exclude yourself from the Class(es) by telephone or e-mail. If your request for exclusion is timely mailed and follows the above requirements, you will not be bound by any judgment in this Action. However, if you validly request exclusion, then you will not be eligible to share in any recovery in this Action. Do not request exclusion if you wish to participate in this Action as a Class Member.

[*Roofer's*, Docket No. 292 (emphases added).] The 2020 Class Notice Order required Class Counsel to file an affidavit with the Court "setting forth a list of all persons and entities who have requested exclusion from the Class within thirty . . . calendar days following the expiration of the exclusion deadline[]" (the Opt-out List). [*Id.*]

Sculptor would have received the 2020 Class Notice Order since it collectively held about 2.6 million shares of Perrigo common stock, owning five percent of the company, which it purchased or held within the *Roofer's* class period. [*Sculptor*, Compl. ¶ 37.] Sculptor's former counsel was aware of the 2020 Class Notice Order. [*Roofer's*, Decl. of Leigh M. Nathanson, Esq. ¶ 5 (Nathanson Decl.) (Docket No. 432-3).] Yet Sculptor did not appear in the Opt-out List that Class Counsel filed in early January 2021, listing the individuals and entities who requested exclusion from the *Roofer's* Class Action. [*Roofer's*, Decl. of Joshua B. Silverman,

Esq. (Silverman Decl.) ¶ 2 (Docket No. 331-1).]  The Opt-out List was available on the *Roofer's* docket for all to see.  [*Id.*]

Sculptor took no action based on the Opt-out List.  But others, like the plaintiff groups represented by Kessler Topaz Meltzer & Check, LLP (Kessler Topaz), who did not appear on the docketed Opt-out List, sprang into action.  Indeed, Kessler Topaz, who represented seven other plaintiff groups[3]—each of which had separate, pending lawsuits against Perrigo before the Court approved the 2020 Class Notice Order—quickly noticed its clients' absence from the Opt-out List.  [*See, e.g.*, *Carmignac*, Decl. of Mathew L. Mustokoff, Esq. ¶ 27 (Mustokoff Decl.) (Docket No. 131-1).]  Kessler Topaz petitioned the Court two weeks after the Opt-out List's publication to either exclude those plaintiffs from the *Roofer's* Class Action or extend their time to opt out. [*See, e.g.*, *id.*]  About a week later, the Court granted the *unopposed* motions, excluding each of the seven plaintiff groups from the *Roofer's* Class Action. [*See, e.g.*, *Carmignac*, Docket No. 136 ("All Plaintiffs in the above-captioned actions are hereby excluded from the certified classes in [*Roofer's*].  Each Plaintiff's request for exclusion received on January 8, 2021 by . . . the Court-approved claims administrator[] is hereby deemed timely-filed.").]  Again, unlike those seven plaintiff groups, *Sculptor took no action to address its omission from the Opt-out List*.  In fact, inexplicably, at no time until this motion to opt out— three-and-a-half years after the opt-out deadline and after the Court preliminary approved a class-wide settlement—did Sculptor move to exclude itself from the *Roofer's* Class Action or extend its time to opt out.

---

[3] *See Carmignac Gestion S.A. v. Perrigo Co. plc*, No. 17-cv-10467 (D.N.J.) (*Carmignac*) (Docket No. 131); *First Manhattan Co. v. Perrigo Co. plc*, No. 18-cv-02291 (D.N.J.) (Docket No. 129); *Nationwide Mutual Funds, et al. v. Perrigo Co. plc*, No. 18-cv-15382 (D.N.J.) (Docket No. 118); *Schwab Capital Trust, et al. v. Perrigo Co. plc*, No. 19-cv-03973 (D.N.J.) (Docket No. 113); *Aberdeen Canada Funds - Global Equity Fund, et al. v. Perrigo Co. plc*, No. 19-cv-06560 (D.N.J.) (Docket No. 110); *Principal Funds, Inc., et al. v. Perrigo Co. plc*, No. 20-cv-02410 (D.N.J.) (Docket No. 54); *Kuwait Investment Authority, et al. v. Perrigo Co. plc*, No. 20-cv-03431 (D.N.J.) (Docket No. 43).

## C. The *Sculptor* Action

### 1. Perrigo's Request to File a Motion for Judgment on the Pleadings

Two days after the December 5th opt-out deadline, and about a month before the Opt-out List became available, Perrigo asked the Court for permission to file a motion for judgment on the pleadings in several, pending lawsuits, including the *Sculptor* Action.[4] [*Sculptor*, Defs.' Dec. 7, 2020 Letter at 1.] In its premotion letter, Perrigo prematurely referred to those separate lawsuits as "opt-out Actions."[5] [*Id.*] Perrigo largely argued the plaintiffs' claims in those actions were time-barred, and under then-District of New Jersey caselaw, the limitations period had not been tolled. [*Id.* at 2-3.] The plaintiffs in those actions responded through a form letter contending Perrigo purposefully waited until days after the opt-out deadline to request leave to file a motion to dismiss to prevent them from joining the *Roofer's* Class Action, should Perrigo prevail on its statute of limitations arguments. [*See, e.g.*, *Sculptor*, Pls.' Dec. 14, 2020 Letter at 1 (Docket No. 112).] Those plaintiffs argued Perrigo was wrong on the law, and asked the Court to deny Perrigo's request to file its requested motion because the Third Circuit was considering an appeal of the very case Perrigo relied on.[6] [*Id.* at 1-3.] As it turned out, Perrigo never filed the motion for judgment on the pleadings in the *Sculptor* Action.

---

[4] Those actions included: *Nationwide Mutual Funds, et al. v. Perrigo Co. plc*, No. 18-cv-15382 (D.N.J.); *WCM Alts.: Event-Driven Fund, et al. v. Perrigo Co. plc*, No. 18-cv-16204 (D.N.J.); *Hudson Bay Master Fund Ltd, et al. v. Perrigo Co. plc*, No. 18-cv-16206 (D.N.J.); *Aberdeen Canada Funds - Global Equity Fund, et al. v. Perrigo Co. plc*, No. 19-cv-06560 (D.N.J.); *Schwab Capital Trust, et al. v. Perrigo Co. plc*, No. 19-cv-03973 (D.N.J.).

[5] As will be explained, Perrigo's "opt-out Actions" characterization was premature because Perrigo could not have known who affirmatively opted out of the Roofer's Class Action since Class Counsel had not yet filed the Opt-out List required by the 2020 Class Notice Order.

[6] *Aly v. Valeant Pharma. Int'l Inc.*, 1 F.4th 168, 175-76 (3d Cir. 2021) (holding *American Pipe & Construction Company v. Utah*, 414 U.S. 538 (1974) tolling applies to individual claims of putative class members, and will toll the statute of limitations for those individual claims filed before district court rules on class certification).

This fact bears repeating: despite Perrigo's premature characterization to the Court of the separate lawsuits as "opt-out Actions" in its premotion letter, it "could not and did not know whether *any* of the individual actions . . . had opted out" at the time. [*Roofer's*, Perrigo's Mem. of Law In Opp'n to Sculptor's Mot. to Exclude from Class Action 9-10 (Perrigo Br.) (emphasis in original) (Docket No. 440).] This is so because *Class Counsel had not yet filed the Opt-out List required by the 2020 Class Notice Order.* [Silverman Decl. ¶ 1.]

## 2. Routine Litigation Conduct

During and after the opt-out period, Perrigo engaged in discovery in the separate lawsuits against it, including the *Sculptor* Action, throughout which Sculptor acted and was represented as an "Individual Action" Plaintiff, litigating outside the Class Action, in tandem with several other plaintiff groups who had separately sued Perrigo. [*See, e.g.*, *Sculptor*, Aug. 12, 2020 Joint Letter (Docket No. 102) (indicating that Perrigo and Individual Action Plaintiffs would coordinate for discovery purposes with the Class Action schedule); Mar. 10, 2021 Joint Letter (Docket No. 119) (telling the Court about the separate discovery schedule, applicable to the Individual Actions and extending past the Exclusion Deadline); Aug. 23, 2021 Order (Docket No. 130) (extending the expert discovery deadline and listing the case captions for the Individual Actions).]

## D. The Class Action Settlement and Sculptor's Opt-out Status

In April 2021, Perrigo, its former CEO, and its former CFO all moved for summary judgment in the *Roofer's* Class Action. [*Roofer's*, Docket Nos. 342, 344, 346.] In January 2022, Perrigo and several plaintiff groups with pending lawsuits against Perrigo , including Sculptor, jointly requested that the Court hold off scheduling dispositive motions until the Court resolved the summary judgment motions in the *Roofer's* Class Action. [*Sculptor*, Docket No.

137.]  The Court agreed, administratively terminating those separate actions pending the outcome of the summary judgment motions in the *Roofer's* Class Action. [*See, e.g., Sculptor*, Docket No. 139.]

About two years later, the Court ruled on those summary judgment motions.  *Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604 (D.N.J. 2023).  Then, following several mediation sessions, Lead Plaintiff and Perrigo agreed to settle the *Roofer's* Class Action, filing a Stipulation and Agreement of Settlement (Stipulation) in April 2024, which established the terms of the settlement, including the Notice of Proposed Settlement with the following provision:

> Any class member that has maintained a direct action against Perrigo related to the Released Plaintiffs' Claims shall have a Recognized Loss of zero and be barred from receiving any payment in the Settlement, unless said direct action is dismissed within thirty (30) days of preliminary approval of the Settlement.

[*Roofer's*, Stipulation, App. A-1 ¶ 23 (Docket No. 424-2).]  The Stipulation "explicitly *prohibited* Defendants from having any involvement with the Plan of Allocation." [Perrigo Br. at 11 (citing *Roofer's*, Stipulation ¶ 24 (emphasis in original)).]  The Court preliminary approved the settlement conditioned on a fairness hearing.  [*Roofer's*, Docket No. 427.]

Shortly thereafter, Sculptor's apparent failure to file an opt-out request from the *Roofer's* Class Action emerged.  [*Roofer's*, Nathanson Decl. ¶ 9.]  According to Sculptor's former counsel, counsel was "*aware of the [2020 Class Notice Order] and intended to request exclusion on behalf of [Sculptor]*" even though neither counsel nor Sculptor received the 2020 Class Notice Order.  [*Id.* ¶ 5 (emphasis added).]  Despite counsel's claim about not actually receiving the 2020 Class Notice Order, the Notice was publicly available on the *Roofer's* Class Action docket and there is no denial that, through the *Roofer's* docket, Sculptor's former

counsel knew about the 2020 Class Notice Order.  [*Roofer's*, Docket No. 292.]  Counsel asserts that during the opt-out period, her firm's staff worked remotely because of the COVID-19 pandemic, but she instructed an associate at her firm to submit an opt-out request to the Court-approved Claims Administrator.  [Nathanson Decl.¶ 6.]  Counsel never checked the Opt-out List, believing her firm staff had mailed the opt-out request.  [*Id.* ¶¶ 6-7.]  Counsel checked her firm's internal records and cannot confirm whether the opt-out request was mailed, whether it was lost in the mail, or whether the claims administrator received the request, but did not process it.  [*Id.* ¶ 12.]  Despite checking her firm's internal records, counsel never produced a draft copy of the opt-out request.

Now, three-and-a-half-years after the opt-out deadline, Sculptor moves to opt out of the *Roofer's* Class Action.  [*Roofer's*, Docket No. 432.]  Notably, Class Counsel has agreed to waive the Stipulation's plan of allocation's thirty-day deadline for Sculptor to dismiss the *Sculptor* Action so it can participate in the class settlement provided that Sculptor "timely submitted a claim form in the [*Roofer's*] Class Action that would be treated as conditional until [Sculptor's] opt-out motion was resolved[.]"  [Sculptor's Mem. of Law in Supp. of Mot. to Exclude from Class Action 9 (Sculptor Br.) (*Roofer's*, Docket No. 432-1); *see also* Roofer's Resp. to Sculptor's Mot. to Exclude from Class Action 1 (Roofer's Br.) (*Roofer's*, Docket No. 435).]

While Sculptor's motion to opt out was pending, the Court approved the class-wide settlement in the *Roofer's* Class Action.  [*Roofer's*, Docket No. 449.]

## II.  DISCUSSION

### A. Opting Out by "Reasonable Indication"

Sculptor contends its failure to formally opt out as required by the 2020 Class Notice Order is not fatal because it gave a reasonable indication of its intent to opt out.   [Sculptor Br. at 9-15.]   Sculptor largely points to the actions taken in the *Sculptor* Action, such as Perrigo's abandoned request for leave to move for a judgment on the pleadings, joint-party letters on scheduling discovery, and various case management orders.  [*Id*. at 11-15.]  Sculptor argues those actions showed its intent to opt out.  The Court does not agree.

### 1.  The "Reasonable Indication" Approach to Opting Out Is Unworkable

When a court provides clear instructions to class members on how to opt out of a massive, complex class action that a litigant fails to follow, courts should not have to engage in guesswork to determine whether the litigant gave a "reasonable indication" of opting out. The reasonable indication approach that Sculptor presses here is unworkable because it ignores the complexities of class actions that courts face today.   It is also outdated.

Decades ago, the Second and Tenth Circuits adopted the reasonable indication approach to opting out.  *Four Seasons Secs. Laws Litig.*, 493 F.2d 1288, 1291 (10th Cir. 1974) ("A reasonable indication of a desire to opt out ought to be sufficient."); *Plummer v. Chem. Bank*, 668 F.2d 654, 657 n.2 (2d Cir. 1982) ("Any reasonable indication of a desire to opt out should suffice." (citing *Four Seasons*, 493 F.2d at 1921 and Charles Alan Wright & Arthur R. Miller, 7A *Federal Practice & Procedure* § 1787 (1972))).  The Second and Tenth Circuits took their lead from a half-a-century-old treatise by Charles Alan Wright and Arthur R. Miller. *Four Seasons*, 493 F.2d at 1291.

Fifty years ago, Wright and Miller observed that Federal Rule of Civil Procedure 23(c)(2)(B) only requires courts to notify class members that a court can exclude them from the class if requested, and to provide class members information on "when and how [they] may elect to be excluded." Wright & Miller, 7A *Federal Practice & Procedures* § 1787 (1972) (now 7AA *Federal Practice & Procedure Civil* § 1787 (3d ed.)). The treatise observed that Rule 23's notice provision "does not specify any particular means by which the absentee is to request exclusion." *Id.* When this occurs, the treatise explained courts should have "considerable flexibility" to "determin[e] what constitutes an effective expression of a class member's desire to be excluded." *Id.* The treatise noted "any written evidence of that desire should suffice." *Id.* It also explained "some communication of the member's intent must be received by the court prior to the entry of judgment." *Id.* To clarify opt-opt procedures, the treatise suggested courts issue Rule 23 notices that "inform the recipient exactly how to express the desire to opt out, to whom it should be directed, and the date by which it must be received." *Id.*

Following Wright's and Miller's lead, the Tenth Circuit adopted the opt out by reasonable indication approach suggested by the treatise. *Four Seasons*, 493 F.2d at 1291. On facts entirely different from this case, the *Four Seasons* court found the district court did not abuse its discretion by finding a class member—who sent its opt-out request to the wrong entity, thereby missing the deadline—to have effectively opted out of the class action. *Id.* at 1289-91. The court upheld the district court's decision to extend the class member's time to opt out under Federal Rule of Civil Procedure 6(b)'s excusable neglect provision. *Id.* at 1290-91. Then, relying on Wright and Miller, the court proclaimed, "[a] reasonable indication of a desire to opt out ought to be sufficient." *Id.* at 1291. The *Four Seasons* court stressed "the

important question was whether notice [to opt out] was communicated[,]" and found the class member's "inquiries and expressions" to opt out communicated to the bankruptcy trustee and class counsel "were adequate." *Id.* The Tenth Circuit left it up to district courts to resolve the "effectiveness" of an opt-out request. *Id.* ("It was open to the trial court to find the facts on this and to determine the issue in accordance with the purpose of Rule 23(c)(2), which provides for the binding effect of a judgment on members of a class who have not expressly requested exclusion.").

About eight years after *Four Seasons*, the Second Circuit appears to have adopted the opt out by reasonable indication approach through a footnote in *Plummer*. 668 F.2d at 657 n.2. Relying on *Four Seasons* and Wright and Miller, the *Plummer* court recognized that "nothing in Rule 23 . . . requires [proposed class members] to file written reasons for their exercise of choice [to opt out.]" *Id.* The Second Circuit then announced, "[a]ny reasonable indication of a desire to opt out should suffice." *Id.* (citing *Four Seasons*, F.2d at 1291; 7A Wright & Miller, *supra*, § 1787).

Fast forward forty-years. After *Four Seasons*, the Fifth Circuit reserved on deciding whether to adopt the opt out by reasonable indication approach. *In re Deepwater Horizon*, 819 F.3d 190, 196-97 (5th Cir. 2016). The *Deepwater Horizon* court upheld the district court's finding that a class member did not opt out, reasoning the member's conduct "more closely resembles an after-the-fact attempt to depict completely distinct litigation conduct in another sphere as expressing a desire to opt out." *Id.* at 197. Though refusing to weigh in on the opt out by reasonable indication approach, the Fifth Circuit recognized the importance of "encouraging clarity in opt out requests" especially in large, complex class actions or multi-district litigations (MDLs). *Id.* Given the "gargantuan size" of the *Deepwater Horizon*

MDL, the Fifth Circuit found "*the court and parties should not have to intuit an opt out from vague statements made in one of thousands of filings before the court.*" *Id.* at 197-98 (emphasis added).  The *Deepwater Horizon* court cautioned that ambiguous opt-out requests could lead to "gamesmanship" with class members "waiting to see if the outcome of the class action is favorable."  *Id.* at 198.

In a similar vein, the Seven Circuit recently declined to adopt the reasonable indication approach for opting out of a class action.  *In re Navistar MaxxForce Engines Mtkg., Sales Pracs., and Prods. Liab. Litig.*, 990 F.3d 1048, 1052 (7th Cir. 2021) (*MaxxForce Engines*).  In *MaxxForce Engines*, the Seventh Circuit observed that courts applying the reasonable indication approach did so *only* when the district court did not provide explicit instructions to class members on how to opt out.  *Id.*  In those cases, the Seventh Circuit found district courts are "free to accept as adequate any 'reasonable indication' of such a desire" to opt out.  *Id.*  But the Seventh Circuit refused to apply the reasonable indication approach where the district court gave (or approved) explicit instructions on opting out.  *Id.*

In doing so, the Seventh Circuit reasoned that the "reasonable indication" approach allows "the possibility of having things both ways" where litigants, unsatisfied with the results of their individual action, seek to participate in a class action by claiming they never formally opted out.  *Id.* at 1052-53.  Thus, holding litigants to court approved opt-out procedures prevents litigants from fishing in two ponds (the individual action and class action) with the hope for a bigger catch.  *Id.*  The court then reasoned that "the 'reasonable indication' approach could make class actions difficult if not impossible to administer[,]" and "pose dozens or hundreds of difficult questions for a judge."  *Id.* at 1053.  For example, the court pointed to the difficulty courts would face interpreting litigants' conduct in an individual

action.  *Id.*  The court concluded "[f]ollowing mechanical rules is the only sure way to handle suits with thousands of class members."  *Id.*  And because the class members there did not follow the court approved, opt-out procedure, the Seventh Circuit found the members "did not opt out" even though they had a pending litigation in another forum.  *Id.*

It is hard to quarrel with the Seventh Circuit's sound proposition that the failure to follow the Court's clear instructions will have significant consequences.  Those consequences will inject uncertainties and chaos into what already complex, massive class actions that courts routinely face.  Like the notice in *MaxxForce Engines*, the 2020 Class Notice Order here provided clear instructions on how to opt out.   In fact, the 2020 Class Notice Order removed the "uncertainty" on opting out that Wright and Miller advocated for by telling class members "exactly how to express the desire to opt out, to whom it should be directed, and the date by which it must be received."  7A Wright & Miller, *supra*, § 1787.  Given the 2020 Class Notice Order's unambiguous instructions, the Court follows the Seventh Circuit's lead in *MaxxForce Engines.  Cf. In re Gen. Motors LLC Ignition Switch Litig.*, 2021 WL 1566053, *5 n.4 (S.D.N.Y. Apr. 20, 2021) (noting the "considerable force to [*MaxxForce Engines*'] reasoning and explaining "if the [c]ourt were writing on a blank slate it might well adopt the Seventh Circuit's approach[,]" but noting court was bound by Second Circuit caselaw on opting out by reasonable indication).  The reasonable indication approach is unworkable in large, complex class actions.

Securities class actions—like *Roofer's*—often have thousands of class members (possibly millions).  Indeed, the Class Administrator here mailed close to 300,000 notices to potential class members.  [Segura Decl. ¶ 12.]  Following the opt out by reasonable indication approach in these class actions could frustrate efficient administration and complicate

settlement efforts. This case illustrates precisely the problems the *MaxxForce Engines* court addressed by refusing to adopt the reasonable indication approach to opting out when the district court provides explicit instructions on how to opt out. Sculptor asks this Court to wade into the maze of various letters and case management orders (filed years ago) as proof of its intent to opt out. This Court declines Sculptor's invitation to decipher its intent much less read its mind.

In class actions, "accurately calculating initial opt-outs" is crucial. *In re Diet Drugs (Phentermine/Fenluramine/Dexfenfluramine) Prods. Liab. Litig.*, 92 F. App'x 890, 895 (3d Cir. 2004) (*Diet Drugs I*). Courts must police class action settlements to ensure they are "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). Mechanical rules on opt outs help courts to decide whether a proposed settlement is fair and adequate by telling the court who's in and who's out. *MaxxForce Engines*, 990 F.3d at 1053-54. Sculptor failed to follow the 2020 Class Notice Order's opt-out instructions (evidenced by the Opt-out List), and failed to take any action to verify its opt-out status even though the Opt-out List was published years ago. Thus, the Court will not accept Sculptor's opt out by reasonable indication. *See* id. at 1053. Sculptor's decision to pursue the *Sculptor* Action did not relieve it from its obligation to follow the 2020 Class Notice Order on opting out. *In re Prudential Ins. of Am. Sales Pracs. Litig.*, 177 F.R.D. 216, 238 (D.N.J. 1997) ("Class members . . . must file a valid request for exclusion regardless of whether they have an individual action filed and pending prior to the opt-out deadline.").

That said, a litigant's failure to follow a court's order on opting out is not the be-all and end-all. A class member who missed an opt out deadline or who seeks to be excluded from a class action settlement after the bar date can seek refuge in Federal Rules of Civil

Procedure 6(b)'s and 60(b)'s excusable neglect provisions.  As will be explained, those Rules allow courts to either extend time for a party to opt out of a class action or be relieved from a bar date.  In fact, before adopting the reasonable indication approach, the *Four Seasons* court held the district court properly enlarged the litigant's time to opt out under Rule 6(b)'s excusable neglect provision.  493 F.2d at 1289-90.  Thus, given Federal Rules of Civil Procedure 6(b) and 60(b), courts do not need to resort to the guesswork of interpreting a litigant's conduct to see if it gave a "reasonable indication" to opt out.

### 2. Even If Opting Out by Reasonable Indication Applies, Sculptor's Conduct Did Not Reasonably Indicate an Intent to Opt Out

Even if this Court were to adopt the "reasonable indication" approach to opting out, *see In re Linderboard Antitrust Litig.*, 223 F.R.D. 357, 365 (E.D. Pa. 2004) (following *Four Seasons*), Sculptor has not met it.

"[F]or a party to give a 'reasonable indication' of its intent to opt out, the party must perform some action that is unambiguously inconsistent with an intention to participate in the settlement." *In re Processed Egg Prods. Antitrust Litig.*, 130 F. Supp. 3d 945, 952 (E.D. Pa. 2015).  That "action must take place during the opt-out period." *In re Nat'l Football League Players' Concussion Injury Litig.*, 2019 WL 95917, at *6 (E.D. Pa. Jan. 3, 2019) (*NFL).  "Merely continuing to maintain a lawsuit filed *before* the opt-out period is not a reasonable indication of a desire to opt out." *Id.* (emphasis in original); *accord Demint v. NationsBank Corp.*, 208 F.R.D. 639, 641 (M.D. Fla. 2002) ("[T]he mere pendency and continued prosecution of a separate suit, which the litigant instituted *before* commencement of the 'opt out' period in a related class action, neither registers nor preserves a litigant's election to 'opt out' of the related class action." (emphasis in original)); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 370 (S.D.N.Y) ("It is well-established that 'pendency of an individual action does not

excuse a class member from filing a valid request for exclusion.'" (citations omitted)), *aff'd*, 107 F.3d 3 (2d Cir. 1996).

The *Sculptor* Action's record reveals Sculptor did not perform any act during the opt-out period conveying its intent to opt out. Sculptor filed its suit *before* the opt-out period, and merely continued with it throughout and after the opt-out period expired. That conduct is "not a reasonable indication of a desire to opt out." *NFL*, 2019 WL 95917, at *6; *see also Egg Processed*, 130 F. Supp. at 952-53.

Sculptor points to Perrigo's abandoned request for leave to file a motion for a judgment on the pleadings as evidence of "its understanding that Sculptor had opted out." [Sculptor Br. at 12.] It is a misleading argument. As explained above, when Perrigo made that request, *Roofer's* Lead Counsel had not yet filed the Opt-out List identifying the individuals requesting exclusion from the *Roofer's* Class Action that the 2020 Class Notice Order required to be published. [*Roofer's*, Docket No. 331-1.] So, when Perrigo sought leave to file the motion in the *Sculptor* Action (and several other separate actions), Perrigo did not know who had formally opted out of the *Roofer's* Class. Thus, Sculptor's reliance on Perrigo's request to file the motion on the pleadings is a stretch.

Besides that conduct, Sculptor largely relies on its and Perrigo's conduct to coordinate discovery in all actions. [Sculptor Br. at 12-14; *see also* Reply Decl. of Leigh Nathanson ¶¶ 2-5 (Docket No. 443-5).] But that conduct is not enough to convey a reasonable indication to opt out. *See In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 6497597, at *2 (N.D. Cal. Dec. 19, 2017) ("[C]ontinu[ing] to participate in some aspects of the litigation, including case management discussions and individual settlement discussions, does not rise to the level of the 'reasonable indication' circumstances[.]"). Indeed, "prosecuting an already pending

lawsuit during an opt-out period is not so clearly a rejection of the [class action], as preexisting case deadlines and other obligations to which the prospective opt-out plaintiff must respond may arise by virtue of having already filed suit, and the act of responding to those obligations does not constitute so meaningful a rejection as does initiating new litigation." *Processed Egg*, 130 F. Supp. 3d at 953 n.11. Thus, Sculptor's litigation efforts in the *Sculptor* Action did not convey an intent to opt out.

Still, Sculptor contends its conduct went beyond merely maintaining its separate action when it created new discovery obligations in that action by negotiating new discovery deadlines with Perrigo. [Sculptor Reply Mem. of Law in Supp. of Mot. to Exclude from Class Action 4 (Sculptor Reply Br.) (Docket No. 443).] According to Sculptor, that conduct shows its intent to opt out. [*Id.* at 4.] Not so. The dockets in the *Sculptor*, *Roofer's* Class, and the other separate actions reveal the parties continued to coordinate discovery and once they completed discovery, they agreed to administratively terminate the separate actions until the Court resolved Perrigo's and the former corporate officers' summary judgment motions in the *Roofer's* Class Action. Nothing in that timeline is unique or suggests a rejection of the *Roofer's* Class Action. *See Processed Egg*, 130 F. Supp. 3d at 953 n.11. Indeed, filing a lawsuit creates obligations—initial disclosures, discovery deadlines, case management conferences, dispositive motion deadlines, and so on—that parties must comply with. In large, complex lawsuits, litigants often agree to move those deadlines for many reasons (discovery production delays, ESI discovery, witness availability, expert witnesses need more time, the list can go on). That is the natural progression of many lawsuits and tells this Court little about Sculptor's intent to opt out.

But Sculptor presses on and points to the United States District Court for the Northern District of Illinois' decision in *In re Brand Name Prescription Drugs Antitrust Litig.*, 171 F.R.D. 213 (N.D. Ill. 1997) (*Brand Name*), to argue that its litigation conduct in the *Sculptor* Action illustrates its intent to opt out. [Sculptor Reply Br. 3-4.] *Brand Name* is different.

In *Brand Name*, the district court found a litigant took sufficient steps before the opt-out deadline "to demonstrate an intent to pursue its case independent of the class action." 171 F.R.D. at 216. There, a grocery chain sued many drug manufactures, but that action was consolidated into a larger, ongoing MDL involving drug manufacturers. *Id.* at 214. While the grocer received a notice of a pendency of the MDL and decided not to participate in that action, the grocer inadvertently sent the opt-out request to the wrong address. *Id.* Realizing the error, the grocer resent the opt-out request to the Clerk of the Court where the MDL was pending. *Id.* About three weeks later, the grocer filed another action against the same drug manufacturers it sued earlier. *Id.* On those facts, the district court found the grocer's conduct was "sufficient to signify an intention to opt out[,]" finding the grocer's second lawsuit against the same drug manufacturers it already sued "[t]he clearest evidence of a desire to pursue its own litigation." *Id.* at 216.

Unlike the grocer in *Brand Name*, there is no evidence that Sculptor's former counsel mailed the opt-out request. Sculptor's former counsel asserts she cannot verify whether her firm sent the opt-out request, the request was lost in the mail, or the Claims Administrator received the request, but failed to process it. [Nathanson Decl. ¶ 12.] Former counsel has not submitted any proof of mailing. If former counsel's firm had mailed the request, it would seem that firm would have some documentation of the mailing (a return receipt, tracking information, a copy of the envelope, or an email confirming the mailing).

Moreover, Sculptor's former counsel has not even submitted a draft of the opt-out request. To properly opt-out, the 2020 Class Notice Order required investors to state in the opt-out request, "the transactional details of the Perrigo common stock you purchased, acquired, sold and/or held during the Class Period, including purchase/sale dates, amount of shares purchased or sold, the price of such purchases or sales, and the number of shares held as of market close on November 12, 2015 at least through 8:00 a.m. eastern time on November 13, 2015[.]" [*Roofer's*, Docket No. 292.] Given that Sculptor held about 2.6 million shares during the *Roofer's* class period, *see* Sculptor Br. at 5, Sculptor's alleged opt-out request would apparently be detailed. Yet former counsel has not submitted a draft of the opt-out request. So while the grocer in *Brand Name* mailed the request (to the wrong address and tried to correct the error), the record here is distinguishable. Some courts have rejected opt out by reasonable indication arguments without proof of some written communication. *See Sanders v. John Nuveen & Co.* 524 F.2d 1064, 1075 (7th Cir. 1975) (acknowledging reasonable indication approach, but ruling district court did not abuse its discretion in finding class member did not opt out of class where "no communication was actually received by the court until after the adjudication on the merits"), *vacated on other grounds,* 425 U.S. 929 (1976); *see also In re Worldcom, Inc. Sec. Litig.*, 2005 WL 1048073, at *4 (S.D.N.Y. May 5, 2005) ("[T]he testimony of a class member, without some documentary proof of mailing, will seldom, if ever, be sufficient to meet the burden of showing a timely request to opt out."). Even Wright and Miller recognized the need for "written evidence" conveying a member's intent to opt out of a class action. 7A Wright & Miller, *supra*, § 1787

And unlike the grocer in *Brand Name*, Sculptor merely maintained its separate lawsuit during and after the opt-out period. "The clearest evidence of a desire to pursue its own

litigation" in *Brand Name*—suing the same drug manufacturers again *after* the failed opt-out attempt—is absent here. 171 F.R.D. at 216. Again, merely continuing a lawsuit started before the opt-out period does not suggest an intent to opt out. *NFL*, 2019 WL 95917, at *6.

**B. Sculptor's Due Process Challenge to the 2020 Class Notice Order**

Next, Sculptor attacks the adequacy of the 2020 Class Notice Order on due process grounds. It argues that the notice does not inform investors with pending actions against Perrigo that their failure to timely opt out would bar them from continuing those actions if the *Roofer's* Class Action settles. [Sculptor Br. at 17.] This argument is meritless.

To satisfy due process, a class action notice "should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013). That a class action notice "could have more clearly described" the consequences on failing to opt out "is not enough to demonstrate a due process violation[.]" *Processed Egg*, 130 F. Supp. 3d at 951. The 2020 Class Notice Order satisfies due process.

First, the 2020 Class Notice Order provided adequate notice on the consequences on separate lawsuits for failing to opt out. The Notice unambiguously stated, "You will automatically be included in the Class(es) unless you request exclusion in accordance with procedure set forth below [in the Notice.]" [2020 Class Notice Order, Ex. 2.] The Notice further advised, "[i]f you fall within one or more of the Class definitions and are not otherwise excluded, you will automatically be considered a member of such Class unless you request exclusion." [*Id.*] The Notice also provided, "[i]f you choose to remain in the Class(es), *you will be bound by all orders and judgments in this Action*, whether favorable or unfavorable." [*Id.*

(first emphasis omitted and second emphasis added).]  The Notice's opt-out provision stated, "[i]f you chose to be excluded, or in other words, 'opt-out' of the Action, you may individually *pursue* any legal rights that you may have against any of the Defendants." [*Id.* (emphasis added).]  The word "pursue" means, among other things, "to carry on or continue [.]"  *Pursue*, Dictionary.com, https://www.dictionary.com/browse/pursue (last visited on Sept. 9, 2024); *see also Pursue*, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/pursue (last visited Sept. 9, 2024) (defining pursue to mean, among other things, "to continue to do").

Read together, the Notice's statements are clear:  If a person falls within the *Roofer's* Class Action's class definitions, the person is automatically included in the *Roofer's* Class Action, and as a member, the person will be bound by all orders and judgments in that action regardless of the result unless the person requests to be excluded, and if the person wanted to pursue (continue to sue Perrigo), the person had to request exclusion.  [*Id.*]  Thus, the 2020 Class Notice Order provided enough information to class members to inform them that if they wanted to maintain individual lawsuits against Perrigo, they had to opt out of the *Roofer's* Class Action, otherwise, they would be bound by results of the *Roofer's* Class Action (whether it be settlement or adjudication on the merits).  That the 2020 Class Notice Order did not specifically identify pending separate actions against Perrigo doesn't render the Notice defective.  *Processed Egg*, 130 F. Supp. 3d at 951.

Second, many plaintiff groups with separate lawsuits against Perrigo (as well as other investors) opted out of the *Roofer's* Class Action, which suggests the 2020 Class Notice Order was adequate.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 4181732, at *3 (N.D. Cal. Aug. 20, 2014) ("[W]hile the success of the procedures is not dispositive, the fact that

eighteen corporate families filed timely opt-out notices further indicates notice was adequate."); *see also Processed Egg*, 130 F. Supp. 3d at 950 n.7 ("The Kraft DAPs' argument is further weakened by the fact that all of the other DAPs filed opt-out letters after receiving the Notice.").

Third, Sculptor's own conduct confirms the Notice was adequate because Sculptor's counsel "was aware of the Notice and intended to request exclusion[.]" [Nathanson Decl. ¶ 5.] Sculptor's former counsel did not miss the opt-out deadline because counsel misunderstood the 2020 Class Notice Order. So Sculptor's due process challenge to the 2020 Class Notice Order fails.

## C. Sculptor's Request for Relief Under Rules 6(b)'s and 60(b)'s Excusable Neglect Provisions

Sculptor has not shown excusable neglect for the Court to allow it, at this late stage of the litigation, to opt out of the *Roofer's* Class Action.

Federal Rules of Civil Procedure 6(b)(1)(B) and 60(b)(1) allows courts to provide litigants relief from a missed deadline or an order or judgment upon a showing of excusable neglect. A party's failure to timely file an opt-out request in a class action in some cases may qualify as "excusable neglect." *In re Ins. Brokerage Antitrust Litig. (MDL 1663)*, 374 F. App'x 263, 265 (3d Cir. 2010) (*Brokerage*) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Courts look to the *Pioneer* factors to determine whether such failure constitutes excusable neglect: "1) the danger of prejudice to the nonmovant; 2) the length of the delay and its potential effect on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and 4) whether the movant acted in good faith." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 322-23 (3d Cir. 2001) (quoting *Pioneer*, 507 U.S. at 395). Courts must consider all those

factors and "no one factor trumps the other." *In re Am. Classic Voyages Co.*, 405 F.3d 127, 133 (3d Cir. 2005).  At bottom, the excusable neglect inquiry requires courts to make an "equitable" call and "consider all relevant circumstances surrounding a party's failure to file[]" by the opt-out deadline. *Id.* (quoting *Chemetron Corp. v. Jones*, 72 F.3d 341, 349 (3d Cir. 1995)).  "Where those equitable powers are exercised in the form of case management decisions in a complex class action, [a] 'district court['s] discretion is at its greatest.'" *Brokerage,* 374 F. App'x at 266 (quoting *In re Vitamins Antitrust Class Actions,* 327 F.3d 1207, 1210 (D.C. Cir. 2003)).

### 1.  Reason for and the Length of the Delay

The Court starts its analysis with *Pioneer*'s second and third factors.  Those factors strongly disfavor Sculptor.

Starting with the reasons for delay, Sculptor provides no documentation showing its former counsel prepared the request or sent it.  Sculptor is a sophisticated party and had retained sophisticated counsel.  The 2020 Class Notice Order required investors seeking to opt out to include a great deal of stockownership data in the opt-out request for the request to be effective.  Yet there is no evidence Sculptor former counsel prepared the request other than counsel's assertion that she told an associate to do it.  [Nathanson Decl. ¶ 6.]  Moreover, if Sculptor's former counsel drafted the opt-out request as counsel suggests, *see id.* ¶¶ 6, 12, then the firm should have a draft of the opt-out request on its document management system.  Sculptor has not submitted the "paper trail" one would expect to see if counsel had drafted the opt-out request and mailed it.  That lack of paper trail leads to one conclusion:  Sculptor's former counsel never filed the opt-out request.

"In evaluating excusable neglect, 'clients must be held accountable for the acts and omissions of their attorneys.'" *Diet Drugs I*, 92 F. App'x at 893 (quoting *Pioneer*, 507 U.S. at 396). So courts must determine "whether the neglect of [the litigants] and their counsel was excusable." *Pioneer*, 507 U.S. at 397 (emphasis removed). "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect.'" *Id.* at 392. "[T]he equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule and . . . where the rule is entirely clear, [courts] continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *In re Kaplan*, 482 F. App'x 704, 707 (3d Cir. 2012) (second alteration in original, omission in original, internal quotation marks omitted) (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003)). Courts are reluctant to find excusable neglect if the delay is "entirely avoidable and within [a party's] control." *Am. Classic Voyages*, 405 F.3d at 134; *see also In re Am. Corp. Secs., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2013 WL 2443748, at *6 (S.D.N.Y. June 5, 2013) ("When a movant's failure to meet a clear deadline was within his control, the motion will be denied, even in instances of good-faith ignorance of a rule, or when an ambiguous rule functioned as a trap for the unsuspecting litigant and has since been amended." (citation and internal quotation marks omitted)). Courts must consider whether the litigant's counsel "did all he [or she] reasonably could to comply with the court-ordered bar date." *Pioneer*, 507 U.S. at 396.

Sculptor's former counsel's failure to file the opt-out request was avoidable and within counsel's control. *Am. Classic Voyages*, 405 F.3d at 134 (finding *Pioneer*'s reason for delay factor "strongly disfavor[ed]" petitioner because "[d]elay was the direct result of the negligence of [petitioner's] counsel in failing to review the Notice sent to him by [bankruptcy

claims agent].").  The 2020 Class Notice Order provided clear instructions on how to opt out and when.  Former counsel's failure to file the opt-out request is not excusable.  *Diet Drugs I*, 92 F. App'x at 894-95 (finding "the circumstances surrounding [movant's] counsel's mistake in filing the wrong form are neither unique nor compelling"); *see also In re Imprelis Herbicide Mktg., Sales, Pracs. & Prods. Liab. Litig.*, 2014 WL 348593, at *6 (E.D. Pa. Jan. 31, 2014) ("[C]ounsel's choices or conduct as a reason for [movant's] delay is not a justification that will excuse [movant].");￼ *accord Sierra v. City of New York*, 2021 WL 4443304, at *2 (S.D.N.Y. Sept. 28, 2021) (finding "[p]laintiff has not provided a compelling reason for missing the deadline" explaining "the fact that her counsel failed to timely act on her behalf is not a sufficient justification for failing to meet it"); *Flores v. Medifit Corp. Servs., Inc.*, 2017 WL 550212, at *2 (N.D. Cal. Feb. 10, 2017) (refusing to find excusable neglect for late opt out, reasoning claimant "took the risk that her counsel might misplace the opt-out request or fail to forward it to the correct entity"), *appeal dismissed sub nom.*, *Mason v. Medifit Corp. Servs., Inc.*,  2018 WL 11437187, at *1 (9th Cir. May 25, 2018).

Even if former counsel's firm's staff mailed the opt-out request as counsel claims, *see* Nathanson Decl. ¶¶ 6, 12, counsel could have easily verified if the Claims Administrator received it by checking the Opt-out List available on the *Roofer's* Class Action docket.  Yet counsel never did.  [*Id.* ¶ 7.]  Thus, Sculptor's former counsel did not do all she "reasonably could to comply with the court-ordered bar date."  *Pioneer*, 507 U.S. at 396.  Indeed, courts have rejected excusable neglect claims where counsel could have verified their client's opt-out status by checking the published opt-out list.  *See Nelson v. Avalonbay Communities, Inc.*, 2017 WL 6371302, at *3 (D.N.J. Dec. 13, 2017) (finding "[t]he timely filing of an opt out in this case was 'well within the control of [Plaintiff's] counsel' where counsel could have checked

docket in class action to verify settlement of class action (quoting *Diet Drugs I*, 92 F. App'x at 894)); *see also In re Deva Concepts Prods. Liab. Litig.*, 2022 WL 1214136, at *3 (S.D.N.Y Apr. 25, 2022) (finding claimant's counsel's error to timely file opt-out request inexcusable where claimant and counsel had multiple opportunities to verify opt-out status by checking opt-out list that was appended to two different court orders), *aff'd sub nom. Robaina v. Deva Concepts, LLP*, 2023 WL 3144038, at *3 (2d Cir. Apr. 28, 2023); *cf. NFL*, 2019 WL 95917, *8 n.10 ("To the extent [movant's] failure to timely opt-out was due to her attorney's failure to monitor the docket or otherwise stay apprised of developments in the NFL Concussion Litigation, clients are 'held accountable for the acts and omissions of their attorneys.'" (quoting *Pioneer*, 507 U.S. at 396)).

And the fact that counsel in some of the separate lawsuits against Perrigo (*Carmignac*, *First Manhattan*, *Nationwide Mutual*, *Schwab*, *Aberdeen*, *Principal*, and *Kuwait*) expeditiously moved to be excluded after the opt-out deadline shows Sculptor's former counsel's lack of diligence. Up top, the Court explained Kessler Topaz moved in each of those actions to be excluded from the *Roofer's* Class Action soon after learning those plaintiffs did not appear on the Opt-out List even though their counsel sent opt-out requests or instructed its staff to do so. [Mustokoff Decl. ¶ 27.] As Sculptor's points out, Sculptor's former counsel, Perrigo's counsel, and counsel in other separate lawsuits all coordinated with each other to facilitate discovery. [Sculptor Br. at 7, 12-14.] Given that coordination (and presumably the communication among counsel), Kessler Topaz's motions should have alerted Sculptor's former counsel to at least check the Opt-out list. But counsel did not. [Nathanson Decl. ¶ 7.]

While the Court recognizes the opt-out deadline coincided with the COVID-19 global pandemic that upended all our lives, the pandemic cannot excuse Sculptor's former counsel's

failure to verify Sculptor's opt-out status. *See Farzan v. Bayview Loan Servicing LLC*, 2020 WL 13240130, at *2 (D.N.J. Dec. 9, 2020) (recognizing the difficulty "posed by the COVID-19 pandemic" but refusing to find excusable neglect where appellant failed to provide "any explanation for his failure to monitor the court docket in order to remain abreast of his court filings"). In fact, given some States' shelter-in-place orders resulting in many employees having to work remotely, Sculptor's former counsel should have done more to verify that firm staff prepared and mailed the opt-out request to the Claims Administrator. Counsel could have easily done that by simply checking the Opt-out list. And the record does not suggest Sculptor's former counsel had in place any back-up measures to ensure the firm's staff prepared and mailed the opt-out request. Accordingly, *Pioneer*'s reason for delay factor strongly disfavors Sculptor.

Turning to the length of the delay, the almost three-and-half year delay is substantial. Courts have routinely found much shorter delays inexcusable. *See, e.g., Imprelis*, 2014 WL 348593, at *5 (explaining claimant's opt out that was filed either two or five months after deadline "was materially delayed"); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 2009 WL 3444763, at *3 (E.D. Pa. Oct. 23, 2009) (*Diet Drugs II*) (refusing to find excusable neglect where claimant tried to opt out "more than three years after" the opt-out period expired); *see also Sierra*, 2021 WL 4443304, at *2 (finding eight-month delay after opt-out deadline inexcusable).

### 2. Prejudice

The first *Pioneer* factor—prejudice to Perrigo—slightly weighs against Sculptor. If the Court allows Sculptor to opt out, Perrigo would suffer minimal prejudice from having to continue to defend the *Sculptor* Action. Indeed, merely having to continue to defend an

ongoing lawsuit is not—without more—prejudicial enough to bar a party from opting out of a class action.  *See Processed Egg*, 130 F. Supp. 3d at 954 (finding defendant would not suffer prejudice if movant allowed to opt out simply because defendant would have to defend existing lawsuit); *see also In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, 2017 WL 2829599, at *5 (D.N.J. June 30, 2017) (finding "danger of prejudice" to defendant "slight" where defendant would merely have to defend movant's lawsuit).  As noted above, Perrigo litigated the *Sculptor* Action until it filed for summary judgment in the *Roofer's* Class Action.

That said, Perrigo has an interest in achieving finality by resolving as many claims against it as possible.  *In re Lincoln Nat'l COI Litig.*, 2023 WL 8373114, at *3 (E.D. Pa. Dec. 4, 2023) ("Deadlines for opting-out allow the settling parties certainty as to the size of the settlement amount and class, while letting them know which, if any, claims remain to be litigated."), *appeal dismissed*, 2024 WL 3325534, at *1 (3d Cir. Feb. 29, 2024).  To facilitate a class action settlement, a defendant must know ahead of time the number of opt outs so it can reach a settlement to resolve as many claims as possible on terms agreeable to all parties.  *Diet Drugs I*, 92 F. App'x at 895; *see also In re Painewebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) ("Opt-out deadlines ensure that parties to a class action can rely on the membership of a class becoming fixed by a specified date and that such members will be bound by the resulting outcome of the legal proceedings.").  For this reason, the Third Circuit has stressed the importance of "accurately calculating initial opt-outs" in class actions for settlement purposes.  *Diet Drugs I*, 92 F. App'x at 895.  By agreeing to settle a class action, the settling defendant bargains for finality to resolve hundreds or thousands of claims.  *Georgine v. Amchem Prods., Inc.*, 1995 WL 251402, at *7 (E.D. Pa. April 26, 1995) (finding defendants would suffer prejudice if court allowed late opt outs, reasoning the "financial certainty" defendants sought

by agreeing to settle would be undermined by late opt outs); *see also Imprelis*, 2014 WL 348593, at *3-4 (finding defendant would suffer prejudice if late opt out allowed because defendant's "bargained-for benefit" to resolve as many claims as possible "would be upset").

According to *Roofer's* Lead Counsel, Sculptor's shares were included in the settlement Lead Counsel reached with Perrigo to resolve the *Roofer's* Class Action.  [Roofer's Br. at 3.] The *Roofer's* Class consists of hundreds of thousands of investors.  By agreeing to resolve the *Roofer's* Class action, Perrigo bargained for security and finality to resolve as many claims against it as possible, including Sculptor's claims.  And the Court approved that settlement. [*Roofer's*, Docket No. 449.]  Allowing Sculptor to opt out at this late stage would jeopardize the security and finality that Perrigo sought to achieve by settling the *Roofer's* Class Action. *See In re Dvi, Inc., Secs. Litig.,* 2016 WL 1182062, at *8 (E.D. Pa. Mar. 28, 2016) (finding settling defendants would suffer prejudice by allowing late opt out, reasoning defendants agreed to settle class action "to achieve finality and thereby financial certainty" and allowing the late opt out "now would increase [their] potential financial obligations"); *see also Prater v. Medicredit, Inc.*, 2016 WL 7157090, at *2 (E.D. Mo. Dec. 8, 2016) (ruling allowing late opt out would prejudice defendant because, among other reasons, "the financial certainty sought by entering a settlement agreement will be undermined"); *In re Charles Schwab Corp. Secs. Litig.*, 2010 WL 2178937, at *1 (N.D. Cal. May 27, 2010) (refusing to find excusable neglect, reasoning that opt-out request made "on the eve of preliminary approval of a 200 million dollar class-wide settlement" was likely to cause prejudice because defendants negotiated settlement with stable class in mind).  Therefore, *Pioneer*'s prejudice factor weighs slightly against Sculptor.

### 3.  Good Faith

The final *Pioneer* factor weighs in Sculptor's favor.  Nothing in the record suggests Sculptor failed to timely opt out to gain a tactical advantage.  While the lack of paper trail suggests Sculptor's former counsel did not prepare the opt-out request, it does not appear that failure was intentional.  Rather, the record suggests Sculptor's former counsel thought the opt-out request had been timely filed and continued to litigate the *Sculptor* Action, *see* Nathanson Decl. ¶¶ 6-7, which suggests Sculptor acted in good faith.  *Caterpillar*, 2017 WL 2829599, at *5.  Still, the other *Pioneer* factors disfavor Sculptor.  *See Diet Drugs II*, 2009 WL 3444763, at *4 (finding "no reason to doubt that plaintiff acted in good faith" but still refusing to find excusable neglect for late opt out where danger of prejudice to defendant, and the length of, and reasons for, delay weighed against plaintiff).  So Sculptor's failure to timely opt out is inexcusable.

*Caterpillar* and *Processed Egg* do not support finding excusable neglect here.  For example, the *Caterpillar* court found the two movant's failure to timely opt out of the MDL was excusable where they each had pending lawsuits against the manufacturer in a different state court, and both asserted they were unaware of the settlement of the MDL until after the opt-out period expired.  2017 WL 2829599, at *2, *6.  Both movants continued to pursue their individual actions against the manufacturer, and those cases were trial ready.  *Id.* at *4, *6.  One movant's attorney incorrectly assumed his client had opted out, and the other movant never received actual notice of the settlement.  *Id.*  at *3, *6.  And both movants promptly moved to opt-out once they received the notice of the settlement.  *Id.*

Unlike the movants in *Caterpillar*, Sculptor's former counsel knew of the *Roofer's* Class Action and the 2020 Class Notice Order, and intended to file the opt-out request.  [Nathanson

Decl. ¶¶ 4-6.] And unlike the movants in *Caterpillar*, Sculptor was not litigating against Perrigo in a state court across the country. Both the *Roofer's* Class and *Sculptor* Actions (and many other separate actions) were pending before this Court. Again, if Sculptor's former counsel had opted out, then counsel could have verified Sculptor's opt-out status by checking the Opt-out List. But that never happened. Nor did Sculptor promptly move to opt out like the movants in *Caterpillar*. Sculptor waited three-and-a-half years after the opt-out deadline to confirm its opt-out status.

The *Egg Processed* court allowed a late opt out even though movant's counsel did not carefully read the opt-out notice. 130 F. Supp.3d at 956. The court found counsel's reading of the settlement notice on opt outs—that is, the notice's opt-out provision did not apply to the pending individual action—"was 'not objectively unreasonable'" given the parties' conduct and certain case management orders entered by the court. *Id.* While the movant's counsel in *Egg Processed* may have misunderstood that settlement notice, Sculptor's former counsel here did not and intended to opt out. [Nathanson Decl. ¶¶ 4-6.] And unlike the five-month delay in *Egg Processed*, Sculptor's three-and-a-half year delay here is substantial. 130 F. Supp.3d at 949-50.

Finally, while Sculptor expended time and resources to litigate the *Sculptor* Action, Sculptor will not be prejudiced by remaining in the *Roofer's* Class Action. All agree Sculptor can participate in the class settlement. [7] [Sculptor Br. at 9; Perrigo Br. at 17-18.] *See Prudential*, 177 F.R.D. at 243-44 (refusing to grant movants an extension of time to opt out but allowing movants to "fully participate in the [c]lass [s]ettlement"); *see also Grilli v. Metro Life Ins.*, 78

---

[7] Again, Sculptor and Class Counsel struck an agreement to preserve Sculptor's right to participate in the *Roofer's* class action settlement. [Roofer's Br. at 1-2; Sculptor Br. at 9.] Perrigo does not object to Sculptor remaining in the *Roofer's* class. [Perrigo Br. at 17-18.] If Sculptor failed to live up to its agreement with Lead Counsel, then Sculptor acted at its own peril and any claim of prejudice would seem to fall at Sculptor's feet.

F.3d 1533, 1537-38 (11th Cir. 1996) (finding district court did not abuse its discretion in denying opt-out request where district court found "the movants would suffer little, if any, prejudice by remaining in the class, since MetLife would permit them to file late proofs of claim and to participate in the settlement and obtain full restitution"), *op. clarified*, (July 31, 1996).    Thus, Sculptor will not be left "empty-handed."  *Imprelis*, 2014 WL 348593, at *6.

## C.    Sculptor's Estoppel Arguments

Finally, Sculptor argues the Court should equitably estop Perrigo from challenging Sculptor's opt-out status given Perrigo's litigation conduct in the *Sculptor* Action.  [Sculptor Br. at 28-29.]  Sculptor also contends judicial estoppel principles bars Perrigo from now claiming Sculptor never opted out.  [*Id.*]

A party invoking equitable estoppel must show another party made a misrepresentation and the moving party relied on it to their detriment.  *See*, *e.g.*, *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987); *see also Citizens United Reciprocal Exchange v. Meer*, 321 F. Supp.3d 479, 493 (D.N.J. 2018).  "Unlike the concept of equitable estoppel, which focuses on the relationship between the parties, judicial estoppel focuses on the relationship between the litigant and the judicial system, and seeks to preserve the integrity of the system."  *Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir. 1990).  In the Third Circuit, courts apply judicial estoppel only when:  (1) "the party to be estopped [has] taken two positions that are irreconcilably inconsistent[;]" (2) the party changed their position "in bad faith– *i.e.*, with intent to play fast and loose with the court[;]" and (3) no sanction short of judicial estoppel "would adequately remedy the damage done by the litigant's misconduct."  *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001) (internal citation and quotation marks omitted).  Judicial estoppel does not apply to "eliminate all inconsistencies,

however slight or inadvertent[.]"  *Danise v. Saxon Mortg. Servs. Inc.*, 738 F. App'x 47, 50 (3d Cir. 2018).  Nor is judicial estoppel appropriate if the party to be estopped "did not convince the District Court to accept its earlier position."  *G-I Hold., Inc. v. Reliance Ins.*, 586 F.3d 247, 262 (3d Cir. 2009).

Sculptor's equitable estoppel arguments fail twice over.  First, despite Sculptor's contrary arguments, Perrigo never affirmatively misrepresented Sculptor's opt-out status.  In the various court filings Sculptor points to, Perrigo merely called the *Sculptor* Action and the other separate lawsuits as "Individual Actions" for short-hand.  [*Sculptor*, Docket Nos. 117, 119, 126, 132, 137.]  Perrigo never used the phrase "opt out" in those filings.  And while Perrigo characterized Sculptor as an opt-out plaintiff and referred to the *Sculptor* Action as an opt-out action in a premotion letter, *see Sculptor*, Docket No. 110, those characterizations are not affirmative misrepresentations.  Again, when Perrigo filed that letter, Lead Counsel had not yet filed the Opt-out List, and thus Perrigo could not have known who opted out of the *Roofer's* Class Action.  Said another way, Perrigo did not knowingly misrepresent Sculptor's opt-out status in that premotion letter.  *See Alpine Country Club v. SOMPO Am. Ins.*, 2024 WL 3688577, at *8 (D.N.J. Aug. 7, 2024) (explaining equitable estoppel requires a "knowing misrepresentation by another party" (quoting *Asmar*, 827 F.2d at 912)).

Second, Sculptor has not shown detrimental reliance—that is, its reliance on Perrigo's representations caused its former counsel to miss the opt-out deadline.  Sculptor's former counsel never mentions relying on any of Perrigo's statements that Sculptor points to. *See In re Broiler Chicken Antitrust Litig.*, 2019 WL 6699664, at *1-2 (N.D. Ill. Dec. 9, 2019) (rejecting movant's equitable estoppel argument about its opt-out status even though movant received a notice from claim administrator about receiving the opt-out request where movant failed to

show it relied on any statement from defendant about movant's opt-out status). And many of Perrigo's so-called misrepresentations came months after the opt-out deadline had passed. Said differently, Sculptor has not shown Perrigo made a statement lulling Sculptor's former counsel to miss the opt-out deadline. *Citizens United*, 321 F. Supp.3d at 493 (explaining equitable estoppel requires the party to be estopped to have made a representation knowing "it would induce action"); *see also D.M. v. Oakland Bd. of Educ.*, 2006 WL 2715133, at *5 (D.N.J. Sept. 21, 2006) (explaining "[e]quitable estoppel may be appropriate where a defendant has lulled a plaintiff into a false sense of security by representing that a claim will be amicably settled without the necessity for litigation" (citation and internal quotation marks omitted))). Sculptor's decision to maintain the *Sculptor* Action did not excuse it from timely opting out of the *Roofer's* Class Action.[8] *Prudential*, 177 F.R.D. at 238 ("Class members . . . must file a valid request for exclusion regardless of whether they have an individual action filed and pending prior to the opt-out deadline.").

Turning to judicial estoppel, Sculptor has not shown Perrigo took inconsistent positions on Sculptor's opt-out status. Again, Perrigo never affirmatively misrepresented Sculptor's opt-out status. At best, Perrigo's opt-out characterization of Sculptor and the *Sculptor* Action in the premotion letter was "slight or inadvertent[.]" *Danise*, 738 F. App'x at 50. In any event, Sculptor has not shown the Court accepted Perrigo's supposed position on Sculptor's opt-out status. *G-I Hold.*, 586 F.3d at 262. Finally, nothing in the record suggests

---

[8] Sculptor's reliance on footnotes in three expert reports prepared by Perrigo's experts is unavailing. [Am. Decl. of Mariellen Dugan, Esq. ¶2, Exs. 1-3 (Docket No. 446).] True, Perrigo's experts used the phrases "Opt-Out Plaintiffs" and "Opt-Out Complaints" to refer to Sculptor and the *Sculptor* Action (as well as many other individual actions). [*Id.*] But Sculptor has not explained how it relied on Perrigo's experts' use of those phrases. Perrigo served those reports more than eight months after the opt-out deadline. [*Id.*] So the Court struggles to see how those expert reports caused Sculptor's former counsel to miss the opt-out deadline.

Perrigo intentionally "play[ed] fast and loose with the court." *Montrose*, 243 F.3d at 779 (internal citation and quotation marks omitted).

## III.  CONCLUSION

For the above reasons, the Court **DENIES** Sculptor's motion to opt out of the *Roofer's* Class Action (Docket No. 432).

An accompanying Order of today's date shall issue.

<u>**s/Renée Marie Bumb**</u>
RENÉE MARIE BUMB
Chief United States District Judge

Dated: September 12, 2024